UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL LONARDO, | ) | |
| on behalf of himself and | ) | CASE NO. 06 CV962 |
| all others similarly situated, | ) | |
| | ) | JUDGE KATHLEEN M. O'MALLEY |
| and | ) | |
| | ) | |
| DANTE FREZZA, | ) | |
| on behalf of himself and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOSEPH FELDMAN | ) | |
| on behalf of himself and | ) | |
| and all others similarly situated | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE TRAVELERS INDEMNITY | ) | |
| COMPANY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| *Defendants* | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND INCENTIVE AWARD TO CLASS REPRESENTATIVES**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  THE LITIGATION AND SETTLEMENT ............................................................... 2

    A.    Background Of The Case ................................................................................. 2

    B.    Settlement Negotiations ................................................................................... 7

    C.    Terms Of The Settlement ................................................................................ 7

    D.    Notice Was Provided To Class Members ........................................................ 9

III. ARGUMENT ............................................................................................................ 11

    A.    The Approval Process And Standards ............................................................ 11

    B.    This Settlement Is Fair And Reasonable And Should Be Approved ................. 15

        1.    The Likelihood Of Success On The Merits .............................................. 15

        2.    The Risks, Expense, And Delay Of Further Litigation ............................. 16

        3.    Well-Informed Class Counsel Support The Settlement ............................ 16

        4.    The Amount Of Discovery Completed And The Character Of the Evidence Uncovered .............................................................................. 17

        5.    There Have Been Limited Objections From Class Members ..................... 18

        6.    The Settlement Is The Product Of Arm's Length Negotiations, There Is No Evidence Of Collusion, And The Settlement Is Consistent With The Public Interest ...................................................................... 20

IV.  THE REQUESTED INCENTIVE AWARDS TO THE SETTLEMENT CLASS REPRESENTATIVES ARE REASONABLE. .......................................................... 21

V.   CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Ass'n for Disabled Americans, Inc., Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ................................................................. 17

*Avery v. State Farm Mutual Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d (Ill. 2005) ........................... 16

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990) ............................................ 13

*Bronson v. Board of Educ.*, 604 F. Supp 68 (S.D. Ohio 1984) ............................................ 11, 14

*Brotherton v. Cleveland, 141* F.Supp. 2d 907 (S.D. Ohio 2001) ............................................... 21

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................ 13

*Cotton v. Hinton*, 559 F.2d 1326  (5th Cir. 1977) ....................................................................... 11

*Dupler v. Costco Wholesale Corp.*, No. 06-CV-3141 (E.D. NY) ............................................... 20

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,137 F.R.D. 240 (S.D. Ohio 1991) ................................................................................................................. 12, 21

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007) .............................. 15

*Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448 (N.D. Ohio 1993) ................................. 12

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .......................................... 14

*Hainey v. Parrott*, unreported at 2007 WL 2752375 (S.D. Ohio Sept. 20, 2007) ..................... 18

*In re American Family Enterprises*, 256 B.R.377 (P.N.J. 2000) ............................................... 19

*In re Art Materials Antitrust Litig.*, 100 F.R.D. 367 (N.D. Ohio 1983) .................................... 12

*In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................................... 14

*In re Dun & Bradstreet*, 130 F.R.D. 366 (S.D. Ohio 1990) ...................................................... 21

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................ 11, 16, 18

*International Union v. Ford*, unreported at 2006 WL 1984363 (E.D. Mich. July 13, 2006) ................................................................................................. 13, 18

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) ...................... 13, 14, 15

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D. Mich. 2000) ............................. 14, 19

*Shy v. Navistar Int'l Corp.*, unreported at 1993 WL 1318607 (S.D. Ohio May 27, 1993) ......... 15

*Smith v. Ajax Magnethermic Corp.*, unreported at 2007 WL 3355080
(N.D. Ohio Nov. 7, 2007) ........................................................................................... 17

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) .................... 13

*UAW v. GM*, unreported at 2006 WL 891151 (E.D. Mich. March 31, 2006)........... 12, 14, 16, 17

*United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348 (6th Cir. 1986).......................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2nd Cir. 2005) .................................. 18

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)...................................................................... 11

*Williams v. General Elec. Capital Auto Lease*, unreported at 1995 WL 765266
(N.D. Ill. 1995)............................................................................................................. 19

*Williams v. Vukovich*, 720 F.2d 909, (6th Cir. 1983)......................................................... 12, 14

## STATUTES

28 U.S.C. 1927 ............................................................................................................... 3

Fed. R. Civ. P. 11 ........................................................................................................... 3

Fed. R. Civ. P. 23 ................................................................................................... 1, 6, 12

## TREATISES

Alba Conte & Herbert B. Newberg, *Newberg on Class
Actions* (4th ed.2002).................................................................................................... 18

Federal Judicial Center *Manual for Complex Litigation (Fourth)* (2004), §§ 21.632-
21.634 .............................................................................................................................. 12

iii

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs hereby submit this Memorandum in Support of their Motion for Final Approval of the Class Action Settlement as set forth in the Settlement Agreement and Exhibits attached thereto.  (D.C. Docket No. 168, 168-2, 168-3, 168-4, 168-5, 168-6, 168-7, 168-8).

The settlement is fair, reasonable, and adequate and provides immediate and certain benefits to participating Settlement Class members who would otherwise likely go uncompensated.

## I.    INTRODUCTION

Courts favor the settlement of litigation.  This is especially true in class actions which are risky and complex.  A class action settlement should be approved if the court finds it to be fair, reasonable and adequate to the class.  The settlement here satisfies these criteria.  First, the relief offered to class members is fair, even generous, weighed against the likelihood of success on the merits by the Class.  Second, the settlement is appropriate given the substantial risks and expense of further litigation.  Third, approval of the settlement is strongly recommended by the Plaintiffs' counsel who are highly experienced class action litigators in general and in this exact kind of sales practices litigation and by the Plaintiffs.  (Affidavit of Dante Frezza In Support of Motion for Final Approval of Class Action Settlement And Class Counsels' Petition For Award of Attorneys Fees, Expenses and Incentive Awards to Class Representatives, attached as Exhibit A; Affidavit of Paul Lonardo In Support of Motion for Final Approval of Class Action Settlement And Class Counsels' Petition For Award of Attorneys Fees, Expenses and Incentive Awards to Class Representatives, attached as Exhibit B; and Affidavit of Joseph Feldman In Support of Motion for Final Approval of Class Action Settlement And Class Counsels' Petition For Award of Attorneys Fees, Expenses and Incentive Awards to Class Representatives, attached as Exhibit

C).  Fourth, the settlement occurred in the context of a well developed factual record with all parties informed regarding the strengths and weaknesses of their respective positions.  Fifth, the negotiations leading to the settlement were at arm's length, made in good faith, and without collusion.  Sixth, only eight (8) objections have been levied against the settlement by Class members.  (Declaration of Robert Oseas, ¶14, hereinafter "Oseas Declaration," Filed at D.C. Docket No. 174).

## II.  THE LITIGATION AND SETTLEMENT

### A.  <u>Background Of The Case</u>

On March 14, 2005, the undersigned counsel filed the case of *Vincent Zangara, et al. v. Travelers Indemnity Company of America*[1]*, et al.  (See generally Zangara v. Travelers Indemnity Company*, United States District Court, Northern District of Ohio, D.C. Docket No. 1:05-cv-731.  Hereinafter referred to as "*Zangara")*.  The Complaint alleged that on March 19, 2002, the Travelers Indemnity Company of America sold the Plaintiffs a "homeowners insurance policy without disclosing to them the availability of a less expensive Travelers homeowners policy offering identical coverage and policyholder service."  *Zangara,* D.C. Docket No. 2, ¶12.  It further alleged that Travelers Property Casualty Insurance Company[2] owned Travelers Indemnity Company of America.  *Zangara,* D.C. Docket No. 2, ¶4.  On June 6, 2005, the *Zangara* briefing began with the defendants filing a Motion to Dismiss (*Zangara*, D.C. Docket Nos. 10 & 11) and a Motion to Strike Class Allegations.  (*Zangara*, D.C. Docket Nos. 12 & 13).  On July 13, 2005,

---

[1] The Travelers Indemnity Company of America is a different company than Defendant in this matter The Travelers Indemnity Company.  However, ultimately both companies are "Settling Insurers."  Settlement Agreement, §I.A.10, p. 4.  *See also* **List Of Settling Insurers** found at Exhibit "A" to Settlement Agreement previously filed at D.C. Docket No. 168-2.  The Exhibit A incorporation into and as part of the Settlement Agreement is found at §I.A.10, p. 4 of the Settlement Agreement.
[2] Again, Travelers Property Casualty Insurance Company is not a named Defendant in this matter but is a Settling Insurer.  Settlement Agreement, §I.A.10, p. 4.

the Plaintiffs filed a Response to the Motion to Dismiss (*Zangara* D.C. Docket Nos. 19 & 20).

Further, on July 18, 2005, the Plaintiffs filed an Opposition to the Motion to Strike Class

Allegations (*Zangara*, D.C. Docket No. 22) and a Motion for Class Certification.  (*Zangara*,

D.C. Docket No. 23).  A flurry of briefing ensued.  Discovery began despite Defendants' Motion

to Stay Discovery (*Zangara*, D.C. Docket No. 18).   On January 18, 2006, Plaintiff Vincent

Zangara was deposed and on February 16, 2006, Travelers produced documents.  On March 6,

2006, counsel for Plaintiffs filed for leave to file an Amended Complaint to add two new

plaintiffs and one new defendant.  (*Zangara,* Docket No. 56-1).   In the pleading, counsel

indicated that it believed that Mr. Zangara had purchased the low priced Travelers policy.[3]   On

March 16, 2006, while the motion to substitute and amend the Complaint was pending, the Court

denied the motion to dismiss.  (*Zangara*, Docket No. 57).   Travelers opposed the motion to

amend and filed a motion to dismiss the case for lack of subject matter jurisdiction and a motion

to vacate all prior orders which was granted on March 30, 2006.  (*Zangara*, Docket Nos. 58, 60,

61, 62).   Thereafter, Travelers filed a Motion For Sanctions Pursuant to Fed. R. Civ. P. 11 and

28 U.S.C. 1927.   (*Zangara,* Docket No. 64).   After extensive briefing, the Court denied the

motion. (*Zangara* Docket Nos. 67, 69, 70).

While the skirmish regarding the sanctions issue was being litigated, Plaintiffs filed the

instant case of *Neil Stanich and Bobbie Jean Stanich and Dante Frezza, on behalf of themselves*

*and all others similarly situated vs. Travelers Property Casualty Insurance Company and The*

*Standard Fire Insurance Company* on April 19, 2006.  (D.C. Docket No. 1).  Despite this Court's

denial of the motion to dismiss in *Zangara*, the Defendants moved to dismiss this action.  (D.C.

---

[3] The multiple reasons that counsel believed that Mr. Zangara had purchased the lowest priced policy are outlined in Plaintiff's Motion For Relief From Judgment And Memorandum In Support Of Motion (Filed Under Seal). *Zangara*, Docket No. 72.

Docket No. 14).    The Court held a case management conference and discovery began soon thereafter.  (D.C. Docket No. 13).    Discovery in this matter was extensive and contentious.  In fact, this Court recruited the services of Magistrate Judge Hemann to help resolve some of the discovery issues, and she held formal hearings to resolve discovery disputes on January 31, 2007; February 22, 2007; March 8, 2007; and April 4, 2007.  (D.C. Docket Nos. 40, 42, 48, 49, 57, 61, 74).    On April 10, 2007, this Court held a formal hearing with a court reporter present regarding whether to allow Plaintiffs to amend their Complaint.  (D.C. Docket No. 75).

On April 20, 2007, after extensive discovery, Plaintiffs filed their Motion For Class Certification and all of the papers and evidence in support of same.  (*See* D.C. Docket Nos. 107 & 109 for Motion and supporting Brief and D.C. Docket No. 110 for Appendix to Memorandum In Support of Motion For Class Certification;  D.C. Docket Nos. 81 & 100 Deposition Transcript and Videodisks of Robert C. Asher;  D.C. Docket Nos. 82 & 101 Deposition and Videodisks of Richard Cuozza;  D.C. Docket Nos. 83 & 102 Deposition and Videodisks of Mark Mastrianni;  D.C. Docket Nos. 84 & 104 Deposition and Videodisks of Lucille Mulroy;  D.C. Docket Nos. 85 & 105 Deposition and Videodisks of Randall Pillen;  D.C. Docket Nos. 86 & 106 Deposition and Videodisks of Pamela Roy;  D.C. Docket Nos. 87 & 103 Deposition and Videodisks of Michael McNally;  D.C. Docket Nos. 88 & 97 Depositions and Videodisks of James Roddenberry;  D.C. Docket Nos. 89 & 98 Deposition and Videodisks of John Swartz;  D.C. Docket Nos. 90 & 99 Deposition and Videodisks of Nancy Tehan;  D.C. Docket Nos. 91 & 96 Deposition and Videodisks of Michael Cristal;  D.C. Docket Nos. 92 & 94 Deposition and Videodisks of Thomas Chatham;  D.C. Docket Nos. 93 & 95 Deposition and Videodisks of Lee Covington, II.)  On May 4, 2007, the Defendants filed their opposition to the class certification papers (D.C. Docket No. 118 & 119) as well as deposition transcripts and other evidence that they wanted before the

Court.  (D.C. Docket Nos. 113, 114, 115, 116, 118 and 120).

On May 14 and 15, 2007, the Court conducted a two day, class certification hearing during which eight (8) live witnesses were called by the parties to testify.  (*See* Transcript of Hearing D.C. Docket Nos.124 & 125.  *See also* Order Regarding Class Certification, pp. 1-2, FN. 4.  D.C. Docket No. 128).  After the Court took the matter under advisement, the Defendants filed a Notice of Additional Authority in Opposition to Plaintiffs' Motion For Class Certification on May 25, 2007 (D.C. Docket No. 122), and on June 13, 2007, after leave being granted, (D.C. Docket No. 123) Plaintiffs filed a sur-reply to the additional authority.  (D.C. Docket No. 126).

On March 28, 2008, this Court entered its 46-page Order Regarding Class Certification. (D.C. Docket No. 128). The Order made certain findings but deferred the final ruling on class certification because the Court ruled that Plaintiffs Neil and Bobbie Jean Stanich, the proposed Agent SubClass representatives, failed to meet the typicality and adequacy requirements of Rule 23(a)(3) and (a)(4).   Plaintiffs were given time to identify a new Agent SubClass representative and for the parties to conduct discovery to determine the "individual's ability to satisfy Rules 23(a)(3) and (a)(4)" (D.C. Docket No. 128, p. 46).   Plaintiffs identified Paul Lonardo as the new Agent SubClass representative, and discovery regarding Mr. Lonardo's qualifications was undertaken. (D.C. Docket No. 129).   On July 24, 2008, the Plaintiffs moved to substitute in Mr. Lonardo as the Agent SubClass representative (D.C. Docket No. 132) and thus began a whole new round of extensive briefing[4].   On January 26, 2009, this Court entered a 50-page

---

[4]  The pleadings relating to Mr. Lonardo alone consist of: Notice of Filing Deposition Transcript (Paul Lonardo) (D.C. Docket No. 131); Defendants' Motion to Compel and For A Finding of Inadequacy And For the Appointment of New Putative Class Counsel Under Rule 23(g) of the Federal Rules of Civil Procedure (D.C. Docket No. 133); Defendants' Response in Opposition to Plaintiffs' Motion to Amend to Substitute Paul Lonardo as Agent Subclass Representative in Place of Neil Stanich and Bobbie Jean Stanich (D.C. Docket No. 134); Motion to Exceed Page Limitations for Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Motion to Amend to Substitute Paul Lonardo as Agent Subclass Representative in Place of Neil Stanich and Bobbie Jean Stanich (D.C. Docket No. 136); Plaintiffs' Reply to Defendants' Response in Opposition to Plaintiffs' Motion to Amend to Substitute Paul Lonardo as Agent Subclass Representative in Place of Neil Stanich and Bobbie Jean Stanich (D.C.

Memorandum & Order granting the motion to substitute, appointing class counsel and certifying the class. (D.C. Docket No. 141). Said Order was appealed to the Sixth Circuit Court of Appeals pursuant to Fed. R. Civ. R. 23(f). After extensive briefing the Order was affirmed on April 24, 2009. (*See* In re: The Standard Fire Insurance Company; The Travelers Indemnity Company, Petitioners. United Stated Court of Appeals for the Sixth Circuit, Case No. 09-0301).

After the granting of class certification, this Court held a pre-trial conference whereby it established dates for additional merits discovery and experts and for the submission of Plaintiffs' Form of Notice and Plan of Notice (D.C. Docket No. 144) which Plaintiffs submitted on April 1, 2009. (D.C. Docket No. 146). Thereafter, the Court held another conference on April 9, 2009 wherein the Court inquired if the parties had any desire to mediate the dispute. (D.C. Docket No. 147).

The notice contemplated by the Plaintiffs generated a dispute as to the terminology of the notice, the exact parameters of the class action certified and further discovery disputes. Therefore, on June 9, 2009, the Court held a Status Conference and entered rulings to establish parameters to resolve these issues (i.e. form of notice; discovery related to the potential class list; renewal purchases as members of the class; discovery related to the "Quantum" program; interrogatory numbers allowed to be served; social security numbers; expert report deadlines; and punitive damages discovery). (D.C. Docket No. 155). On July 9, 2009 the Court held another status hearing to discuss issues related to discovery of a potential renewal class. (D.C.

---

Docket No. 137); Notice of Filing Deposition Transcript (Judy Lonardo) (D.C. Docket No. 138); Plaintiffs' Response to Defendants' Motion to Compel and For A Finding of Inadequacy And For the Appointment of New Putative Class Counsel Under Rule 23(g) of the Federal Rules of Civil Procedure and Motion for Appointment Pursuant to Rule 23(g) (D.C. Docket No. 139); Defendants' Reply in Support of their Motion to Compel and For A Finding of Inadequacy And For the Appointment of New Putative Class Counsel Under Rule 23(g) of the Federal Rules of Civil Procedure (D.C. Docket No. 140).

Docket No. 158).   While working through the issues addressed in the June 9, 2009 and July 9, 2009 status conferences, the parties began settlement negotiations.

### B.      Settlement Negotiations

Although the April 9, 2009 overture from the Court inquiring whether or not the parties wished to mediate the dispute did not result in mediation, it did result in the parties discussing a potential resolution.   Settlement negotiations were protracted, difficult, and certainly at arm's length.   After several preliminary telephone discussions between counsel, the two sides finally met in Memphis, Tennessee, for an all-day settlement negotiation on June 11, 2009.   " (Affidavit of R. Eric Kennedy In Support of Motion for Final Approval of Class Action Settlement, "Kennedy Affidavit", attached as Exhibit D.) Additionally, prior to meeting in Memphis the parties engaged in extensive informal information exchange.   After Memphis, the parties remained far apart and further information was exchanged between the parties. *Id.*   Discussions continued and the parties met again in Chicago on July 24, 2009.   *Id.*   Between July and September, further information was exchanged and additional discussions took place.   On September 16 and 17, 2009, the parties again met face to face and finally reached a settlement. *Id.*

### C.      Terms Of The Settlement

The proposed settlement includes the following core terms:

Settlement Class Definition:

"Class" or "Settlement Class" means, for settlement purposes only and for no other purpose:  All persons in the United States who made an initial purchase of a homeowners insurance Class Policy (as that term is defined elsewhere) from a Settling Defendant for a property located in the states of Alabama, Arkansas, Colorado, Illinois, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Ohio, South Carolina, and Tennessee, who were eligible to purchase Travelers homeowners insurance offering identical coverage and service, at lower price, during the relevant "Class Period" for each respective state as set forth below.

7

The precise "Class Policies" include only the policies described for the relevant time periods listed for each state in Exhibit B.[5]  The Class Period for each state is defined as follows:  Alabama – July 25, 1998 to September 20, 2003; Arkansas – September 18, 1999 to March 17, 2003; Colorado – August 22, 1997 to September 20, 2003; Illinois – August 22, 1997 to December 20, 2003; Kentucky – August 22, 1997 to May 17, 2003; Louisiana – August 22, 1997 to September 20, 2003; Mississippi – May 15, 1999 to September 20, 2003; Missouri – August 22, 1997 to May 17, 2003; North Carolina – August 22, 1997 to March 16, 2003; Ohio – March 7, 1998 to May 18, 2003; South Carolina – August 22, 1997 to December 17, 2005; and Tennessee – March 7, 1998 to May 17, 2003.  Excluded from the Class is any Class member who timely elects to be excluded from the Settlement Class, and all present and former agents of Defendants during the Class Period; all present and former employees of Defendants during the Class Period; and all members of the judiciary of the Court, and members of their immediate family.  Settlement Agreement, §I.A.5, pp. 2-3.

Cash Payments To Class Members:

The Defendants agree to pay $8.69 to each Class member for each completed Class Policy Period, for any Class Policy described in the Class definition in paragraph I.A.5, in response to valid claims submitted in conformity with the claims procedure.  Defendants will pay a pro-rata portion of this amount, calculated by the number of days-in-force, for each period in which a Class Policy was in force for less than a full 12-month term.  Class members with a policy in force at the time of the execution of this Settlement Agreement will receive the full $8.69 for the current 12-month policy period.  Defendants shall make these payments in response to properly completed Claim Forms submitted by Class members to the Notice and Claims Administrator within 30 days after the Effective Date, as set forth in Section II.D.2, above.  No interest shall accrue or be due on payments to Class Members.  Settlement Agreement, §II.E.1, p. 15.

Additionally, the Settling Defendants will pay to the Settlement Class the difference between the fee awarded by the Court and $6,600,000.00.  This reversion to the Class shall not exceed $2,000,000.00 and shall be distributed, pro-rata, among Class members who submit a timely Claim Form.  (*See* Supplemental Affidavit of R. Eric Kennedy in Support of Settlement Class Counsel's Petition for Award of Attorneys Fees and Expenses)

Equitable Relief:

Subject to the two conditions set forth below, Defendants agree not to change their current practice of (a) providing a single premium price point for homeowners insurance for any given Risk Group when purchasing from an Independent Agent, and (b) refraining from providing a premium price point for

---

[5] "Class Policy" also includes the renewals of the policies listed in Exhibit B where at the time of the renewal date the price paid was not the lowest available price from another Settling Defendant or affiliated company.

homeowners insurance for any given Risk Group that is lower when purchasing from an Independent Agent than when purchasing from a group marketing program.

Conditions:

(a)     This agreement shall only apply for a period of three years from the Effective Date, and only for the Class states; and

(b)     This agreement does not prohibit the Defendants from changing their current practices if disclosures are made to any affected Risk Group, or if there are material changes in applicable statutes, rules, regulations, case law or regulatory authorities. Settlement Agreement, §II.G, p 17.

<u>Settling Defendants Paid For Notice And Claims Administration:</u>

Defendants will pay all costs of implementing the Notice Plan, including the expenses of the Administrator in connection with the Claims Program.  Such payments shall not deplete the amounts otherwise available to the Class or owed under this Agreement.  Settlement Agreement, §II.F.1, p. 16.

<u>Attorneys Fees And Expenses</u>**:**  Subject to Court approval, Defendants agreed to pay attorneys' fees and expenses in an amount not to exceed $6,600,000 without depleting the settlement payments to be made to Settlement Class members.     Settlement Agreement, §II.F.2, pp 16-17.

## D.     **Notice Was Provided To Class Members**

On November 18, 2009, the Court approved the proposed notice plan[6] (i.e. form and the manner in which the notice was to be given to settlement Class members). (D.C. Docket No. 168-4.)   As the Declaration of Robert Oseas shows, notice was successful.

---

[6] As this Court is well aware, Plaintiffs were vigilant about Notice.  On February 12, 2009, this Court held a Case Management Conference wherein it ordered Plaintiffs to submit a form of notice by Aril 1, 2209 and for the Defendants  to advise the Court on or before March 20, 2009 of its progress in identifying potential class members. (D.C. Docket No. 1440.  On April 14, 2009 the  Court held another status conference to address notice and plaintiffs raised the issue  "the extent to which the information regarding creation of the class list that the Defendants provided to the Court for  *in camera* review should be provided to Class Counsel in order to facilitate preparation of forms of notice to class members."  (D.C. docket NO. 147).  The parties filed multiple briefs and worked through multiple issues regarding notice but an extensive status conference was necessary for June 9, 2009 to discuss open issues related to the notice.  A further conference was held on July 9, 2009 to discuss these issues again.  Additionally, counsel for the parties had multiple telephone conferences regarding the issues related to notice.  Finally, it should be noted that Plaintiffs served multiple amounts of discovery related to notice.  For example, Plaintiffs served Requests for Admissions and Interrogatories on February 23, 2009; Interrogatories on February 26, 2009; Interrogatories on April 14, 2009; and Interrogatories on June 18, 2009.  (Kennedy Affidavit)

Epiq Systems, Inc. ("Epiq") was hired to serve as the Notice and Claims Administrator. "On November 25, 2009, Epiq received files from Travelers containing a total of 487,277 records of Class members who had been identified by Travelers (the "Mailing List") and were to be mailed the Court-approved Notice and Claim Form[7] (the "Claim Packet"). Oseas Declaration, ¶5. "Prior to mailing, Epiq caused the 487,277 records to undergo an address search using the National Change of Address database (the "NCOA"). The NCOA program makes change of address information available to help reduce undeliverable or duplicate mail-pieces. The NCOA service is a comprehensive program that aids mailers in identifying changes of address before mail enters the mail-stream. Private sector companies that are certified and licensed by the United States Postal Service ("USPS") provide the NCOA services. The USPS provides updated, computerized change-of-address information each week to the NCOA licensees. The licensees improve mail deliverability by providing mailers with current, standardized five-digit

---

[7]The parties had vigorous disputes regarding the Claim Form. The Defendants believed that they were entitled to issue a claim form that stated:

> By signing and returning this Claim Form, I understand that I am declaring under penalty of perjury under the laws of the United States that I am agreeing with the statement that "I believed when I purchased my Class Policy that I was receiving the lowest price available from the Settling Defendants or their affiliates, and that if I was told of the availability of a lower-priced policy offering the same coverage and same service from another Settling Defendant or affiliate, I would have purchased that lower-priced policy."

In other words, Travelers believed that it should be able to test the duty to disclose and the presumption of reliance. After multiple conferences, exchanges of suggested language and further negotiations, the parties agreed on the language that appeared the final claim form as:

> By signing and returning this Claim Form, I understand that I am agreeing with the statement that "If I had been told of the availability of a lower-priced policy available from the Settling Defendants or their affiliates that offered the same coverage and same service, I would have purchased that lower-priced policy."

The new Claim Form only allows Defendants to attempt to rebut the presumption of reliance and is consistent with Plaintiffs' position taken during this entire litigation that the duty to disclose does not depend upon the insured's state of mind. (Kennedy Affidavit)

ZIP codes, four-digit add-on codes, and two-digit delivery point coded addresses for individual, family and business moves.  The result of this search was a total of 46,643 new addresses that were updated in the Epiq database in anticipation of the mailing being loaded into the Epiq database.  Oseas Declaration, ¶6.  Epiq hired Think Plan Deliver to print and mail the claim packet to the 487,277 Class members.  *Id.*, ¶7  On December 9, 2009, the Claim Packets were mailed "by first-class mail, postage prepaid to 487,277 Class members…"  *Id.*, ¶9.

In addition to the direct mail notice program, Epiq also caused a copy of the publication notice to be published in the USA Today in the Marketplace Today section of the Tuesday, December 15, 2009 edition. *Id*., ¶9.  Epiq also established an informational website that contained the Settlement Agreement and all exhibits to the Settlement Agreement.  *Id*., ¶10.  Epiq also established a toll-free phone number for this litigation.  This telephone number became active December 9, 2009 and, as of January 14, 2010, generated 6,397 calls to Epiq and hundreds of calls to counsel.  *Id*., ¶11.

## III.    ARGUMENT

### A.    The Approval Process And Standards

It is well settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  "Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement."  *In re Telectronics Pacing Sys*., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001). *See also*, *Bronson v. Board of Educ.*, 604 F. Supp. 68, 71-72 (S.D. Ohio 1984) (granting final approval of settlement, noting that under Sixth Circuit precedent once preliminary approval is entered the settlement is "presumptively reasonable," and "[a]n individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable.") (quotations omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[I]n class action suits, there is an overriding public interest

11

in favor of settlement."); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of a class action.").

The court should approve a class settlement if, following a hearing, the court determines that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23. In making this determination, the court evaluates the proposed class action settlement "in light of the general federal policy favoring the settlement of class actions." *UAW v. GM*, unreported at 2006 WL 891151, at *12 (E.D. Mich. March 31, 2006) (Attached as Exhibit E). A district court may not approve the settlement of a class action lawsuit unless it determines that the settlement is fair, adequate, and reasonable, as well as consistent with the public interest. *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 370 (N.D. Ohio 1983).

While Fed. R. Civ. P. 23 does not provide a definitive standard for determining whether a particular class settlement should be granted final approval, federal courts have developed procedures for evaluating the fairness and reasonableness of class action settlements. Where, as here, the parties propose a class-wide settlement, they must obtain the Court's approval of the proposed settlement pursuant to a general three-step process described in the *Manual for Complex Litigation* (4th ed. annotated 2005), §§ 21.632-21.634. The three steps are:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to the Class members; and

(3)     A formal fairness hearing or final approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.*

The procedure serves the dual function of safeguarding Class members' procedural due process rights, and enabling the court to fulfill its role as the guardian of the class' interests.  This Court has already undertaken and directed the implementation of the first two phases of the settlement evaluation process, *i.e.*, preliminary approval and dissemination of notice to the settlement class.  (D.C. Docket No. 170.) Now that the settlement class response has been documented, the Court is in a position to conclude the settlement evaluation process with a final fairness hearing, and the determination as to whether final approval should be granted.

The decision to approve or reject a proposed class action settlement is committed to the Court's sound discretion.  *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion); *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (same).  In exercising that discretion, the court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (quoting *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990)).

Although this Court must evaluate the settlement to ensure it is fair, reasonable and adequate, a full trial is not contemplated.  The settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  *International Union  v. Ford*, unreported at 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006) (attached as Exhibit F) (quoting *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982)).

13

Courts in this circuit have listed factors relevant to a court's evaluation of a class settlement. These factors are:

(1)     the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;

(2)     the risks, expense, and delay of further litigation;

(3)     the judgment of experienced counsel who have competently evaluated the strength of their proofs;

(4)     the amount of discovery completed and the character of the evidence uncovered;

(5)     whether the settlement is fair to the unnamed Class members;

(6)     objections raised by Class members;

(7)     whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and

(8)     whether the settlement is consistent with the public interest.

*UAW v. GM*, unreported at 2006 WL 891151 at *14 (E.D. Mich. March 31, 2006); *In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496 (E.D. Mich. 2008) (same). The court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595; *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-1206 (6th Cir. 1992) ("The district court enjoys wide discretion in assessing the weight and applicability of these factors.").

Importantly, the view of experienced counsel favoring the settlement is entitled to great weight. *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000) (citing *Bronson v. Bd. Of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)). A court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams*, 720 F.2d at 922-23. *See also*, *Kogan*, 193 F.R.D. at 501. Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after rigorous arm's-length

negotiations, there is a strong initial presumption that the compromise is fair and reasonable.

### B.    This Settlement Is Fair And Reasonable And Should Be Approved

Each of these factors described above suggests that the settlement should be approved.

### 1.    The Likelihood Of Success On The Merits

The Plaintiffs' likelihood of success at trial is "by far the most important factor" in evaluating a class action settlement. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). In weighing the likelihood of success on the merits against the relief offered in the litigation, the "ultimate question ... is 'whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *IUE-CWA*, 238 F.R.D. at 594. *See also*, *Shy v. Navistar Int'l Corp.*, unreported at 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (attached as Exhibit G) ("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.")

The interests of the class as a whole are better served if this particular litigation is resolved by settlement rather than pursued. As in every complex case, Plaintiffs face formidable obstacles to recovery if litigation were to continue. Plaintiffs must maintain the class certification and then ultimately prevail in what would be a greatly contested trial. During the class certification portion of this matter, Defendants produced many experts, including the former Director of the Ohio Department of Insurance, who defended this practice. (Class Certification Hearing Testimony of Lee Covington, dated May 15, 2007, previously filed at D.C. Docket No. 125). Further, this Court commented in its class certification Order that although Plaintiffs' theory regarding duty to disclose might have made the class easier to certify it also could create liability issues. Proving the duty to disclose could pose serious problems and might

have been subject to a summary judgment motion.  Assuming this case was not terminated on summary judgment, significant evidentiary issues would likely have continued to create stumbling blocks to Plaintiffs' ultimately being able to try this matter to a jury.   Even if the Plaintiff was to prevail at trial, risks to the class remain.  For example, one of Plaintiff's counsel, Don Barrett, tried a class action in August 1999 and obtained a $1.3 billion jury verdict.  Six years later the Illinois Supreme Court reversed the jury verdict and decertified the class.  *Avery v. State Farm Mutual Ins. Co*., 216 Ill.2d 100, 835 N.E.2d 801 (Ill. 2005).  The class was left uncompensated.

### 2.    The Risks, Expense, And Delay Of Further Litigation

The complexity, expense and likely duration of the litigation are other factors considered in determining the fairness of a settlement.  *Telectronics*, 137 F. Supp. 2d at 1013.  In this case, if not for this settlement, the case would continue to be fiercely contested by both parties.  Both parties have demonstrated that the case will be pursued with vigor and are represented by well-respected and highly capable counsel.  Moreover, the additional expense of further litigation would be substantial.  If this case were not settled, the parties would need to conduct discovery regarding the scope of the class and finish merits, damages and expert discovery.  Based upon the unprecedented discovery disputes and other skirmishes that the parties have engaged in, it is without doubt that, absent settlement, this litigation will be an enormous drain on the parties as well as this Court.

### 3.    Well-Informed Class Counsel Support The Settlement

The judgment of the parties' counsel that the settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. GM*, unreported at 2006 WL 891151, at *18 (*citing Mich. Hosp. Ass'n v. Babcock*, No. 5:89-CV00070, unreported at 1991 U.S. Dist. LEXIS 2058, at *6 (W.D. Mich.

Feb. 11, 1991) ("It is ... well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.")); *see Smith v. Ajax Magnethermic Corp.*, unreported at 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (attached as Exhibit H) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'")

Class counsel in this case are reputable practitioners and trial counsel experienced in complex class action litigation who have adequately assessed the strengths of their respective claims and positions. *See UAW v. GM*, unreported, 2006 WL 891151, at *18. "Under the law, their collective judgment in favor of the Settlement is entitled to considerable weight." *Id.*; *see also*, *Ass'n for Disabled Americans, Inc., Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) ("the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel'"). Plaintiffs' class counsel has regularly engaged in major complex consumer litigation of size, scope and complexity similar to this case.  (Kennedy Affidavit)  Indeed, Plaintiffs' counsel have successfully prosecuted many and varied class actions and other complex litigation, and are well-qualified to evaluate this settlement. *Id.* As the Sixth Circuit has stated, the judgment of Plaintiff's class counsel, who have tried other large class cases to verdict, indicates that the settlement is fair, and strongly supports settlement approval.

### 4.    The Amount of Discovery Completed And The Character Of The Evidence Uncovered

To ensure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the settlement proposal, the stage of the proceedings and the extent of discovery is another factor which is considered in determining the fairness of the settlement.

17

*Telectronics*, 137 F. Supp. 2d at 1015.  In this case, both the knowledge and experience of Plaintiffs' counsel, the stage of discovery, and the ultimate state of the proceedings (i.e., class certification) reached a point where an intelligent evaluation of the strengths and weaknesses of the class's claims and the propriety of the settlement could be made.[8]  Thousands of pages of documents were produced and reviewed, 19 depositions were taken, expert reports were produced and Plaintiffs' counsel performed broad and deep research and informal discovery regarding the merits of this case.    (Kennedy Affidavit)  Ultimately, the case was vigorously contested for close to five (5) years with 7,755 hours being devoted to this matter by Plaintiffs' counsel.

There is no question, that Plaintiffs' class counsel was in an excellent position to evaluate the strengths and weaknesses of the case as well as the reasonableness of the settlement.  The information described above allowed Plaintiffs' class counsel to evaluate this case and negotiate favorable terms on behalf of the Class members.

## 5.    There Have Been Limited Objections From Class Members

Notice in this matter was given by direct mail to 487,277 Class members and only ninety (90) Class members opted-out and only eight (8) objections were received. (Oseas Declaration, ¶¶ 7, 13, 14).   "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2nd Cir. 2005); *Hainey v. Parrott*, unreported at 2007 WL 2752375, at *5 (S.D. Ohio Sept. 20, 2007) (attached as Exhibit I) ("a small number of objections, particularly in a

---

[8] In evaluating a proposed settlement, the court need not possess sufficient "evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." 4 Newberg on Class Actions § 11:45 (4th ed. 2002).  Instead, the district judge need only have "sufficient facts before him to intelligently approve or disapprove the settlement." *International,* 2006 WL 1984363, at *25.

class of this size, indicates that the settlement is fair, reasonable and adequate."); *Kogan*, 193 F.R.D. at 503 ("in making this determination, the Court is greatly persuaded by the fact that none of the Class members objected to the settlement agreement.").  Indeed, the fact that so few Class members objected to the settlement strongly suggests that the settlement should be approved. *See also*, *Williams v. General Elec. Capital Auto Lease*, unreported at 1995 WL 765266 (N.D. Ill. 1995)  (Attached as Exhibit J) (finding 15 objections to a settlement was a small number).

Further, none of the objections should stop this Court from granting final approval.  One of the objectors broadly attacks the claims made nature of the settlement and argues that no claim form should have been required.  However, this general attack fails to consider the legal and factual context of this case.  As this Court knows, this Court certified the Ohio fraud class based upon the presumption of reliance.  The claim form allows the Defendants the opportunity, on an individual basis, to attempt to rebut the presumption of reliance.  In particular, the claim form simply requires each class member to agree with the following statement:

> By signing and returning this Claim Form, I understand that I am agreeing with the statement that "If I had been told of the availability of a lower-priced policy available from the Settling Defendants or their affiliates that offered the same coverage and same service, I would have purchased that lower-priced policy."

The purpose for this required affirmation is a negotiated right that is supported by the law.  Other courts, in related contexts, have upheld the use of a claims made process.  *See In re American Family Enterprises*, 256 B.R. 377, 416 (D.N.J. 2000) ("The value of the claims of Subclass Members have been ascertained through the claims process conducted under the terms of the Settlement Agreement, which called for Subclass Members to set forth the percentage of purchases they made from AFE in the belief that such purchases were necessary to win a sweepstakes prize or enhanced the chances of winning. ... The settlement provides equitable

19

treatment of Subclass Members by providing pro rata refunds of all eligible claims made by those who spent money on magazine subscriptions and merchandise *under the belief* that the purchases were necessary to win a sweepstakes prize or enhanced the chances of winning.") (emphasis added).

Finally, the objector's cases are completely inapposite.  For example, the objector cites to the settlement in *Dupler v. Costco Wholesale Corp.*, No. 06-CV-3141 (E.D.N.Y.) for the proposition that Travelers should simply "***cut a check*** or provide a discount to existing customers."  (Greenberg Objection at 6) (emphasis added).  But in *Costco*, there was no "check" at all, but rather an extended membership card, which simply served to benefit the defendant by encouraging the Class members to shop at their stores.  (*See* http://www.costco. com/images/content/misc/pdf/renewalsettlement.pdf at 4-5 (noting the "benefit" to the class was a 1 to 3 month membership allowing them to shop at Costco, and of course purchases at Costco results in a profit for the defendant).  Finally, objector cites  several other settlements where the amount claimed was vastly outweighed by the attorneys' fee request.  (Greenberg Objection at 7- 8).  This is not the case with this Settlement.[9]

> **6.      The Settlement Is The Product Of Arm's Length Negotiations.  There Is No Evidence Of Collusion, And The Settlement Is Consistent With The Public Interest**

The proposed settlement was the result of intensive, arm's length negotiations between the parties and between experienced attorneys familiar with the legal and factual issues of this case.   (Kennedy Affidavit)   Plaintiff's class counsel are experienced in the litigation,

---

[9] The objector also cites to *In re Mattel, Inc. Toy Lead Paint Prod. Liab. Litig.* (C.D. Cal.) to show that electronic claims forms should have been allowed.  But as the Oseas Declaration demonstrates, at the very most, only 3,846 users even accessed the settlement website here, and there is absolutely no basis to conclude that any of those users did not file a written claim form if they wanted to submit a claim in this case.

certification, trial, settlement, and claims processing of consumer cases, including nationwide class actions with many legal and factual similarities to this case. *Id*. Settlement negotiations were conducted in good faith. *Id*. There was not any evidence of -- nor was there any -- collusion between counsel.

Finally, this settlement is consistent with the public interest. As stated above, courts and the law favor settlement of class actions. In this case, the settlement provides immediate relief to participating Class members who may, most likely otherwise, never be compensated.

## IV.  THE REQUESTED INCENTIVE AWARDS TO THE SETTLEMENT CLASS REPRESENTATIVES ARE REASONABLE.

The Settlement Agreement provides that each Class Representative can receive an incentive payment up to $5,000, in recognition of their efforts on behalf of the Class. Courts routinely award such "incentive awards" to persons who assume the special litigation burden of class representative and thereby benefit the entire class. *In re Southern Ohio Correctional Facility*, 173 F.R.D. at 275 ("[C]ompensation to a class representative over and above what he may be entitled to as a class member can fairly be characterized as a litigation expense which is recoverable from a common fund created for the benefit of the entire class."); *Enter. Energy Corp.,* 137 F.R.D. at 251; (approving incentive awards of $50,000 to each of the class representatives out of a settlement fund of $56.6 million); *In re Dun & Bradstreet*, 130 F.R.D. 366, 373-74, (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton v. Cleveland* 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001); (granting a $50,000 incentive award out of a $5.25 million fund).

This incentive award is proper as a common matter of class action practice and economic logic, and it will not detract in any way from their fellow Class members' recoveries. The Class Representatives exposed themselves to investigation, and undertook personally and successfully

to achieve the benefit to the Class that this settlement represents.  The absent unnamed Class members, by contrast, are the passive beneficiaries of the Class representatives' efforts on their behalf.  The awards to be requested here are typical.  Furthermore, if approved, the incentive awards will be paid separately by Defendants, and will not reduce the award of any Class member.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval to the proposed settlement.

Dated:  January 25, 2010.                     Respectfully submitted,


                                               /s/ R. Eric Kennedy
                                              R. Eric Kennedy (0006174)
                                              Daniel P. Goetz (0065549)
                                              Weisman, Kennedy & Berris Co., L.P.A.
                                              Suite 1600 Midland Building
                                              101 Prospect Avenue, West
                                              Cleveland, Ohio 44115
                                              (216) 781-1111
                                              (216) 781-6747 (fax)
                                              ekennedy@weismanlaw.com
                                              dgoetz@weismanlaw.com

                                              Don Barrett
                                              Don Barrett, P.A.
                                              P.O. Box 987
                                              404 Court Square North
                                              Lexington, Mississippi 39095
                                              (662) 834-2376
                                              (662) 834-2628 (fax)
                                              dbarrett@barrettlawoffice.com

                                              Charles Barrett
                                              Barrett & Associates, P.A.
                                              6518 Highway 100

Suite 210
Nashville, Tennessee 37205
(615) 515-3393
(615) 515-3395 (fax)
cb@barrettandassociates.net

Tom Thrash
1101 Garland Street
Little Rock, AR  72201
(501) 374-1058
tomthrash@sbcglobal.net

Pierce Gore
Gore Law Firm
P.O. Box 33194
Los Gatos, CA  95031-3194
(408) 806-4600
(408) 376-0757
piercegore@yahoo.com
*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2010, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, the foregoing was emailed to Theodore H. Frank, attorney for Objector Daniel Greenberg, at tedfrank@gmail.com.

*/s/ R. Eric Kennedy*
R. Eric Kennedy (0006174)
Weisman Kennedy & Berris Co., L.P.A.

23