# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PAUL LONARDO, DANTE FREZZA, and
JOSEPH FELDMAN, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

    v.

THE TRAVELERS INDEMNITY
COMPANY and THE STANDARD FIRE
INSURANCE COMPANY,

        Defendants.

CASE NO. 06 CV 0962

JUDGE KATHLEEN M. O'MALLEY

CLASS ACTION

---

**DECLARATION OF JAHAN C. SAGAFI IN SUPPORT OF
PLAINTIFFS' MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFFS' MOTION FOR APPROVAL OF FEE AND COST AWARD**

855603.1

I, Jahan C. Sagafi, state and declare as follows:

1.      I am a partner in the firm of Lieff, Cabraser, Heimann & Bernstein, LLP, and serve as Plaintiffs' Counsel in the above-captioned case.  I am a member of the State Bar of California in good standing.  I make the statements herein based on facts personally known to me.

2.      I have been involved in the above-captioned matter since its inception, and have prosecuted and resolved related litigation matters as described below.

3.      Attached hereto as Exhibit A is a true and correct copy of my firm resume.

**My Experience**

4.      I graduated magna cum laude from Harvard College in 1994, where I concentrated in Social Studies.  I graduated from Harvard Law School in 2001, and have specialized in class actions and other complex civil litigation, principally employment, consumer, and mass tort matters.

5.      For the first year after I graduated from law school, I clerked for the Honorable William W Schwarzer, Senior Judge of the United States District Court for the Northern District of California.

6.      I have successfully litigated a variety of complex federal and state civil matters during my professional career, including several consumer class actions.  Class action cases I have successfully prosecuted to judgment or settlement include:  *Kline v. The Progressive Corporation,* Case No. 02-L-6 (in the Circuit Court of the First Judicial Circuit, Johnson County, Illinois), *Killman v. Safeco*, Case No. 2002 L 176 (in the Circuit Court for the First Judicial District, Williamson County, Illinois), *Goldy v. Auto-Owners Ins. Co.*, Case No. CV 03 518258 (in the Court of Common Pleas, Cuyahoga County, Ohio), *Wright v. Travelers Ins. Co.*, Case No. 03-L-2 (in the Circuit Court For the First Judicial Circuit Alexander County, Illinois), and *Gray v. New Hampshire Indemnity Company, Inc.*, Case No. CV-2002-952-2-3 (in the Circuit Court for Jefferson County, Arkansas) (all five of which were class actions on behalf of automobile insurance policyholders, and all of which resulted in substantial settlements); *Strugano v. Nextel*

-1-

*Communications, Inc.,* No. BC 288359 (Los Angeles Super. Ct.) (class action on behalf of consumers for unlawful fees and billing; settlement of $13.5-$55.5 million in benefits); *Thompson v. WFS Financial, Inc.*, No. 3-02-0570 (M.D. Tenn.), *Pakeman v. American Honda Finance Corporation*, No. 3-02-0490 (M.D. Tenn.), and *Herra v. Toyota Motor Credit Corporation*, No. CGC 03-419 230 (San Francisco Super. Ct.) (all three of which were race discrimination class action settlements) (which, collectively, resulted in settlements with benefits including some or all of the following: cash or credit payments of up to $400 per class member; broad refinancing programs reducing rates charged to existing African-American and Latino customers whose finance charge markups were 1% or more; new credit offers with finance charge markups of 0% to 1.5 million African American and Latino consumers; limits on finance charge markups on new loans of 1.75% to 2.50%; new disclosures on all contracts explaining that the interest rate may be negotiable; cy pres donations of $1.9 million).

      7.     In addition to being an active litigator, I have long been involved in many educational and legal groups, including the State Bar of California (Litigation Section Executive Committee); the National Employment Lawyer's Association; the American Association for Justice (formerly the Association of Trial Lawyers of America); the Consumer Attorneys of California; the American Bar Association; the Bar Association of San Francisco; the American Constitution Society (Chair of the Executive Board of the Bay Area Lawyer Chapter); and the American Civil Liberties Union of Northern California (Executive Committee and Board Member).

### Similar Past Litigation

      8.     For the past several years, my firm and many of Plaintiffs' Counsel in this action have been involved in related litigation against insurance companies involving practices similar to those alleged in the complaint. We secured settlements on behalf of consumers in several class actions against insurance companies on behalf of automobile insurance policy holders who alleged that the failure to disclose the existence of identical lower-priced policies

855603.1

violated various state laws. Such settlements include the five cases mentioned above: *Kline*, *Killman*, *Goldy*, *Wright*, and *Gray*.

### Time And Expenses In This Litigation

9.     This litigation involved a significant degree of risk and complexity. This matter has required our firm to spend money and time on this litigation that could have been spent on other fee-generating matters. We expended this effort without any guarantee of recovery.

10.     I, along with co-counsel, made every effort to litigate this action in an efficient and cost-effective manner by reducing duplication of effort and assigning work to the lowest billing timekeepers available for each task wherever feasible.

11.     As of January 11, 2010, my firm had expended 90.2 hours in attorney, law clerk, paralegal, and other staff time on this matter. Attached hereto as Exhibit B is a true and correct summary by individual of the hours, billing rate, and lodestar for each biller's work on this matter through that date. Attached hereto as Exhibit C is a true and correct copy of the detailed report showing the tasks performed by each biller, in chronological order. The firm's total lodestar for these hours amounts to $41,254.50. This total, of course, does not include the hundreds of hours spent over the past several years developing the expertise required to prosecute this case, in the five similar cases on behalf of automobile insurance policyholders referred to above.

12.     It is my firm's practice to maintain contemporaneous time records setting forth the amount of time spent (rounded to the nearest one-tenth of an hour) on each task and each case, and with explanatory statements regarding the actual task involved. My usual practice, and the usual practice of the other attorneys in my firm, is to record on daily time logs only those hours that my firm would customarily bill to a commercial client paying on an hourly basis. The time logs for this matter (including all billers) have been carefully reviewed, and any biller's time that may have been duplicative or inefficient is deleted from the billing records.

- 3 -

While we also exercised billing judgment after recording my time in this case, and the time of other attorneys in my office (thus eliminating some of the time that had been originally recorded as an exercise of reasonable billing judgment), I also exercised billing judgment before recording my time, because I routinely did not enter time that I thought might be duplicative, and I reduced time for work that I thought may have been inefficient.

13.     The hourly rates listed in Exhibit B are my firm's current billing rates and are supported by the extensive and specialized experience in these types of cases and recognized expertise described.

14.     I have personal knowledge of the hourly rates charged by other attorneys with comparable experience to mine in the San Francisco market, as well as to the attorneys within the firm who worked on this matter.  Based on that information, I believe that these rates are fully consistent with the market rate in San Francisco for attorneys with comparable expertise, experience and qualifications.  Based on the information I have, I believe that the rates charged by Lieff, Cabraser, Heimann & Bernstein for its partner and non-partner attorney time are reasonable and appropriate fees for San Francisco attorneys with comparable expertise, experience, and qualifications.

15.     Our firm maintains all records regarding costs expended on each case.  I have reviewed the records of costs expended in this matter.  According to our records, our firm has incurred approximately $1,739.35 in costs as of January 21, 2010.  Attached hereto as Exhibit D is a true and correct summary of the costs incurred by our firm in this matter.  My firm has not received any reimbursement for any of the monies expended to cover costs incurred.

*     *     *

855603.1

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 24th day of January, 2010, at Oakland, California.

_____
Jahan C. Sagafi

855603.1



Job : 196
Date: 1/25/2010
Time: 10:10:04 AM

# *LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP*

*Embarcadero Center West*
*275 Battery Street, 30th Floor*
*San Francisco, CA  94111-3339*
*Telephone:  (415) 956-1000*
*Facsimile:  (415) 956-1008*

*250 Hudson Street*
*8th Floor*
*New York, NY 10013-1413*
*Telephone:  (212) 355-9500*
*Facsimile:  (212) 355-9592*

*One Nashville Place*
*150 Fourth Avenue North, Suite 1650*
*Nashville, TN  37219-2415*
*Telephone:  (615) 313-9000*
*Facsimile:  (615) 313-9965*

*E-mail:  mail@lchb.com*
*Website:  www.lieffcabraser.com*

### FIRM PROFILE:

Lieff Cabraser Heimann & Bernstein, LLP, is a sixty-plus attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York and Nashville.  Lieff Cabraser has a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and investment fraud, employment discrimination and unlawful employment practices, product defect, antitrust, consumer protection, aviation, environmental and toxic exposure, and human rights.  Our clients include individuals, classes or groups of persons, businesses, and public and private entities.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States.  With co-counsel, we have represented clients across the globe in cases filed in American courts.  We have litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the last fifteen years.

Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.  Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims. We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations.  We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

In the 2009 edition of its annual list of the top plaintiffs' law firms, *The National Law Journal* again selected Lieff Cabraser.  In compiling the list, *The National Law Journal* examines recent verdicts and settlements and looked for firms "representing the best qualities of the plaintiffs' bar and that demonstrated unusual dedication and creativity."  Lieff Cabraser is one of only two plaintiffs' law firms in the United States to receive this honor for the last seven years.

80577.1

*CASE PROFILES:*

A.    **Consumer Protection**

1.    *White v. Experian Information Solutions*, No. 05-CV-1070 DOC (C.D. Cal.).  Lieff Cabraser serves as Co-Lead Counsel in a nationwide class action lawsuit against the nation's three major repositories of consumer credit information, Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC.   Plaintiffs charge that defendants violated the Fair Credit Reporting Act ("FRCA") by recklessly failing to follow reasonable procedures in the reporting, and reinvestigation of reporting, of debts discharged in Chapter 7 bankruptcy proceedings.  Plaintiffs allege that millions of Americans were denied loans or were forced to pay higher interest rates because defendants continued to report discharged debts as due and owing.

In August 2008, the Court granted final approval to a historic settlement for injunctive relief requiring detailed procedures for the retroactive correction and updating of consumers' credit file information concerning discharged debt as well as new procedures to ensure that debts subject to future discharge orders will be similarly treated.

2.    *Berger v. Property I.D. Corporation*, No.  CV  05-5373-GHK (C.D. Cal.). In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring  their California clients ' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California).  Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.

3.    *United States of America ex rel. Mary Hendow and Julie Albertson v. University of Phoenix,* No. 2:03-cv-00457-GEB-DAD (E.D. Cal.). Lieff Cabraser served as Lead Counsel representing the plaintiffs in a whistleblower lawsuit filed under the False Claim Act against the University of Phoenix. The complaint alleged that the University of Phoenix defrauded the U.S. Department of Education by obtaining federal student loan and Pell Grant monies from the federal government based on false statements of compliance with the Higher Education Act. That Act prohibits universities receiving federal student aid monies from making incentive payments to recruiters based "directly or indirectly" on the number of students they recruit or enroll. In December 2009, the parties

announced a $78.5 million settlement.  The settlement constitutes the second-largest settlement ever in a False Claims Act case in which the federal government declined to intervene in the action.

4.  ***Catholic Healthcare West Cases***, J.C.C.P. No. 4453 (Cal. Supr. Ct.). Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on Medicare.  In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million.  The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income uninsureds to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices.  Lieff Cabraser served as Lead Counsel in the coordinated action.

5.  ***Estate of Holman, et al. v. Noble Energy, Inc.***, No. 03 CV 9 (Dist. Ct., Weld County, Co.); ***Droegemueller v. Petroleum Development Corporation***, No. 07 CV 2508 JLK (D. Co.); ***Anderson v. Merit Energy Co.***, No. 07 CV 00916 LTB (D. Co.); ***Holman v. Petro-Canada Resources (USA), Inc.***, N. 07 CV 416 (Dist. Ct., Weld County, Co.). Lieff Cabraser and co-counsel represent owners of natural gas royalties in a number of lawsuits filed against gas producers and operators.  Plaintiffs allege that defendants improperly deducted from royalty payments certain costs associated with defendants' extraction and processing of natural gas from wells owned by plaintiffs.  Since 2007, our clients have recovered more than $150 million.

6.  ***Sutter Health Uninsured Pricing Cases***, J.C.C.P. No. 4388 (Cal. Supr. Ct.).  Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment.  In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action.  As part of the settlement, Class members will be entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million.  For the next three years, Sutter will maintain discounted pricing policies for uninsureds that will make Sutter's pricing for uninsureds comparable to or better than the pricing for patients with private insurance.  In addition, Sutter agreed to maintain more compassionate collections policies that will protect uninsureds who fall behind in their payments.  Lieff Cabraser served as Lead Counsel in the coordinated action.

7.  ***In re John Muir Uninsured Healthcare Cases***, JCCP No. 4494 (Cal. Supr. Ct.).  Lieff Cabraser represented nearly 53,000 uninsured patients

who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay. On November 19, 2008, the Court approved a final settlement of the *John Muir* litigation. John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients that received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million. No claims were required, so every class member received a refund or bill adjustment. Furthermore, John Muir was required to (1) maintain charity care policies to give substantial discounts – up to 100% – to low income, uninsured patients who meet certain income requirements; (2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.

8.  ***Cincotta v. California Emergency Physicians Medical Group,*** No. 07359096 (Cal. Supr. Ct.). Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California. The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period. These benefits were valued at $27 million. No claims were required, so all of these bills were cancelled. In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.

9.  ***Ricci v. Ameriquest Mortgage Company***, No. 27-CV-05-2546 (Minn. District Court). Lieff Cabraser serves as Plaintiffs' Lead Counsel for a certified class of Minnesota property owners who obtained mortgage loans from Ameriquest Mortgage Company. Plaintiffs charge that Ameriquest has engaged in a deceptive and unlawful business practices in violation of Minnesota law. Plaintiffs allege that Ameriquest trains its sales force to target economically vulnerable persons in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms.

10.  ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, No. IC 859468 (San Diego Supr. Ct.). Lieff Cabraser serves as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and

charges for medical treatment. The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency. Mr. Franklin alleged that he, like all other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment. In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also requires Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents. The prospective future discounts are worth many millions more in savings to uninsureds over the next four years.

11.   ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.). Lieff Cabraser serves as counsel for consumers that charge Dell has engaged in a scheme to deliberately cheat large numbers of consumers. The complaint charges that Dell advertises "limited time" specific-dollar discounts from expressly referenced former prices, but that the discounts are false because the reference prices are inflated beyond Dell's true regular prices. In 2007, U.S. District Court Judge Ronald M. Whyte denied Dell's motions to enforce a class action waiver clause and to compel arbitration. The Court found that the provisions in Dell's purchase agreement requiring disputes to be resolved through individual arbitration proceedings and prohibiting class actions are unconscionable under California law.

12.   ***Schaffer v. Litton Loan Servicing, LP***, No. CV 05-07673 (C.D. Cal.). Plaintiffs, all homeowners with a mortgage loan serviced by Litton Loan Servicing, charge that Litton has engaged in a scheme by which it fails to accurately service its borrowers' loans, including misapplying or failing to apply payments made. In July 2007, the Court certified a nationwide class of borrowers who have claims against Litton for violation of 12 U.S.C. § 2605(d), a provision of the Real Estate Settlement Procedures Act. This provision creates a 60-day grace period following the transfer of servicing of a mortgage loan, and prohibits loan servicers from imposing late fees or otherwise treating as late any payment that was "received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment." 12 U.S.C. § 2605(d).

13. *In re Tri-State Crematory Litigation*, MDL No. 1467 (N.D. Ga.). In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. Trial on the class members' claims against the operators of crematory began in August 2004. Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

14. *Morris v. AT&T Wireless Services*, No. C-04-1997-MJP (W.D. Wash.). Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end of billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements. In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits. Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash. Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced. Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the court agreed, declining to approve it. Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

15. *Strugano v. Nextel Communications, Inc.,* No. BC 288359 (Los Angeles Supr. Crt). In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/or (2) change from second-by-second billing to minute-by-minute billing, which caused "overage" charges (*i.e.*, for exceeding their allotted cellular plan minutes). The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected. Class Counsel secured these

benefits for a Class of approximately 308,000 customers with 1.1 million cell phone plans.

16. ***Thompson, et al. v. WFS Financial, Inc.***, No. 3-02-0570 (M.D. Tenn.); ***Pakeman, et al. v. American Honda Finance Corporation***, No. 3-02-0490 (M.D. Tenn.); ***Herra v. Toyota Motor Credit Corporation***, No. CGC 03-419 230 (San Francisco Supr. Ct.). Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of – and stop future instances of – racial discrimination in the setting of interest rates in automobile finance contracts. The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc., sell automobile finance contracts, limiting the discrimination that can occur.

TMCC, American Honda and WFS Financial allow independent automobile dealers to add a discretionary markup (often several percentage points) to the objective, credit-based interest rates determined by the finance company. Plaintiffs charged that African-American and Latino customers paid more in finance charges than similarly situated non-minority customers due to the practice by TMCC, American Honda and WFS Financial of allowing dealers to increase, or "mark up," a customer's Annual Percentage Rate ("APR") on contracts. The discretionary markup amounts were not based on objective credit-worthiness information, but were wholly subjective. Statistical analyses showed that the discretionary markups had a disparate impact on African American and Latino customers.

In the nationwide class action litigation against TMCC, American Honda and WFS Financial, the respective parties entered into landmark settlements for African American and Latino consumers which collectively provided:

- Cash or credit payments of up to $400 per class member.

- Broad refinancing programs reducing rates charged to existing African-American and Latino customers whose markups were 1% or more. These benefits were valued at $1 billion in the WFS Financial case alone.

- New pre-approved offers of credit (that cannot be marked up) to 1.5 million African American and Latino consumers.

- Limits on discretionary markups on new loans of 1.75% to 2.50% (depending on the length of the loan). This compression of the discretionary range substantially

reduced the likelihood that any markups in the future will occur as the result of racial discrimination.

- New disclosures on all contracts explaining that the interest rate may be negotiable.

- Donations of $1.9 million to non-profit organizations involved in consumer education and assistance.

In approving the settlement in *Thompson v. WFS Financial,* the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class. In 2006 in *Herra v. Toyota Motor Credit Corporation,* the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006. The monetary benefit to the class was estimated to be between $159 and $174 million.

17.   ***Providian Credit Card Cases***, No. JCCP 4085 (San Francisco Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

18.   ***California Title Insurance Industry Litigation.***   Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings. The settlements brought a total of $50 million in restitution to California consumers, including cash payments. In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers. The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

19.   ***Kline v. The Progressive Corporation,*** Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action

challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

20.   ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Supr. Ct.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders. Lieff Cabraser represented former customers of The Associates charging that the company added on mortgage loans unwanted and unnecessary insurance products and engaged in improper loan refinancing practices. Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

21.   ***In re Ocwen Federal Bank FSB Mortgage Servicing Litigation***, MDL No. 1604 (Northern District of Illinois). Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a nationwide class action against Ocwen Financial Corporation, Ocwen Federal Bank FSB, and their affiliates ("Ocwen"). This lawsuit arises out of charges against Ocwen of misconduct in servicing its customers' mortgage loans and in its provision of certain related services, including debt collection and foreclosure services.

22.   ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.). In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

23.   ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid. The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available. In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the

settlement and remanded the case for further proceedings.  264 F. 3d 712
(7th Circ. 2001).  The settlement proceeds were distributed in 2003.

24.    ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr Ct.,
Cal.).  Transamerica Corporation, through its subsidiary Transamerica
Homefirst, Inc., sold "reverse mortgages" marketed under the trade name
"Lifetime."  The Lifetime reverse mortgages were sold exclusively to
seniors, *i.e.*, persons 65 years or older.  Lieff Cabraser, with co-counsel,
filed suit on behalf of seniors alleging that the terms of the reverse
mortgages were unfair, and that borrowers were misled as to the loan
terms, including the existence and amount of certain charges and fees.  In
2003, the Court granted final approval to an $8 million settlement of the
action.

25.    ***In re American Family Enterprises***, MDL No. 1235 (D.N.J.).  Lieff
Cabraser served as co-lead counsel for a nationwide class of persons who
received any sweepstakes materials sent under the name "American
Family Publishers."  The class action lawsuit alleged that
defendants deceived consumers into purchasing magazine subscriptions
and merchandise in the belief that such purchases were necessary to win
an American Family Publishers' sweepstakes prize or enhanced their
chances of winning a sweepstakes prize.  In September 2000, the Court
granted final approval of a $33 million settlement of the class action.  In
April 2001, over 63,000 class members received refunds averaging over
$500 each, representing 92% of their eligible purchases.  In addition,
American Family Publishers agreed to make significant changes to the
way it conducts the sweepstakes.

**B.    Personal Injury and Products Liability Litigation**

Lieff Cabraser has obtained over $400 million in verdicts, judgments and settlements for
our clients in individual personal injury and wrongful death lawsuits.  Since 1995, and working
with co-counsel, we have achieved verdicts, judgments and settlements in excess of $15 billion
in product liability class action lawsuits.

We only represent plaintiffs.  In many of these cases, we assisted our clients in
persuading the corporate defendants to issue recalls or improve their safety procedures for the
protection of all consumers and patients.  For their outstanding service to their clients and
advancing the rights of all persons injured by defective products in *Mraz v. DaimlerChrysler*
(described below), Lieff Cabraser partners Robert J. Nelson and Scott P. Nealey received the
2008 California Lawyer of the Year (CLAY) Award in the field of personal injury law, and were
also selected as finalists for attorney of the year by the Consumer Attorneys of California and the
San Francisco Trial Lawyers Association.

Currently, we are prosecuting scores of lawsuits involving injuries and deaths from all
types of negligent conduct, manufacturing errors and design defects.  Our cases range from
vehicle and aviation accidents to faulty medical devices.  We also represent patients prescribed

drugs with dangerous, undisclosed side effects and consumers sickened by contaminated food products.

Our successful personal injury and products liability cases, with the exception of aviation cases which are profiled separately, include:

26. **_Individual Vehicle Injury Lawsuits._** Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by the wrongful conduct of other drivers or due to unsafe and defective vehicles, tires and other automotive equipment. We are representing clients in actions involving fatalities and serious injuries due to rollover accidents of fifteen passenger vans and sports utility vehicles. Plaintiffs allege that the vans and SUVs were defectively designed because they pose an unreasonable risk of rollover during foreseeable driving conditions.

We also represent clients in many other vehicle cases including ones where defective cruise control switches resulted in fires and transmission defects that caused the vehicle to shifted suddenly from park into reverse. In March 2007, in _Mraz v. DaimlerChrysler_, No. BC 332487 (Cal. Supr. Ct.), we obtained a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father. Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park. The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3 year old daughter Madison. The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter. Lieff Cabraser served as co-counsel in the trial.

27. **_In Re Yamaha Motor Corp. Rhino ATV Products Liability Litigation._** MDL No. 2016 (W.D. Ky.) Lieff Cabraser serves as Plaintiffs' Lead Counsel in the litigation in federal court arising out of the hundreds of serious injuries and scores of deaths in rollover accidents involving the Yamaha Rhino. The complaints charge that the Yamaha Rhino contains multiple design and engineering flaws. The allegations include that the

Rhino is equipped with defective doors, inadequate seat belts, and a dangerous roll cage. In many accidents, occupants have been ejected from their Rhino due to its deficient seat belt system and then suffered a fatal or catastrophic injury because they were struck by the vehicle's heavy, unpadded, steel roll cage. The complaints further alleges that the Yamaha Rhino is dangerously unstable due to a top-heavy design, dangerously narrow track width, high center of gravity, wheels that are too small to maintain stability, and steering geometry that facilitates rollovers and tip overs even at low speeds and on flat terrain.

28. ***Multi-State Tobacco Litigation.*** Lieff Cabraser represented the Attorneys' General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid over the next 25 years.

29. ***Fen-Phen ("Diet Drugs") Litigation.*** Lieff Cabraser represents individuals pursuing personal injury claims due to injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). We served as counsel for the plaintiff that filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of risks associated with the drugs. Since the recall was announced in 1997, Lieff Cabraser has represented over 400 persons in individual actions who have suffered heart and/or lung damage, most often consisting of cardiac valve damage and/or Primary Pulmonary Hypertension, after ingesting Pondimin or Redux. In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser also served on the Plaintiffs' Executive Committee in the California Coordinated Proceedings in California state court, and as class counsel in the State of Washington certified medical monitoring action.

30. ***In re ConAgra Peanut Butter Products Liability Litigation***, MDL No. 1845 (N.D. Ga.). In September 2007, the federal court appointed

Elizabeth Cabraser as Plaintiffs' Lead Counsel in the litigation arising out of the recall of Peter Pan and Great Value peanut butter. Tens of thousands of consumers nationwide contracted *Salmonella* poisoning from eating contaminated peanut butter produced at a single ConAgra plant in Sylvester, Georgia. In February 2007, the FDA confirmed the presence of *Salmonella* in opened jars of Peter Pan and Great Value peanut butter obtained from inflected persons.

31. ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). Lieff Cabraser represents patients that suffered heart attacks or strokes, and the families of loved ones who died, after having being prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in Federal court and pursuing all settlement options with Merck. In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, tried in the federal Court in New Orleans. Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages. In November 2007, Merck announced that it has entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings. Merck will pay a fixed amount of $4.85 billion into a settlement fund for qualifying claims already filed against Merck.

32. ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL 1699 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in Federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

The litigation presented unique challenges, including two drugs with different regulatory histories and different liability issues, and the risk of dismissal on preemption grounds. Discovery was extensive, involving tens of millions of documents and over a hundred multi-day depositions. Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer is paying at least $850 million, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

> [L]eading counsel form both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in dealing with numerous complex legal and factual issues. The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary. The Special Master particularly wishes to recognize that leading counsel for both sides worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court.

33. *In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation*, MDL No. 1785 (D. S.C.). Lieff Cabraser partner Wendy R. Fleishman serves on Plaintiffs' Executive Committee in litigation in federal court arising out of Bausch & Lomb's recall in 2006 of its product ReNu with MoistureLoc. Consumers nationwide allege that the contact lens solution caused *Fusarium keratitis*, a rare and dangerous fungal eye infection , as well as other serious eye infections because the solution failed to disinfect and cleanse contact lenses, contrary to its claims. Many contact lens wearers were forced to undergo painful corneal transplant surgery to save their vision; others have lost all or part of their vision permanently.

34. *In re Guidant Implantable Defibrillators Products Liability Litigation*, MDL No. 1708. Lieff Cabraser serves on the Plaintiffs' Lead Counsel Committee in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices. At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported, since implantable cardio-defibrillators are not routinely evaluated after death. In January 2008, the parties reached a global settlement of the action. Guidant's settlements of defibrillator-related claims will total $240 million.

35. *Fallquist et al. v. Advanced Medical Optics and Allergan,* No. SC 096041 (Los Angeles Super. Ct.); *Martin et al v. Advanced Medical Optics and Allergan,* No. KC 051267H (Los Angeles Super. Ct.). Lieff Cabraser represents 31 consumers nationwide in several separate consolidated personal injury lawsuits filed against Advanced Medical Optics in August and November of 2007. AMO's Complete MoisturePlus

Multi Purpose Contact Lens Solution was recalled in May 2007 due to reports of a link between a rare, but serious eye infection, *Acanthamoeba keratitis,* caused by a parasite and use of AMO's contact lens solution. Plaintiffs charge that though AMO aggressively promoted Complete MoisturePlus Multi Purpose as "effective against the introduction of common ocular microorganisms," the lens solution was ineffective and vastly inferior to other multipurpose solutions on the market. Plaintiffs were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently.

36. ***Luisi et al. v. Medtronic Inc.,*** No. 07 CV 4250 (D. Minn.). Lieff Cabraser currently represents over a hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc. Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks.

37. ***Blood Factor VIII And Factor IX Litigation.*** Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represents hundreds of hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies. In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois. This groundbreaking litigation follows upon a two-month trial directed by Richard M. Heimann in 2003 in California state court on behalf of a person with hemophilia who is HIV-positive.

38. ***Sulzer Hip and Knee Implants Litigation.*** In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant. In coordinated litigation in California state court, *In re Hip Replacement Cases,* JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel. In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation,* MDL 1410, Lieff Cabraser played a significant role in negotiating a revised settlement with Sulzer valued at more than $1 billion. In May 2002, the Court granted final approval to the revised settlement. Lieff Cabraser serves as Class Counsel for Subclass V of the settlement (class members with unrevised reprocessed Inter-Op shells).

39. ***In re Baycol Products Litigation,*** MDL No. 1431 (D. Minn.). Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of

Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide. In the federal multi-district litigation, Lieff Cabraser serves as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC. In addition, Lieff Cabraser represented approximately 200 Baycol patients who have suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol. In these cases, our clients reached confidential favorable settlements with Bayer.

40. ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.). Lieff Cabraser serves on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explanation expenses and/or long term benefits.

41. ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the district court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial utilizing jury instructions and interrogatories designed by Lieff Cabraser occurred in February 1998. A partial settlement was approved thereafter by the district court, but reversed by the Court of Appeals. In March 2001, the district court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

42. ***In re Felbatol Products Liability Litigation,*** MDL No. 1048 (N.D. Cal.). Lieff Cabraser served as Co-Lead Class Counsel and Plaintiffs' Liaison Counsel in this nationwide litigation asserting medical monitoring, compensatory and punitive damages claims on behalf of 100,000 users of the anti-epilepsy drug Felbatol, who alleged present and potential injuries from its serious adverse effects, including liver failure and aplastic anemia. The nationwide Plaintiff class was certified in 1995; certification was vacated for further findings by the Ninth Circuit in *Valentino v. Carter-Wallace*, 97 F.3d 1277 (9th Cir. 1996), which affirmed the viability of nationwide mass tort class actions. In 1997, the litigation was settled favorably on behalf of all major injury claimants.

43.     *In re Cordis Pacemaker Product Liability Litigation*, MDL No. 850 (S.D. Ohio). Lieff Cabraser represented a certified nationwide class of Cordis pacemaker recipients on personal injury, emotional distress, fraud, equitable relief, and pacemaker explant compensation claims. In 1995, shortly before trial, Lieff Cabraser negotiated and obtained Court approval of a $21 million settlement of the action.

44.     *In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation*, MDL No. 1013 (D. Wyo.). Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical. Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death. In October 1994, the district court certified a nationwide class on liability issues. *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995). In November 1995, the district court approved a $150 million settlement of the litigation.

## C.     Securities and Investment Fraud

1.     *In re Scorpion Technologies, Inc. Securities Litigation I*, No. C-93-20333-EAI (N.D. Cal.); *Dietrich v. Bauer*, No. C-95-7051-RWS (S.D.N.Y.); *Claghorn v. Edsaco*, No. 98-3039-SI (N.D. Cal.). Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales. In *Scorpion I*, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. *In re Scorpion Techs.*, 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was

an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class… [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

2.   ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund, Inc., v. McKesson HBOC, Inc., et al.,*** No. 02-405792 (Cal. Supr. Ct.).  Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson"). The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs.  In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC. *McKesson HBOC, Inc. v. Supr. Court*, 115 Cal. App. 4th 1229 (2004).  Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds. This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

3.   ***In re Broadcom Corporation Derivative Litigation***, No. CV 06-3252-R (C.D. Cal.).  On December 14, 2009, U.S. District Judge Manuel L. Real of the Central District of California granted final approval to a partial settlement in which Broadcom Corporation's insurance carriers will pay $118 million to Broadcom. The settlement releases certain individual director and officer defendants covered by Broadcom's directors' and officers' policy. The $118 million settlement constitutes the second largest in a derivative action involving stock options backdating.

The settlement does not resolve the claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer. The suit alleges defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders.  By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair

market value of Broadcom stock on the day the options were actually granted. Richard M. Heimann is serving as court-appointed Lead Counsel in the action, and assisted by Lieff Cabraser attorney Joy A. Kruse.

4.  ***Alaska State Department of Revenue, et al. v. America Online, Inc., et al.,*** No. 1JU-04-503 (Alaska Supr. Ct.). In December 2006, a $50 million settlement was reached in a securities fraud action brought by the Alaska State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc. When the action was filed, the Alaska Attorney General estimated total losses at $70 million. The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement. The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

    The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction. "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

5.  ***In re Qwest Communications International, Inc. Securities and "ERISA" Litigation (No. II),*** No. 06-cv-17880-REB-PAC (MDL No.1788) (D. Col.). Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors, and other senior executives at Qwest. In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002. The cases were filed in the wake of a $400 million settlement of a securities fraud class action against Qwest that was announced in early 2006. The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or *more than 13 times* what the clients would have received had they remained in the class.

6.  ***In re Cablevision Systems Corp. Shareholder Derivative Litig.,*** No. 06-cv-4130-DGT-AKT (E.D.N.Y.). Lieff Cabraser serves as Co-Lead Counsel in a shareholders' derivative action against the board of directors

and numerous officers of Cablevision. The suit alleges that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997 and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision shareholders. According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants. In September 2008, the Court granted final approval to a $34.4 million settlement of the action. Over $24 million of the settlement was contributed directly by individual defendants who either received backdated options or participated in the backdating activity.

7. ***BlackRock Global Allocation Fund, Inc., et al. v. Tyco International Ltd., et al.***, No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and Stock Fund, et al. v. Tyco International Ltd., et al.***, No. 2:08-cv-518 (D. N.J.). Lieff Cabraser represents multiple funds of the investment firms BlackRock Inc. and Nuveen Asset Management in separate, direct securities fraud actions against Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz, and Frank E. Walsh, Jr. Plaintiffs allege that defendants engaged in a massive criminal enterprise that combined the theft of corporate assets with fraudulent accounting entries that concealed Tyco's financial condition from investors. As a result, Plaintiffs purchased Tyco common stock and other Tyco securities at artificially inflated prices and suffered losses upon disclosures revealing Tyco's true financial condition and defendants' misconduct.

In May 2009, the parties settled the claims against the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd., Covidien Ltd., and Covidien (U.S.)). The combined settlement in both cases was $54 million. Litigation is ongoing as to the remaining defendants.

8. ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL 1565 (S.D. Ohio). Lieff Cabraser serves as outside counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in this multidistrict litigation arising from fraud in connection with NCFE's issuance of notes backed by healthcare receivables. The New York City Pension Funds suffered approximately $89 million in losses resulting from the massive NCFE fraud. Having successfully resolved their claims against numerous parties, the Funds continue to pursue claims against several NCFE founders. To date, the Funds have recovered approximately 70% of their losses, primarily through settlements achieved on their behalf by Lieff Cabraser.

9.  ***Albert, et al. v. Alex. Brown Management Services, Inc., et al.; Baker, et al. v. Alex. Brown Management Services, Inc., et al.*** (Del. Ch. Ct.).  In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars.  The suits named as defendants Deutsche Bank and its subsidiaries Alex Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principals.  Among the plaintiff-investors were 70 high net worth individuals.  In the fall of 2006, the cases settled by confidential agreement.

10. ***Kofuku Bank Ltd. and Namihaya Bank Ltd. v. Republic New York Securities Corp., et al.***, No. 00 CIV 3298 (S.D.N.Y.); and ***Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp., et al.***, No. 00 CIV 4114 (S.D.N.Y.).  Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws.  Through a group of interconnected companies owned and controlled by Armstrong – the Princeton Companies – Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan.  Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' moneys were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies.  In December 2001, the claims of our clients and those of the other Princeton Note investors were settled.  As part of the settlement, our clients recovered more than $50 million, which represented 100% of the value of their principal investments less money they received in interest or other payments.

11. ***Allocco, et al. v. Gardner, et al.***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represents Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine.

The lawsuit, filed in California state court, arises out of Peregrine's August 2001 acquisition of Remedy. Plaintiffs charge that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants. Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements. The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview. The total amount received in settlements is approximately $45 million.

12.    *Lehman Brothers/First Alliance Mortgage Litigation*, No. SA CV 01-971 (C.D. Cal.). On June 16, 2003, a federal jury in California held Lehman Brothers, Inc., liable for knowingly assisting First Alliance Mortgage Corporation in committing fraud. First Alliance was accused of misrepresenting the true cost of home loans and of charging borrowers as much as 24% in loan origination and other fees. The jury found that First Alliance systematically defrauded borrowers, and that Lehman Brothers aided and abetted the fraudulent scheme. The verdict showed that the community will hold Wall Street responsible for knowingly serving as a financial backer to abusive lenders. The Ninth Circuit Court of Appeals affirmed class wide liability against Lehman Brothers.

13.    *In re Network Associates, Inc. Securities Litigation*, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the most foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases and their experience and views . . ."

14.    *In re California Micro Devices Securities Litigation*, No. C-94-2817-VRW (N.D. Cal.). Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior

to 2001, the Court approved $19 million in settlements.  In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses.  The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation."  One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable.  In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

15.  ***In re Brooks Automation, Inc. Securities Litigation***, No. 06 CA 11068 (D. Mass.).  Lieff Cabraser serves as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association  and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of all persons who purchased securities of Brooks Automation.  Plaintiff charges that Brooks Automation, its senior corporate officers and directors violated federal securities laws by backdating company stock options over a six year period, and failed to disclose the scheme in publicly filed financial statements.  Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices.  In October 2008, the Court granted final approval to a $7.75 million settlement of the action.

16.  ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.).  Lieff Cabraser served as Lead Class Counsel on behalf of multiple classes of investors defrauded in a limited partnership investment scheme.  The Court approved $15 million in partial pretrial settlements.  At trial, the jury returned a $25 million verdict, which included $10 million in punitive damages plus costs, interest, and attorneys' fees, against non-settling defendant Arthur Young & Co. on securities and tort claims arising from its involvement in the fraud.  Richard M. Heimann served as Lead Trial Counsel in the class action trial.  On appeal, the compensatory damages judgment was affirmed and the case was remanded for retrial on punitive damages.  In 1994, the Court approved a $17 million class settlement with Ernst & Young.

17. ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.). Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra. Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company. The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition. In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud. Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

18. ***In re Media Vision Technology Securities Litigation***, No. CV-94-1015 (N.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit which alleged that certain of Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings, and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them. In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial. In October, 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against these two defendants in the amount of $188 million.

19. ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990). Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants. The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets. The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

20. ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements. This policyholder settlement generated over $1 billion in restored life insurance policies, and was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

**D.    Employment Discrimination and Unfair Employment Practices**

1. ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

   On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel... Even more significant is the injunctive relief that's provided for . . ." By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

   In 2002, Judge Illston stated that the injunctive relief has been a "win/win . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees."

2. ***Amochaev et al. v. Citigroup Global Markets, Inc., d/b/a Smith Barney***, No. C 05-1298 PJH (N.D. Cal.). On August 13, 2008, the Court granted final approval to a settlement of the gender discrimination case against Smith Barney. Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of

employment. The Court approved a four-year settlement agreement that provides for comprehensive injunctive relief and significant monetary relief of $33 million for the 2,411 members of the Settlement Class. The comprehensive injunctive relief provided under the settlement is designed to increase business opportunities and promote equality in compensation for female brokers.

3. ***Wynne, et al. v. McCormick & Schmick's Seafood Restaurants, Inc.,*** No. C 06-3153 CW (N.D. Cal.). In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African American restaurant-level hourly employees. The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (e.g., server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

4. ***Rosenburg, et al. v. IBM,*** No. C 06-0430 PJH (N.D. Cal.). In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime. The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry. Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

5. ***Satchell, et al. v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.). In 2007, the Court granted final approval to a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express. The settlement requires FedEx to reform its promotion, discipline, and pay practices. Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination. The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, was approved by the Court in August 2007.

6. ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.). On July 21, 2009, the Court gave final approval to a settlement valued at up to $35 million on behalf of workers in Washington State who alleged they were deprived of meal and rest breaks and forced to work off-the-clock at Wal-Mart stores and Sam's Clubs. In addition to monetary relief, the settlement

provided injunctive relief benefiting all employees. Wal-Mart was required to undertake measures to prevent wage and hour violations at its 50 stores and clubs in Washington, measures that included the use of new technologies and compliance tools.

Plaintiffs filed their complaint in 2001. Three years later, the Court certified a class of approximately 40,000 current and former Wal-Mart employees. The eight years of litigation were intense and adversarial. Wal-Mart, currently the world's third largest corporation, vigorously denied liability and spared no expense in defending itself.

This lawsuit and similar actions filed against Wal-Mart across America served to reform the pay procedures and employment practices for Wal-Mart's 1.4 million employees nationwide. In a press release announcing the Court's approval of the settlement, Wal-Mart spokesperson Daphne Moore stated, "This lawsuit was filed years ago and the allegations are not representative of the company we are today." Lieff Cabraser served as court-appointed Co-Lead Class Counsel.

7.    ***Gerlach v. Wells Fargo & Co.,*** No. C 05-0585 CW (N.D. Cal.). In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime. Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

8.    ***Higazi v. Cadence Design Systems, Inc.,*** No. C 07-2813 JW (N.D. Cal.). In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime. Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

9.    ***Gonzalez et al. v. Abercrombie & Fitch Stores, Inc. et al.,*** No. C03-2817 SI (N.D. Cal.). In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination. The settlement also requires the company to institute a range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender. Lieff Cabraser serves as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the

Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc. Implementation of the consent decree continues into 2011.

10. *Frank v. United Airlines, Inc.*, No. C-92-0692 MJJ (N.D. Cal.). Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants.

    Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved. They are dedicated, hardworking and able counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."

11. *Winnett, et al. v. Caterpillar, Inc.*, No. 3:06-cv-00235 (M.D. Tenn.). Lieff Cabraser serves as co-counsel representing retirees in a nationwide class action lawsuit against Caterpillar, Inc. In October 2004, Caterpillar began charging monthly premiums despite longstanding contracts that promise free healthcare to certain participants and their spouses. The lawsuit seeks to end these charges and restore the plaintiffs and similarly situated retirees to the position they would have been but for Caterpillar's contractual violations. In July 2007, the Court granted the plaintiffs' class certification motion.

12. ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation,*** MDL No. 1439 (D. Or.). Lieff Cabraser and co-counsel represent personal lines claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. In November 2003, after a three-week liability phase trial, the court held that Farmers' claims adjusters who handle auto and low level property claims are entitled to overtime. 300 F. Supp. 2d 1020 (2003). The court further found that Farmers' actions were willful and were not taken in good faith, entitling the workers to liquidated damages. In January and May 2005, the court entered judgments totaling $52.5 million against Farmers, the largest judgments ever entered in as the result of the trial of a Fair Labor Standards Act ("FLSA") trial. In October 2006, the Ninth Circuit Court of Appeals reversed the judgment for plaintiffs under the FLSA and certain state laws, and remanded the case for further proceedings under the laws of Minnesota, Oregon, and Colorado.

13. *Holloway, et al. v. Best Buy,* No. C05-5056 PJH (N.D. Cal.). Lieff Cabraser, with co-counsel, represents a proposed class of current and

former employees of Best Buy in a federal class action civil rights lawsuit. Plaintiffs allege that Best Buy stores nationwide discriminate against women and minorities, specifically African Americans and Latinos. These employees charge that they are assigned to less desirable positions and denied promotions, and that those women and minorities who attain managerial positions are paid less than white males. The suit also alleges that Best Buy discriminates against African Americans in entry-level hiring decisions.

14.    ***Giannetto v. Computer Sciences Corporation***, 03-CV-8201 (C.D. Cal.). In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court in July 2005 granted final approval to a $24 million settlement with Computer Sciences Corporation. Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

15.    ***Foster v. The Great Atlantic & Pacific Tea Company, Inc.* ("A&P")**, No. 99 Civ. 3860 (CM) (S.D.N.Y.); ***LaMarca v. A&P***, Index No.: 04601973 (NY. Supreme Court, First Department). Lieff Cabraser, along with co-counsel, represented approximately 870 current and former employees of New York area supermarkets suing under the Fair Labor Standards Act. The Opt-In Plaintiffs in the certified collective action sought unpaid overtime compensation resulting from Defendants' alleged failure to compensate employees for work performed "off-the-clock." In May 2004, the Court approved a settlement providing $3.11 million to the Opt-In Plaintiffs. In June 2004, current and former full-time hourly employees of The Great Atlantic & Pacific Tea Company filed a new lawsuit against defendants in New York state court. The plaintiffs allege that defendants systematically failed to pay overtime wages and deleted hours worked from time records in violation of New York labor law. In July 2007, the Court certified the class of thousands of cashiers, clerks, bakers, deli and other hourly-paid workers. The order granting certification was affirmed on appeal.

16.    ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***, No. RG04141291 (Cal. Supr. Ct.). Store managers and assistant store managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages. Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours. Following mediation, in 2005, Longs Drugs agreed to settle the claims for a total of $11 million. Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, over 98% of the class submitted claims.

17.  ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.).  In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week.  In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

18.  ***Trotter v. Perdue Farms, Inc.***, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations.  The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act.  Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs.  The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

19.  ***Sandoval v. Mountain Center, Inc., et al.***  No. 03CC00280 (Cal. Supr. Ct.).  Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job.  In 2005, the Court approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

20.  ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.).  With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans.  After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated.  Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act.  In 2002, the Court granted final approval to a $10 million settlement.

21.  ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.).  With co-counsel, Lieff Cabraser represented 1,200

current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

22.  ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.). Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989. On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act. The case settled in 1993 for $13.5 million.

23.  ***Buttram v. UPS, Inc.***, No. C-97-01590 MJJ (N.D. Cal.). Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, among other things, Class Counsel continues to monitor the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car driver.

24.  ***Lyon v. TMP Worldwide, Inc.***, No. 993096 (Cal. Supr. Ct.). Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm. The settlement, approved in 2000, provided almost a 100% recovery to class members. The suit alleged that TMP failed to pay overtime wages to these employees.

25.  ***Kahn v. Denny's***, No. BC177254 (Cal. Supr. Ct.). Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court approved a $4 million settlement of the case in 2000.

26.  ***Giles v. Allstate***, JCCP Nos. 2984 and 2985. Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs. The action settled for approximately $40 million.

27.  ***Bogan v. Fleetwood Enterprises, Inc.***, No. CIV 00-0440-S-BLW (D. Idaho). Lieff Cabraser, along with co-counsel, represents a nationwide class of women production associates who allegedly have been discriminated against on the basis of sex with respect to promotions and compensation, and who allegedly have been subjected to rampant sexual

harassment.  In 2002, the Court approved a settlement that included comprehensive injunctive relief.

28.   *Vedachalam v. Tata America Int'l Corp.*, C 06-0963 VRW (N.D. Cal.) Lieff Cabraser and co-counsel represent a proposed class of non-U.S.-citizen employees in a nationwide class action lawsuit against Tata. Plaintiffs allege that Tata unjustly enriched itself by requiring all of its non-U.S.-citizen employees to endorse and sign over their federal and state tax refund checks to Tata.  The suit also alleges other violations of California and federal law, including that Tata did not pay its non-U.S.-citizen employees the amount promised to those employees before they came to the United States.  In 2007 and again in 2008, the Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India.  The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata.

Lieff Cabraser attorneys have also had experience working on several other employment cases, including cases involving race, gender, and age discrimination, ERISA, breach of contract claims, and wage/hour claims. Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues involving employment law.  Lieff Cabraser is currently investigating charges of race, gender and/or age discrimination, and wage/hour violations against several companies.

In 2004, Kelly M. Dermody, who oversees the firm's employment law practice, was included by *The Recorder* in a list of the best employment lawyers in the San Francisco Bay Area, and has also been selected as a *Northern California Super Lawyer.*  In 2007, the Daily Journal recognized Ms. Dermody as one of the "Top Women Litigators in California," and she also received a California Lawyer Attorney of the Year (CLAY) Award from *California Lawyer* magazine.

E.   **Antitrust/Trade Regulation/Intellectual Property**

1.   *Microsoft Private Antitrust Litigation.*  Representing businesses and consumers, Lieff Cabraser prosecuted multiple private antitrust cases against Microsoft Corporation in state courts across the country, including Florida, New York, North Carolina, and Tennessee.  Plaintiffs alleged that Microsoft had engaged in anticompetitive conduct, violated state deceptive and unfair business practices statutes, and overcharged businesses and consumers for Windows operating system software and for certain software applications, including Microsoft Word and Microsoft Office.  In August 2006, the New York Supreme Court granted final approval to a settlement that made available up to $350 million in benefits for New York businesses and consumers.  In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million.  In June 2004, the Court in the Tennessee action granted final approval to a $64 million settlement.  In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202

million settlement, one of the largest antitrust settlements in Florida history. Lieff Cabraser served as Co-Lead Counsel in the New York, North Carolina and Tennessee cases, and held leadership roles in the Florida case.

2. ***Natural Gas Antitrust Cases***, J.C.C.P. Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the *Natural Gas Antitrust Cases I-IV*

   In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading and Marketing LLC, CMS Energy Resources Management Company, and Aquila Merchant Services, Inc.

   Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform, which was facilitated by a secret netting agreement between Reliant and Enron.

   The 2007 settlement followed a settlement reach in 2006 for $92 million partial settlement with Coral Energy Resources, L.P.; Dynegy Inc. and affiliates; EnCana Corporation; WD Energy Services, Inc.; and The Williams Companies, Inc. and affiliates.

3. ***Wholesale Electricity Antitrust Cases I & II***, J.C.C.P. Nos. 4204 & 4205 (Cal. Supr. Ct.). Lieff Cabraser served as co-lead counsel in the private class action litigation against Duke Energy Trading & Marketing Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001. Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01. Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

4.   *In re TFT-LCD (Flat Panel) Antitrust Litigation,* MDL No. 1827 (N.D.
Cal.).  Representing direct purchasers of flat-panel TV screens and other
products incorporating liquid crystal displays, Lieff Cabraser serves as
one of two Interim Lead Counsel in nationwide class action litigation
against the world's leading manufacturers of Thin Film Transistor Liquid
Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as
computer monitors, laptop computers, mobile phones, personal digital
assistants and other devices.  The plaintiffs allege that from at least
January 1, 1998 through December 31, 2005 defendants conspired to raise,
fix and stabilize the prices of TFT-LCDs.

5.   *Azizian v. Federated Department Stores,* 3:03 CV 03359 SBA (N.D.
Cal.).  In March 2005, the Court granted final approval to a settlement that
Lieff Cabraser and co-counsel reached with numerous department store
cosmetics manufacturers and retailers.  The settlement is valued at $175
million and includes significant injunctive relief, for the benefit of a
nationwide class of consumers of department store cosmetics.  The
complaint alleged the manufacturers and retailers violated antitrust law by
engaging in anticompetitive practices to prevent discounting of department
store cosmetics.

6.   *Sullivan v. DB Investments*, No. 04-02819 (D. N.J.).  Lieff Cabraser
served as class counsel for consumers who purchased diamonds from 1994
through March 31, 2006, in a class action lawsuit against the De Beers
group of companies.  Plaintiffs charged that De Beers conspired to
monopolize the sale of rough diamonds.  In May 2008, the Court granted
final approval of a settlement that provides $295 million to purchasers of
diamonds and diamond jewelry, including $130 million to consumers.
The settlement also prevents De Beers from continuing its illegal business
practices and requires De Beers to submit to the jurisdiction of the Court
to enforce the settlement.

7.   *In re ATM Antitrust Litigation*, No. C-04-2676 (N.D. Cal.).  Lieff
Cabraser represents a putative class of ATM users against a number of
banks comprising the Star ATM Network, alleging that those banks
conspired to fix the price of ATM interchange fees, thereby unlawfully
inflating fees paid by ATM users in the network.

8.   *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL
No. 1819 (N.D. Cal.).  Plaintiffs allege that from November 1, 1996
through December 31, 2006, the defendant manufacturers conspired to fix
and maintain artificially high prices for SRAM, a type of memory used in
many products including smartphones and computers.  In February 2008,
U.S. District Court Judge Claudia Wilken denied most aspects of
defendants' motions to dismiss plaintiffs' complaints.  In November 2009,
the Court certified a nationwide class seeking injunctive relief and twenty-
seven state classes seeking damages.  Lieff Cabraser serves as one of three

members of the Steering Committee for consumers and other indirect purchasers of SRAM.

9.  ***In re Flash Memory Antitrust Litigation,*** MDL No. 1852. Lieff Cabraser is class counsel for purchasers of flash memory, which is commonly used in a variety of applications, including circuit boards, memory cards, digital cameras, USB storage devices, portable music players, mobile wireless technology, game consoles and personal computers. Plaintiffs allege that they have been deprived of free and open competition, and that prices for flash memory sold by defendants have been fixed, raised, maintained and stabilized at artificially high levels throughout the United States.

10. ***In re Publication Paper Antitrust Litigation***, MDL No. 1631 (D. Conn.). Lieff Cabraser serves as class counsel in this nationwide antitrust class action on behalf of printing companies. Plaintiffs allege that the defendants, who are among the world's largest paper manufacturers, conspired illegally to fix the price of publication paper that is used to print magazines.

11. ***Spectrum Stores, Inc., et al. v. Citgo Petroleum Corp.,*** H-06-3569 (S.D. Tex.). Lieff Cabraser serves as class counsel on behalf of direct purchasers of gasoline and other oil-based products from Citgo. The plaintiffs allege antitrust damages for Citgo's participation in OPEC's oil cartel.

12. ***In re High Pressure Laminates Antitrust Litigation***, MDL No. 1368 (S.D.N.Y.). Lieff Cabraser served as Trial Counsel on behalf of a class of direct purchasers of high pressure laminates. The case in 2006 was tried to a jury verdict. The case settled for over $40 million.

13. ***In re Buspirone Antitrust Litigation***, MDL No. 1413 (S.D.N.Y.). In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

14. ***In re Lupron Marketing and Sales Practices Litigation***, MDL No. 1430 (D. Mass.). In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty. The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical

Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005. Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid. Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

15. *California Vitamin Cases*, J.C.C.P. No. 4076 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution. In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins. In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

16. *Pharmaceutical Cases I, II, and III*, J.C.C.P. Nos. 2969, 2971 & 2972 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead and Co-Liaison Counsel representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act. The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses. In April 1999, the Court approved a settlement providing $148 million in free, brand-name prescription drugs to health agencies that serve California's poor and uninsured. In October 2001, the Court approved a settlement with the remaining defendants in the case, which provided an additional $23 million in free, brand-name prescription drugs to these agencies.

17. *Quantegy Recording Solutions, LLC, et al. v. Toda Kogyo Corp., et al.*, No. C-02-1611 (PJH). In August 2006 and January 2009, the Court approved the final settlements in antitrust litigation against manufacturers, producers, and distributors of magnetic iron oxide ("MIO"). MIO is used in the manufacture of audiotape, videotape, and data storage tape. Plaintiffs alleged that defendants violated federal antitrust laws by conspiring to fix, maintain, and stabilize the prices and to allocate the worldwide markets for MIO from 1991 to October 12, 2005. The value of all settlements reached in the litigation was $6.35 million. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

18. *Coalition for Elders' Independence, Inc. v. Biovail Corporation,* No. CV023320 (Cal. Supr. Ct.). Lieff Cabraser serves as Co-Lead Counsel for class of consumers who purchased the drug Adalat, also known as Nifedipine. Plaintiffs allege that two generic manufacturers of Adalat

entered into an agreement to allocate the dosages markets for generic Adalat, thereby substantially reducing competition and unlawfully inflating prices on both generic and brand-name Adalat, in violation of state antitrust laws.

19. ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.). Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

20. ***Electrical Carbon Products Cases***, J.C.C.P. No. 4294 (San Francisco Supr. Court). Lieff Cabraser represents the City and County of San Francisco and a class of indirect purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Cartwright Act and the Unfair Competition Law. Lieff Cabraser also represents the People of the State of California in claims arising from the Unfair Competition Law.

21. ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for the direct purchasers of compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

22. ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.). Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet. Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet. In 2001, the Court approved a $50 million settlement of the case.

23. ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.). Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery. In December 2001, the Court approved a $12.5 million settlement of the litigation.

24. ***In re Toys 'R' Us Antitrust Litigation***, MDL No. 1211 (E.D.N.Y.). Lieff Cabraser served as Co-Lead Counsel representing a class of direct purchasers (consumers) who alleged that Toys 'R' Us conspired with the major toy manufacturers to boycott certain discount retailers in order to

restrict competition and inflate toy prices.  In February 2000, the Court approved a settlement of cash and product of over $56 million.

25.     ***In re Travel Agency Commission Antitrust Litigation***, MDL No. 1058 (D. Minn.).  Lieff Cabraser served as Co-Lead Counsel for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the commissions paid to travel agents.  In 1997, the Court approved an $82 million settlement.

26.     ***Sanitary Paper Cases I & II***, J.C.C.P. Nos. 4019 & 4027 (Cal. Supr. Ct.).  Lieff Cabraser served as Liaison Counsel on behalf of indirect purchasers of commercial paper products.  Plaintiffs alleged that from 1993 to 2000 Defendants fixed the price of commercial tissue, toilet paper, toilet seat covers, and other commercial paper products in violation of the Cartwright Act and Unfair Competition Act.  In February 2001, the Court approved a $3 million settlement of the case.

27.     ***Schwartz v. National Football League***, No. 97-CV-5184 (E.D. Pa.).  Lieff Cabraser served as counsel for individuals who purchased the "NFL Sunday Ticket" package of private satellite transmissions in litigation against the National Football League for allegedly violating the Sherman Act by limiting the distribution of television broadcasts of NFL games by satellite transmission to one package.  In August 2001, the Court approved of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

28.     ***In re Commercial Explosives Antitrust Litigation***, MDL No. 1093 (D. Utah).  Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations.  In 1998, the Court approved a $77 million settlement of the litigation.

29.     ***In re California Indirect-Purchaser X-Ray Antitrust Litigation***, No. 960886 (Cal. Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of indirect purchasers (consumers) of medical x-ray film who alleged violations of the Cartwright and Unfair Competition Acts.  In 1998, the Court approved a $3.75 million settlement of the litigation.

30.     ***In re Brand Name Prescription Drugs***, MDL No. 997 (N.D. Ill.).  Lieff Cabraser served as Class Counsel for a class of tens of thousands of retail

pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws. Plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying them discounts provided to hospitals, health maintenance organizations, and nursing homes. In 1996 and 1998, the Court approved settlements with certain manufacturers totaling $723 million.

31.   ***In re K-Dur Prescription Drug Antitrust Litigation***, MDL No. 1419. Lieff Cabraser serves as Class Counsel on behalf of indirect purchasers of K-Dur, a potassium supplement often prescribed in conjunction with high blood pressure medication. K-Dur is the fourth most frequently prescribed drug to seniors. The complaint alleges the defendants, The lawsuits allege that Schering-Plough, privately held Upsher-Smith Laboratories and American Home Products Corporation (now Wyeth) entered into illegal agreements aimed at blocking the introduction of low-cost generic forms of K-Dur to the market. Plaintiffs' motion for class certification is pending.

32.   ***In re Flat Glass Antitrust Litigation***, MDL 1200 (W.D. Pa.). Lieff Cabraser served as Class Counsel on behalf of a class of direct purchasers of flat glass.

33.   ***In re Linerboard Antitrust Litigation***, MDL 1261 (E.D. Pa.). Lieff Cabraser served as Class Counsel on behalf of a class of direct purchasers of linerboard. The court recently approved a settlement totaling $202 million.

34.   ***Carbon Fiber Cases I, II, III***, J.C.C.P. Nos. 4212, 4216 & 4222 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel on behalf of indirect purchasers of carbon fiber. Plaintiffs alleged that defendants illegally conspired to raise prices of carbon fiber. Settlements have been reached with all of the defendants.

35.   ***Methionine Cases I and II***, J.C.C.P. Nos. 4090 & 4096 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production. Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels. The case settled.

36.   ***McIntosh v. Monsanto***, No. 4:01CV65RSW (E.D. Mo.). Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit against Monsanto Company and others alleging that a conspiracy to fix prices on genetically modified Roundup Ready soybean seeds and Yieldgard corn seeds. The case settled.

37.  ***Tortola Restaurants, L.P. v. Minnesota Mining and Manufacturing***, No. 314281 (Cal. Supr. Ct).  Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of Scotch-brand invisible and transparent tape.  Plaintiffs alleged that defendant 3M conspired with certain retailers to monopolize the sale of Scotch-brand tape in California.  This case has been resolved as part of a nationwide settlement that Lieff Cabraser negotiated, along with co-counsel.

**F.     Non-Personal Injury Defective Products**

1.  ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.).  Lieff Cabraser served as Co-lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.  The claims period runs through 2015.

2.  ***Grays Harbor Adventist Christian School v. Carrier Corporation***, No. 05-05437 (W.D. WA.)  In April 2008, the Court granted final approval to a nationwide settlement in a class action lawsuit filed by current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and equipped with polypropylene-laminated condensing heat exchangers ("CHXs").  Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names.  Plaintiffs alleged that starting in 1989 Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials.  Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely.  The settlement provides an enhanced 20-year warranty of free service and free parts for consumers whose furnaces have not yet failed.  The settlement also offers a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement.  Plaintiffs valued the settlement to consumers at over $300 million based upon the combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.

3.  ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review

by both the California Court of Appeal and Supreme Court of California. In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding. The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period. The claims program is underway and paying claims.

4. ***In re Mercedes-Benz Tele-Aid Contract Litigation, MDL No. 1914*** (D. N.J.). With co-counsel, Lieff Cabraser represents owners and lessees of Mercedes-Benz cars and SUVs equipped with the Tele-Aid system, an emergency response system which links subscribers to road-side assistance operators by using a combination of global positioning and cellular technology. In 2002, the Federal Communications Commission issued a rule, effective 2008, eliminating the requirement that wireless phone carriers provide analog-based networks. The Tele-Aid system offered by Mercedes-Benz relied on analog signals. Plaintiffs charge that Mercedes-Benz committed fraud in promoting and selling the Tele-Aid system without disclosing to buyers of certain model years that the Tele-Aid system as installed would become obsolete in 2008. Mercedes-Benz subsequently told customers that they could pay to upgrade their Tele-Aid system to operate over a digital network, at a cost of as much as $1,500 for some owners. Plaintiffs' complaint seeks damages for Mercedes-Benz fraudulent conduct, along with reimbursement for Mercedes-Benz customers with analog systems who paid to upgrade their Tele-Aid systems to operate on a digital network. In an April 2009 published order, the Court certified a nationwide class of all persons or entities in the U.S. who purchased or leased a Mercedes-Benz vehicle equipped with an analog-only Tele Aid system after August 8, 2002, and (1) subscribed to Tele Aid service until being informed that such service would be discontinued at the end of 2007, or (2) purchased an upgrade to digital equipment.

5. ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.). In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails. Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings. After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok. The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product. Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

6. **Toshiba Laptop Screen Flicker Settlement.** Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component. Under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

7. **Create-A-Card v. Intuit**, No. C07-6452 WHA (N.D. Cal.). Lieff Cabraser, with co-counsel, represented business users of QuickBooks Pro for accounting that lost their QuickBooks data and other files due to faulty software code sent by Intuit, the producer of QuickBooks. In September 2009, the Court granted final approval to a settlement that provided all class members who filed a valid claim with a free software upgrade and compensation for certain data-recovery costs. Commenting on the settlement and the work of Lieff Cabraser on September 17, 2009, U.S. District Court Judge William H. Alsup stated, "I want to come back to something that I observed in this case firsthand for a long time now. I think you've done an excellent job in the case as class counsel and the class has been well represented having your and your firm in the case."

8. **ABS Pipe Litigation**, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.). Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking. Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product. Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

9. **McManus, et al. v. Fleetwood Enterprises, Inc.**, No. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor

homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.

10. ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The settlement claims program will continue past 2010, under the continuing supervision of the trial court.

11. ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser Heimann & Bernstein served as Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, on their homes. The Class was certified in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second Class-wide trial, and in 1998, the Court approved a Class Settlement. Under the Settlement, Class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 can make claims through 2008 and have their homes evaluated by independent inspectors. Class members with qualifying damage to their siding recover damages associated with the siding. To date, the Settlement has paid out over $805 million to homeowners across the country, and claims continue to be made and paid.

12. ***Weekend Warrior Trailer Cases***, J.C.C.P. No. 4455 (Cal. Supr. Ct.). Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior trailers manufactured between 1998 and 2006 that were equipped with frames manufactured, assembled, or supplied by Zieman Manufacturing Company. The trailers, commonly referred to as "toy haulers," were used to transport outdoor recreational equipment such as motorcycles and all-terrain vehicles. Plaintiffs charged that Weekend Warrior and Zieman knew of design and performance problems, including bent frames,

detached siding, and warped forward cargo areas, with the trailers, and concealed the defects from consumers. In February 2008, the Court approved a $5.5 million settlement of the action that provided for the repair and/or reimbursement of the trailers. In approving the settlement, California Superior Court Judge Thierry P. Colaw stated that class counsel were "some of the best" and "there was an overwhelming positive reaction to the settlement" among class members.

13.  ***Lundell v. Dell***, No. C05-03970 (N.D. Cal.). Lieff Cabraser served as Lead Class Counsel for consumers who experienced power problems with the Dell Inspiron 5150 notebook. In December 2006, the Court granted final approval to a settlement of the class action which extended the one-year limited warranty on the notebook for a set of repairs related to the power system. In addition, class members that paid Dell or a third party for repair of the power system of their notebook were entitled to a 100% cash refund from Dell.

14.  ***Kan v. Toshiba American Information Systems***, No. BC327273 (Los Angeles Super. Ct.). Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook. Consumers alleged a series of defects were present in the notebook. In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100 notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.

15.  ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-879-JO (D. Or.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. In 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

16.  ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Supr. Ct., Cal.). Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion. The chip replacement program has been implemented, and is ongoing.

17.  ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated

2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil.  Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief.  Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil.  In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

18.     *In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation*, MDL No. 961 (E.D. PA).  Lieff Cabraser served as court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks.  The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law.  In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings.  In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects.  Final approval was granted in November 1996.

19.     *Hanlon v. Chrysler Corp.*, No. C-95-2010-CAL (N.D. Cal.).  In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs.  As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches.  The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

**G.     Environmental and Toxic Exposures**

1.      *In re Unocal Refinery Litigation*, No. C 94-04141 (Cal. Supr. Ct.).  Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California.  The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

2.      *Kentucky Coal Sludge Litigation.*  On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 300 million gallons of coal sludge (a wet mixture produced by the treatment and

cleaning of coal) into waterways in the region and contaminating hundreds of properties. This was one of the worst environmental disasters in the Southeastern United States. With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties. In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

3. ***Toms River Childhood Cancer Incidents***. With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area. Commencing in 1998, the parties – the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area – participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter. In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

4. ***In re Exxon Valdez Oil Spill Litigation*** (District of Alaska/Alaska Supr. Ct.). The Exxon Valdez ran aground in March of 1989, spilling 11 million gallons of oil into Prince William Sound. Lieff Cabraser served as one of the court-appointed Plaintiffs' Class Counsel. The class consisted of 32,000 fisherman, Alaska natives, landowners and others whose livelihoods were gravely affected by the disaster. In addition, Lieff served on the Class Trial Team in 1994. A class action jury trial was held in federal court in 1994. The plaintiff class were awarded $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive. In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion. Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the Exxon Valdez through Prince William Sound." In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines. In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion. Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages. With interest, the total award to the plaintiffs class was $1.515 billion.

5.   ***West v. G&H Seed Co., Aventis CropSciences USA, LLP, et al.***, No. 99-C-4984-A (La. State Ct).  With co-counsel, Lieff Cabraser represented a class of 1,500 Louisiana crawfish farmers.  The farmers sued Bayer CropScience LP claiming the pesticide ICON killed their crawfish and caused economic ruin.  In 2004, the Court granted approved a $45 million settlement.  The settlement was reached after the parties had presented nearly a month's worth of evidence at trial, and were on the verge of making closing arguments to the jury.

6.   ***Craft v. Vanderbilt University****,* Civ. No. 3-94-0090 (M.D. Tenn.).  Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940's.  The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel O'Leary's 1993 disclosures of government sponsored human radiation experimentation during the Cold War.  Defendants' attempts to dismiss the claims and decertify the class were unsuccessful.  The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

7.   ***In re GCC Richmond Works Cases***, J.C.C.P. No. 2906 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California on July 26, 1993.  The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

8.   ***In re Sacramento River Spill Cases I and II***, J.C.C.P. Nos. 2617 & 2620 (Cal. Supr. Ct.).  On July 14, 1991, a Southern Pacific train tanker car derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmir. The metam sodium mixed thoroughly with the river water, having a devastating effect on the river and surrounding ecosystem. In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting. Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel, Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

H.     **Aviation Law**

1.     ***In re Air Crash near Athens, Greece on August 14, 2005,*** MDL No.
1773. On August 14, 2005, a Boeing 737 operating as Helios Airways
flight 522 crashed north of Athens, Greece, resulting in the deaths of all
passengers and crew. The aircraft was heading from Larnaca, Cyprus to
Athens International Airport when ground controllers lost contact with the
pilots, who had radioed in to report problems with the air conditioning
system. Press reports about the official investigation indicate that a single
switch for the pressurization system on the plane was not properly set by
the pilots, and eventually both were rendered unconscious, along with
most of the passengers and cabin crew. Lieff Cabraser represented the
families of several victims, and filed complaints alleging that a series of
design defects in the Boeing 737-300 contributed to the pilots' failure to
understand the nature of the problems they were facing. Foremost among
those defects was a confusing pressurization warning "horn" which uses
the same sound that alerts pilots to improper takeoff and landing
configurations. The families represented by Lieff Cabraser obtained
substantial economic recoveries in a settlement of the case.

2.     ***Barbosa Garcia et al. v. Excelaire Service, Inc., and Honeywell
International, Inc.,*** No. CV 06-5964 (E.D. N.Y.). Lieff Cabraser served
as Plaintiffs' Liaison Counsel and represents over twenty families whose
loved ones died in the Gol Airlines Flight 1907 crash. On September 29,
2006, a brand-new Boeing 737-800 operated by Brazilian air carrier Gol
plunged into the Amazon jungle after colliding with a smaller plane
owned by the American company ExcelAire Service, Inc. None of the
149 passengers and six crew members on board the Gol flight survived the
accident. The complaint charged that the pilots of the ExcelAire jet were
flying at an incorrect altitude at the time of the collision, failed to operate
the jet's transponder and radio equipment properly, and failed to maintain
communication with Brazilian air traffic control in violation of
international civil aviation standards. If the pilots of the ExcelAire aircraft
had followed these standards, plaintiffs charge that the collision would not
have occurred. At the time of the collision, the ExcelAire aircraft's
transponder manufactured by Honeywell was not functioning. A
transponder transmits a plane's altitude and operates its automatic anti-
collision system. The complaint charged that Honeywell shares
responsibility for the tragedy because it defectively designed the
transponder on the ExcelAire jet, and failed to warn of dangers resulting
from foreseeable uses of the transponder. The cases settled after they
were sent to Brazil for prosecution.

3.     ***In re Air Crash at Lexington, Kentucky, August 27, 2006,*** No. 07 CV
006 (E.D. Ky.). A Bombardier CRJ-100 commuter plane operated by
Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006
shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing

47 passengers and two crew members. The aircraft attempted to take off from the wrong runway. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

4.     ***Crash of West Caribbean Airways Flight 708.*** On August 16, 2005, a McDonnell Douglas MD-82 operated by West Caribbean Airways lost engine power and crashed near La Cucharita, Venezuela, during a flight from Panama City to Fort de France, Martinique. Martinique is a province of France. A large number of the victims' families retained French attorneys to represent them. In light of Lieff Cabraser's work on the Flash Air case (see below), those French attorneys asked Lieff Cabraser to advise them on the substance of U.S. laws which may be applicable to a claim against The Boeing Company (successor to McDonnell Douglas) or Pratt & Whitney, the manufacturer of the aircraft's engines.

5.     ***Crash of Manhattan Tourist Helicopter.*** On June 14, 2005 a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City. The pilot and six passengers were immersed upside-down in the water as the helicopter overturned. Lieff Cabraser represented a passenger on the helicopter, and the case was settled on favorable, confidential terms.

6.     ***Crash of "Legend" Aircraft in Tucson, AZ.*** On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger. Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed. Lieff Cabraser is investigating the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off. The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration. Lieff Cabraser represented the widow of the passenger, and the case was settled on favorable, confidential terms.

7.     ***Crash of Air Algerie Boeing 737.*** Together with French co-counsel, Lieff Cabraser represented the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed. All but one of the 97 passengers were killed, along with six crew members. The families represented by Lieff Cabraser obtained economic recoveries in a settlement of the case.

8.     ***Crash of Flash Air Boeing 737.*** On January 3, 2004, all 148 passengers and crew were killed when a Flash Airlines Boeing 737 plunged into the Red Sea off the coast of Egypt, after the pilots encountered a malfunction

in the flight control system. Most of the passengers were from France and were vacationing at the seaside resort of Sharm el Sheikh. After the families retained French attorneys to represent them, those French attorneys conducted several rounds of interviews of U.S. law firms with the intention of engaging one of those firms to file an action in the United States against Boeing, which manufactured the aircraft in the United States. Lieff Cabraser was selected to be that firm, and filed complaints in federal court in Los Angeles on behalf of the families of more than 120 victims. These cases were subsequently transferred back to France, where the claims against the U.S. defendants continue to be litigated.

9. ***Tower Collision of U.S. Army Blackhawk Helicopter.*** Lieff Cabraser represented the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter. The Black Hawk was flying during the early morning hours at an altitude of approximately 500 feet when it hit cables supporting a 1,700 foot-tall television tower, and subsequently crashed 30 miles south of Waco, Texas, killing both pilots and five passengers, all in active Army service. The tower warning lights required by government regulations were inoperative. The case was resolved through a successful, confidential settlement.

10. ***Crash of China Eastern Airlines Bombardier CRJ200.*** Lieff Cabraser represents families of over 30 passengers who died in the November 21, 2004, crash of China Yunnan Airlines Flight 5210. The plane, a Bombardier CRJ-200 built in Canada with engines from a General Electric plant in Massachusetts, was headed for Shanghai with 47 passengers and six crew members when it crashed into a lake, seconds after taking off from Baotou, Inner Mongolia. Plaintiffs charge that the crash was the result of a combination of pilot error and defects in the aircraft and its engines.

11. ***Crash of Mandala Airlines Flight 91.*** On September 5, 2005, a Boeing 737 operating as Mandala Flight 091 crashed immediately after takeoff from the airport in Medan, Indonesia, killing 101 of the 117 people on board, as well as 44 people on the ground. Lieff Cabraser represents a number of injured persons and families of deceased victims.

12. ***Aeroflot-Russian International Airlines Airbus Disaster.*** Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was in route from Moscow to Hong Kong. All passengers on board died. According to a transcript of the cockpit voice recorder, the pilot's two children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive. Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus,

the plane's manufacturer, was headquartered. All the families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

13. ***United Airlines Boeing 747 Disaster***, MDL No. 807 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company. Among our work, we developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

14. ***German Air Force Lockheed F-104 Star Fighter Litigation:*** In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions. Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots. Robert Lieff continued to prosecute the cases after the formation of our firm. In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts, and obtain substantial recoveries, against an American manufacturer based upon airplane accidents or crashes occurring outside of the United States.

**I.**    **International and Human Rights Litigation**

1. ***Holocaust Cases.*** Lieff Cabraser is one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era. We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000. Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School. We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks. In connection therewith,

Lieff Cabraser participated in multi-national negotiations that led to
Executive Agreements establishing an additional approximately U.S. $5
billion in funds for survivors and victims of Nazi persecution.  Our
website provides links to the websites of settlement and claims
administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the
litigation against private German corporations, entitled *In re Holocaust
Era German Industry, Bank & Insurance Litigation* (MDL No. 1337),
U.S. District Court Judge William G. Bassler stated on November 13,
2002:

> Up until this litigation, as far as I can tell, perhaps
> with some minor exceptions, the claims of slave and
> forced labor fell on deaf ears.  You can say what
> you want to say about class actions and about
> attorneys, but the fact of the matter is, there was no
> attention to this very, very large group of people by
> Germany, or by German industry until these cases
> were filed. . . .  What has been accomplished here
> with the efforts of the plaintiffs' attorneys and
> defense counsel is quite incredible. . .  I want to
> thank counsel for the assistance in bringing us to
> where we are today.  Cases don't get settled just by
> litigants.  It can only be settled by competent,
> patient attorneys.

2.    ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No.
      01-0892-CRB (N.D. Cal.).  Working with co-counsel, Lieff Cabraser
      succeeded in correcting an injustice that dated back 60 years.  The case
      was brought on behalf of Mexican workers and laborers, known as
      Braceros ("strong arms"), who came from Mexico to the United States
      pursuant to bilateral agreements from 1942 through 1946 to aid American
      farms and industries hurt by employee shortages during World War II in
      the agricultural, railroad, and other industries.  As part of the braceros
      program, employers held back 10% of the workers' wages, which were to
      be transferred via United States and Mexican banks to savings accounts
      for each Bracero.  The Braceros were never reimbursed for the portion of
      their wages placed in the forced savings accounts.

      Despite significant obstacles including the aging and passing away of
      many Braceros, statutes of limitation hurdles, and strong defenses
      to claims under contract and international law, plaintiffs prevailed in a
      settlement in February 2009.  Under the settlement, the Mexican
      government provided a payment to Braceros, or their surviving spouses or
      children, in the amount of approximately $3,500 (USD).  In approving the

settlement on February 23, 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the bench that was more difficult than this one.  It was enormously challenging. . . . It had all sorts of issues . . . that complicated it:  foreign law, constitutional law, contract law, [and] statute of limitations. . . . Notwithstanding all of these issues that kept surfacing . . . over the years, the plaintiffs persisted.  I actually expected, to tell you the truth, at some point that the plaintiffs would just give up because it was so hard, but they never did.  They never did.  And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances.

## FIRM BIOGRAPHY:

### PARTNERS

***ELIZABETH J. CABRASER***, born Oakland, California, June 23, 1952.  Admitted to practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; Eastern District of California, 1979; Central District of California and Southern District of California, 1992; U.S. Court of Appeals, Second Circuit, 2000; Third Circuit, 1994; Fifth Circuit, 1992; Sixth Circuit, 1992; Seventh Circuit, 2001; Ninth Circuit, 1979; Tenth Circuit, 1992; Eleventh Circuit, 1992; U.S. District Court, District of Hawaii, 1986.  *Education*:  Boalt Hall School of Law, University of California (J.D., 1978); University of California at Berkeley (A.B., 1975).  *Awards and Honors*:  "Edward Pollock Award," Consumer Attorneys of California, 2008; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, December 2007-2008; "Award For Public Interest Excellence," University of San Francisco School of Law Public Interest Law Foundation, 2007; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, February 2007; "Top Women Litigators in California," *The San Francisco* and *Los Angeles Daily Journal,* 2007; *Distinguished Leadership Award*, Legal Community Against Violence, 2006; "One Hundred Most Influential Lawyers in America," *The National Law Journal*, 2006, 2000 and 1997; "Top 75 Women Litigators," *California Daily Journal*, 2005-2006; Women of Achievement, Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Best Lawyer," *Best Lawyers in America*, 2006; "Top 100 Lawyers," *California Daily Journal*, 2002-2007; "Top 30 Securities Litigator," *California Daily Journal*, 2005; "Top 100 Northern California Super Lawyers," *Law & Politics*, 2005-2009; "Top 50 Female Northern California Super Lawyer," *Law & Politics*, 2005-2009; "Northern California Super Lawyer," *Law & Politics*, 2004-2009; "Top 50 Women Litigators," *California Daily Journal*, 2004; *Citation Award*, University of California, Berkeley Boalt Hall, 2003; "Top 30 Women Litigators," *California Daily Journal*, 2002; *Distinguished Jurisprudence Award*, Anti-Defamation League, 2002; "Top Ten Women Litigators," *The*

*National Law Journal,* 2001; "California Law Business Top 100 Lawyers," *California Daily Journal,* 2000-1998; *Matthew O. Tobriner Public Service Award,* Legal Aid Society, 2000; *Presidential Award of Merit,* Consumer Attorneys of California, 1998; "Fifty Most Influential Women Lawyers," *The National Law Journal,* 1998; "Lawyers of the Year," *California Lawyer,* 1998; *Public Justice Achievement Award,* Public Justice, 1997. *Publications & Presentations:* Author, "Due Process Pre-Empted: Stealth Preemption As a Consequence of Agency Capture," (2009); "*Just Choose: The Jurisprudential Necessity to Select a Single Governing Law for Mass Claims Arising from Nationally Marketed Consumer Goods and Services,*" Roger Williams University Law Review (Winter 2009); Co-Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May and June 2005); "The Manageable Nationwide Class: A Choice-of-Law Legacy of *Phillips Petroleum Co. v. Shutts,*" *University of Missouri- Kansas City Law Review,* Volume 74, Number 3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation,* Vol. 18, No. 3 (2005); Editor in Chief, *California Class Actions Practice and Procedures* (2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law,* updated and re-published in 5 *Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," ABA 8th Annual National Institute on Class Actions, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Current Issues Involving Rule 12(b)(6) and Rule 9(b)," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 2004); "New Developments in Mass Torts and Class Actions: 'Issues' Certification The Mass Torts Top Ten of 2003; Rule 23's New Provision and Action Trial Plans; And the FJC 'New Plain Language' Class Notice," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study, February 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-02); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," 36 *Wake Forest Law Review* 979 (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 *Connecticut Law Review* 1239 (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," 74 *Tulane Law Review* 2005 (June 2000); "Class Action Trends and Developments After *Amchem* and *Ortiz,*" in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); "Life After *Amchem*: The Class Struggle Continues," 31 *Loyola Law Review* 373 (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of *Amchem* and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the *Castano* Class," SB24 ALI-ABA 433 (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," 24 *CTLA Forum* 11 (Jan./Feb. 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions &*

*Derivative Suits* (Spring 1994); "An *Oracle* of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation:  Tailor a Case Management Order to Your Controversy," 21 *The Brief* 12 (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market, 12 *Class Action Reports* 402 (1989); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets:  When Fraud Creates the Market," 12 *Class Action Reports* 402 (1989); "Mandatory Certification of Settlement Classes," 10 *Class Action Reports* 151 (1987); Co-author with Alexandra L. Foote and Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002). *Member*:  State Bar of California; American Bar Association (Past Co-Chair, Committee on Mass Torts; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Past Vice-Chair, Rules & Procedures Committee, Contributor, Civil Procedure & Evidence News Letter; Business Law Section, Corporate & Litigation Group; Litigation Section and Committee on Class Actions and Derivative Suits; Co-Chair, Committee on Mass Torts); ABA National Institute on Class Actions (Organizer/ Participant, 1997-2000); American Law Institute, (Council; Advisor, American Law Institute International Jurisdiction and Judgments and Aggregate Litigation Projects); Public Justice; National Center for State Courts Mass Tort Conference Planning Committee; Federal Bar Association, Northern District of California Chapter; Fight for Justice Campaign; (California State Liaison, Women Trial Lawyers Caucus); California Constitution Revision Commission, 1993-1996; Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee, and Advisory Committee on Professional Conduct; Consumer Attorneys of California (CAOC); California Women Lawyers; Association of Business Trial Lawyers; Lawyer-Delegate, Ninth Circuit Judicial Conference, 1992-1995;  Bar Association of the Fifth Federal Circuit; Bay Area Lawyers for Individual Freedom; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Past Member, Judiciary Committee); Lawyers Club of San Francisco; Queen's Bench.

**RICHARD M. HEIMANN**, born Miami, Florida, August 23, 1948.  Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986. *Education*:  Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969).  *Employment*:  Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74.  As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials.  In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages.  *Awards & Honors*: "Northern California

Super Lawyers," *Law & Politics*, 2004 – 2009. *Member*: State Bar of California; Bar Association of San Francisco.

**WILLIAM BERNSTEIN**, born York, Pennsylvania, July 5, 1950. Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Third Circuit, 2008. *Education*: University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law (2006-Present); Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Awards & Honors*: "Top 100 Trial Lawyers in California," American Trial Lawyers Association, 2008; *Who's Who Legal*, 2007; Northern California Super Lawyers, *Law & Politics, 2004 – 2009*; Princeton Premier Registry, Business Leaders and Professionals, 2008-09; *Unsung Hero* Award, Appleseed, 2006. *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform" (American Bar Association Antitrust Law Section, Annual Spring Meeting, 2005); Co-author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation", 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996). *Member*: State Bar of California; State Bar of New York; Marin County Bar Association (Admin. of Justice Committee, 1988); Bar Association of San Francisco.

**JOSEPH R. SAVERI**, born San Francisco, California, August 18, 1962. Admitted to practice in California, 1987; U.S. District Court, Northern, Central, Southern and Eastern Districts of California; U.S. Court of Appeals, First Circuit; U.S. Court of Appeals, Second Circuit; U.S. Court of Appeals, Fifth Circuit; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Eighth Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. Court of Appeals, Federal Circuit; U.S. Supreme Court; U.S. District Court, Eastern District of Michigan, 2009. *Education*: University of Virginia (J.D., 1987); University of California at Berkeley (B.A., 1984). *Awards and Honors*: "Northern California Super Lawyers," *Law & Politics*, 2006 - 2009; AV® Peer Review Rated, *Martindale-Hubbell*. *Publications & Presentations*: "Dagher: An Admirable Exercise in Restraint," Competition: The Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California, Vol. 15, No. 2 (Fall/Winter 2006); Panelist, *Soaring Prices for Prescription Drugs: Just Rewards for Innovations or Antitrust Violations?*, University of San Francisco Law Review (November 13, 2004); *California Antitrust & Unfair Competition Law 3d* (Antitrust and Unfair Competition Law Section of the State Bar of California 2003); Panelist, Fordham Conference on Electronic Discovery, Discovery Subcommittee of Advisory Committee on the Rules of Civil Procedure; Contributing Author, *California Class Actions Practice and Procedure (*Elizabeth J. Cabraser editor in chief, 2003); "RICO Update," 22 *Review of Securities and Commodities Regulation*, No. 18 (Oct. 25, 1989). *Member*: State Bar of California; American Bar Association; Faculty Member, Sedona Conference on Antitrust Law and Litigation, 2006; Northern District of California's Civil Rules and Practice Committee; Bar Association of San Francisco; Italian Lawyers Club of San Francisco.

**DONALD C. ARBITBLIT**, born Jersey City, New Jersey, May 5, 1951. Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Awards and Honors*: "Northern California Super Lawyers," *Law & Politics*, 2004-08. *Publications & Presentations*: Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on *Joiner*: Decision on the *Daubert* Test of Admissibility of Expert Testimony," 6 *Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," 8 *Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, In re Vioxx Products Liability Litigation, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation*, MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.). *Member*: State Bar of California; Bar Association of San Francisco.

**STEVEN E. FINEMAN,** born Los Angeles, California, February 13, 1963. Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Honors/Appointments*: The Best Lawyers in American (published by American Lawyer Media), based on peer and blue ribbon panel review, selected for list of "The New York Area's Best Lawyers" (2005-2010); "New York Super Lawyers," *Law & Politics*, 2006-2008; "New York Super Lawyers, Corporate Counsel Edition, Securities Litigation," *Law & Politics*, 2008-2009; "100 Managing Partners You Need to Know," *Lawdragon*, 2008; "40 under 40", *The National Law Journal*, 2002, selected as one of the country's most successful litigators under the age of 40; Consultant to the Office of the Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services (April 2008-February 2009); New York State Trial Lawyers Institute, Quarterly (June 2005-present); Public Justice Foundation, Board of Directors (July 2002-present); Vice-President (July 2009-present); Executive Committee Member (July 2006-present), Co-Chair, Major Donors/Special Gifts Committee (July 2009-present); Treasurer (July 2008-present); Class Action Preservation Project Committee (July 2005-present; Co-Chair, July 2005-July 2009); Board of Trustees, Civil Justice Foundation (January 2004-present); Editorial Board Columnist on Federal Practice for the State Court Practitioner, New York State Trial Lawyers Association's "Bill of Particulars" (2005-present); Consultant to the Office of the Attorney General, State of New York, 2008-present; Board of Directors, New York State Trial Lawyers Association (July 2001-July 2004); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Publications & Presentations*: Global Justice Forum, Presented by Robert

L. Lieff and Lieff, Cabraser, Heimann & Bernstein, LLP -- Conference Co-Host and Moderator of Mediation/Arbitration Panel (October 16, 2009, Columbia Law School, New York, New York).  The Forum included practicing attorneys, retired judges and legal academics from countries throughout the world and focused on financial fraud, mass tort, and competition litigation in a "post-economic crisis world."; Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts* (April 6, 2009, Stanford, California); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts,* (April 16, 2008, Stanford, California); Benjamin N. Cardoza Law School, The American Constitution Society for Law and Policy, and Public Justice, Co-Organizer and Master of Ceremonies for *Justice and the Role of Class Actions* (March 28, 2008, New York, New York); Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, conference on The Globalization of Class Actions, Panel Member, *Resolution of Class and Mass Actions* (December 13 and 14, 2007, Oxford, England); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Federal Multidistrict Litigation Practice* (Fall 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Pleading a Federal Court Complaint* (Summer 2007); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Courts* (April 17, 2007, Stanford, California); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, *Finding the Balance: Federal Preemption of State Law* (June 16, 2006, Washington, D.C.); Lieff, Cabraser, Heimann & Bernstein, LLP, Global Justice Forum, Conference Moderator and Panel Member on securities litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, *Foreign Claimants in U.S. Court* (April 25, 2006, Stanford, California); Lieff, Cabraser, Heimann & Bernstein, LLP, Global Justice Forum, Conference Moderator and Speaker and Papers, *The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors* (May 20, 2005, London, England); New York State Trial Lawyers Institute, Federal Practice for State Practitioners, Speaker and Paper, *Federal Multidistrict Litigation Practice,* (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, *In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality* (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, *Practical Considerations for Investors' Counsel - Getting the Case* (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, "Magnet Courts: If You Build Them, Claims Will Come" (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation

("Selecting The Forum For a Complex Case -- Strategic Choices Between Federal And State Jurisdictions") and Alternative Dispute Resolution ("ADR In Mass Tort Litigation") (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, *Debates Over Group Litigation in Comparative Perspective*, Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, *Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme* (November 23, 1998); Leader Publications, *Litigation Strategist*, "Fen-Phen" Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation* and *Daubert Developments: Something for Plaintiffs, Defense Counsel* (June 1998, New York, New York); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, *A Plaintiffs' Counsels' Perspective: What's the Next Horizon?* (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, *The Expanding Litigation* (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, *Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles* (May 23, 1997, New York, New York). *Member*: State Bar of New York; State Bar of California; Bar of the District of Columbia; American Bar Association; Public Justice Foundation, Vice-President (July 2009-present); Board of Directors (July 2002-present); Executive Committee (July 2006-present); Co-Chair, Class Action Preservation Project ( July 2005-present); Secretary (July 2007-present); Civil Justice Foundation; American Association for Justice; Fight for Justice Campaign; Human Rights First; American Constitution Society for Law and Policy; New York State Trial Lawyers Association; Association of the Bar of the City of New York; Supreme Court Historical Society.

**ROBERT J. NELSON**, born New York, New York, October 20, 1960; admitted practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001; U.S. District Court, Eastern District of California, 2006. *Education*: New York University School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden Scholarship Program. Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa; College Scholar Honors Program. London School of Economics (General Course, 1980-81): Graded First. *Employment*: Law Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Awards & Honors*: Consumer Attorney of the Year Finalist, 2007; San Francisco Trial Lawyer of the Year Finalist, 2007; California Lawyer Attorney of the Year (CLAY) Award, 2008; "Northern California Super Lawyers," *Law & Politics*, 2004 - 2009. *Publications*: "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 *Charleston Law Review* 2 (Spring 2008) (with Elizabeth Cabraser); Contributing Author, *California Class Actions Practice and Procedures*

*(*Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," *The Practical Litigator*, Vol. II, No. 2 (March 2000)(ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 *New York University Law Review* 334 (1986). *Member*: State Bar of California; District of Columbia Bar Association; New York Bar Association; American Bar Association; Fight for Justice Campaign; Bar Association of San Francisco; Consumer Attorneys of California; American Association of Justice.

**KELLY M. DERMODY**, born Ithaca, New York, June 16, 1967. Admitted to practice in California, 1994; U.S. District Court, Northern District of California, 1995; U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Fourth Circuit (2008); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court of Colorado (2007). *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards & Honors*: "Community Justice Award," Centro Legal de la Raza, 2008; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; "Award of Merit," Bar Association of San Francisco, 2007; Consumer Attorney of the Year Finalist, Consumer Attorneys of California, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005; "Top Women Litigators in California," San Francisco and Los Angeles *Daily Journal*, 2007; California's "Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Northern California Super Lawyer," *Law & Politics*, 2004-2009; "Top 100 Northern California Super Lawyers," *Law & Politics*, 2007 & 2009; "Top 50 Female Northern California Super Lawyers," *Law & Politics*, 2007-2009; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, February 2007. *Publications & Presentations*: "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" (American Bar Association Labor and Employment Section Equal Opportunity Committee, Mid-Year Meeting, 2001); Co-Author with James M. Finberg, "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions" (Glasser Legal Works Seminar, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.*" (American Bar Association Litigation Section Annual Meeting, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.* and Fed. R. Civ. P. 23(f)" (Federal Bar Association Convention, 1999); Co-Author with James M. Finberg, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998). *Member*: Northern District of California Lawyer Representative to the Ninth Circuit Judicial Conference (2007-present); Bar Association of San Francisco (Board of Directors: 2005-present, Treasurer: 2009-present, Secretary: 2008-2009; Litigation Section, Executive Committee, 2002-2005); American Bar Association Labor and Employment Law Section, Governing Council (2009-present), CLE Conference Task Force (Co-Chair, 2008-2009, Vice-Chair, 2007-2008), Committee on Equal Opportunity in the Legal

Profession (Co-Chair, 2006-2007), Equal Employment Opportunity Committee (Co-Chair, 2003-2006; Midwinter Meeting Planning Committee, 2000-2006), Katrina Task Force (Member, 2005-2007); National Association of Women Judges (Resource Board, 2005-present); Carver Healthy Environments and Response to Trauma in Schools (Carver HEARTS), Steering Committee (2007-present); American Bar Foundation (Fellow, 2006-present); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); National Center for Lesbian Rights (Board of Directors, 2002-2008; Co-Chair, 2005-2006); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Equal Rights Advocates (Litigation Committee, 2000-2002); State Bar of California; Consumer Attorneys of California; National Employment Lawyers' Association; Bay Area Lawyers for Individual Freedom; Public Justice.

**JONATHAN D. SELBIN**, born Baton Rouge, Louisiana, May 11, 1967. Admitted to practice in California; District of Columbia; New York; U.S. Court of Appeals, Third Circuit; U.S. Court of Appeals, Fifth Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York; U.S. District Court, Eastern District of Michigan; U.S. District Court, Northern District of Florida. *Education*: Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Employment*: Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Awards & Honors*: "New York Super Lawyers," *Law & Politics*, 2006-2008. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware: The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: State Bar of California; New York State Bar Association; District of Columbia Bar Association; American Bar Association; New York State Trial Lawyers Association.

**BARRY R. HIMMELSTEIN**, born Philadelphia, Pennsylvania, March 14, 1958. Admitted to bar, 1992, California; U.S. District Court, Northern District of California, 1992. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1991); Note and Articles Editor, *Hastings Law Journal* (1990-91); University of Michigan at Ann Arbor (B.G.S., with distinction, 1982). *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1991-92. *Honors & Awards*: Northern California Super Lawyer, *Law & Politics*, 2009. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: California State Bar State Bar of California; Bar Association of San Francisco.

**MICHELE C. JACKSON**, born Redwood City, California, January 17, 1954. Admitted to bar, 1979, California; U.S. District Court, Northern District of California, 1979; United States Supreme Court, 1988; U.S. Court of Appeals, Ninth Circuit, 1981; U.S. District Court, Central District of California, 1985. *Education*: University of San Francisco School of Law (J.D., *cum laude*, 1979); Stanford University (B.A., with honors, 1976). *Employment*: Judicial Extern to Justice Wiley W. Manuel, California Supreme Court, Summer 1977. *Awards & Honors*: Northern California Super Lawyer, *Law & Politics*, 2007-2009; Recipient of State Bar Board of Governors Award. *Publications & Presentations*: Panelist, "Antitrust Dispute Resolution in Complex Business Torts and Antitrust Cases: Is There Really a Class Arbitration?" (April

2007), American Bar Association Antitrust Law Spring Meeting; Panelist, "Settlement and Mediation of Unfair Competition Disputes" (May, 2006) and other panels, State Bar of California Antitrust and Unfair Competition Section; Author, *Recent Judicial Opinions On Class And Multi-Party Arbitration In Antitrust And Consumer Cases, And Principles Underlying Those Opinions* (February 2007), American Bar Association; Chapter Co-Author with Marc Seltzer, "State Antitrust Law and Intellectual Property" in *California Antitrust & Unfair Competition Law* (Third), Vol. 1: Antitrust; Author, *Asserted Defenses to a §17200 Class Action Based on Korea Supply -- The Interplay With Indirect Purchaser Litigation* (2005) American Bar Association; Contributing Author, *California Class Actions Practice and Procedure (*2003). *Appointments*: Officer, Advisor and Executive Committee Member, State Bar of California Antitrust and Unfair Competition Section (terms September, 2001-2007). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco; McAuliffe Law Honor Society.

**MICHAEL W. SOBOL**, born Mt. Kisco, New York, October 5, 1961. Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2005; U.S. Court of Appeals for the Ninth Circuit (2009). *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Prior Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Publications & Presentations*: Panelist, National Consumer Law Center's 15th Annual Consumer Rights Litigation Conference, Class Action Symposium; Panelist, Continuing Education of the Bar (C.E.B.) Seminar on Unfair Business Practices -- California's Business and Professions Code Section 17200 and Beyond; Columnist, *On Class Actions*, Association of Business Trial Lawyers, 2005 to present; *The Fall of Class Action Waivers* (2005); *The Rise of Issue Class Certification* (2006); *Proposition 64's Unintended Consequences* (2007); *The Reach of Statutory Damages* (2008). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California, Board of Governors, (2007-2008, 2009-2010); National Association of Consume Advocates.

**FABRICE N. VINCENT**, born Paris, France, June 15, 1966. Admitted to practice in California, 1992; U.S. District Court, Northern District of  California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Awards & Honors:* Northern California Super Lawyer, *Law & Politics*, 2006 – 2009. *Publications & Presentations*: Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation,* Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-09), updated and re-published in 5 *Newberg on Class Actions* (2001-09); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion

Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers, Society of Automotive Engineers.

**DAVID S. STELLINGS**, born New Jersey, April 23, 1968. Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Member*: State Bar of New York; State Bar of New Jersey; Bar Association of the City of New York; New York State Bar Association; American Bar Association.

**ERIC B. FASTIFF,** born San Francisco, California. Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Third and Federal Circuit; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996. *Publications & Presentations*: Co-Editor, *California Class Actions Practice and Procedures*, (2003-2008); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-08); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Editorial Board Member, *Journal of Generic Medicines*, 2003-present.

**WENDY FLEISHMAN**, born Philadelphia, Pennsylvania, 1954. Admitted to practice in Pennsylvania, 1977; New York, 1992. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment- and construction-related matters); Assistant District Attorney in Philadelphia, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: "New York Super Lawyers," *Law & Politics*, 2006-2008. *Publications & Presentations*: Editor,

Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide," (2007); Co-Author with Donald C. Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," in *Scientific Evidence*, Chapter 6, (Aspen Law Pub, 1999); American Bar Association, Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, 1995-96; and 1993-94; "How to Find, Understand, and Litigate Mass Torts," NYSTLA Mass Torts Seminar (April 2009); "Ethics of Fee Agreements in Mass Torts," AAJ Education Programs (July 2009). *Appointments:* Mealey's Drug & Medical Device Litigation Conference, Co-Chair (2007); Executive Committee *In re ReNu MoistureLoc Product Liability Litigation, MDL*; *In re Guidant Product Liability Litigation, Discovery*; *In re Baycol MDL Litigation* – Co Chair Science Committee; *In re Vioxx MDL Litigation* – Pricing Committee. *Member*: New York State Trial Lawyers Association (Board of Directors, 2004-Present); Association of the Bar of the City of New York (Judiciary Committee, 2004-Present); American Bar Association (2000, Affair Chair, ABA Annual Meeting, Torts & Insurance Practices Section, NYC; 1997, Chair, Trial Techniques Committee, Tort & Insurance Practices; 1996, Chair Elect, Trial Techniques Committee, Tort & Insurance Practices); American Association for Justice (Section Officer); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York, Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York State Trial Lawyers Association; New York Women's Bar Association; Association of the Bar of the City of New York (Product Liability Committee, 2007-present); New York County Lawyers; Fight for Justice Campaign; NYTLA; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**PAULINA DO AMARAL**, born New York, New York, February 1966. Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Member*: Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

**KATHRYN E. BARNETT**, born Chapel Hill, North Carolina, October 23, 1967. Admitted to practice in Tennessee, 1992; United States District Court, Middle District of Tennessee, 1997; Sixth Circuit Court of Appeals, 2000; United States District Court, Western District of Tennessee, 2001; Eleventh Circuit Court of Appeals, 2003; United States District Court, Eastern District Tennessee, 2005. *Education*: Vanderbilt University School of Law (J.D., 1992); American Jurisprudence Awards: Torts I and Jurisprudence; Davidson College (B.A., with Honors in Philosophy, 1989), Dean Rusk Grant for International Studies. *Litigation Experience*: Ms. Barnett has tried over 15 civil and criminal trials, including complex and class action cases, as well as catastrophic personal injury cases. In 2000, Ms. Barnett obtained a verdict of nearly $6 million on behalf of parents whose unborn fetus died tragically due to

medical malpractice. In March, 2004 and in August, 2004 Ms. Barnett served as co-lead trial counsel in the class action lawsuit of *In re Tri-State Crematory Litigation*, Multi-District Litigation Docket No. 1467. The case was settled during the second week of trial. The settlements in the Tri-State litigation exceed $40 million. *Employment*: Judicial Intern to Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, Fall 1990; Assistant Public Defender, Davidson County, Tennessee, Sept. 1992—1995. *Awards & Honors*: "Best of the Bar," *Nashville Business Journal* (2003, 2005-2009); Mid-South Super Lawyer, *Law & Politics*, 2006-2008; "150 Best Lawyers in Tennessee," *Business Tennessee,* (2006-2008). *Publications & Presentations*: "Annual Review: Medical Malpractice Update" Tennessee Association for Justice (Oct, Dec. 2008); "Civil Procedure and Evidence Update," Tennessee Trial Lawyers (Oct. and Nov. 2006); "Pre-Trial Skills: Thinking on Your Feet," National Business Institute (Nov. 2006), "Trial Practice Institute," Nashville Bar Association (Sept. 2005); "State Law Class Actions," American Bar Association, Business Law Section (April 2005); "Power Windows Can Kill," *Trial* (April 2005); "Auto Defect Cases," Tennessee Trial Lawyers (Feb. 2005); "Limiting the Harmful Testimony of Experts on the Law," *Trial* (Jan. 2001); "Letting Focus Groups Work for You," *Trial* (April 1999); "Knocking Out Opposing Experts," Tennessee Trial Lawyers (October and November, 2004), Nashville Bar Association (July, 2004); "Trial Practice Tips: Powerful Trial Strategies for the Absolute Litigator," Nashville Bar Association (April, 2004); "Damages," Tennessee Trial Lawyers (Oct. and Nov. 2003); "Trying the Wrongful Death Case in Tennessee," National Business Institute (Aug. 2003); "Advanced Personal Injury," National Business Institute (July 2003); "Mass Torts," Tennessee Bar Association (July 2002); "Superior Depositions Strategies in Civil Trial Practice," National Business Institute (Jan. 2002, Dec. 1999); "Lawsuits Against the Nursing Home Industry," Tennessee Trial Lawyers (Feb. 2000); "How to Prepare for Mediation and other Practice Tips," Nashville Bar Association (Oct. 2000); "Tennessee Expert Witness," Lorman Education Services (July 2000); "Using Focus Groups to Get the Settlement or Verdict Your Client Deserves," Tennessee Trial Lawyers (Feb. 1999). *Member*: Tennessee Association for Justice (Executive Committee, 2008-2009, Secretary, 2007-2009, Chair, Continuing Education Committee, 2004-2006, Board of Governors, 2002-2009); Nashville Bar Association, First Vice President (2007), (Board, 2005-2008); Harry Phillips American Inn of Courts, (Executive Committee, 2004-09, Member, 2004-2009, 1997-99); Nashville Bar Foundation (Fellow); Tennessee Justice Center, Inc. (Board of Directors, 2002-05, Secretary-Treasurer, 2003-04); Nashville Lawyer's Association for Women (President, 2004-2005; President-elect, 2003-2004; Director, 2002-03; Treasurer, 2000-02; Nominating Committee, 2007; Board, 1998-2005); Davidson County, Tennessee Metropolitan Board of Equalization, 2000-04; Tennessee Bar Association; American Association of Trial Lawyers.

**JOY A. KRUSE**, born Buffalo, New York, February 24, 1955. Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the District of Columbia, Ninth, and Federal Circuits; U.S. District Courts for the Northern, Eastern, Central & Southern Districts of California, 1989. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Presentations & Publications*: Co-Author with Elizabeth J. Cabraser, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May and June 2005). *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco.

*STEPHEN H. CASSIDY*, born Pittsburgh, Pennsylvania, May 14, 1964. Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-89; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Publications & Presentations*: "Magnetix Toy Injuries: A Failure to Inform Safety Regulators," OpEd News (2009); "Restoring Patient Rights and Promoting Safer Medical Device," OpEd News (2009); "Internet Marketing for Plaintiffs' Firms," CAOC Conference (May 2004); "Enhancing the Role of Law Firm Marketing Departments," LexisNexis Law Firm Marketers' Roundtable (November 2003); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Public Justice; Fight for Justice Campaign; Consumer Attorneys of California.

*RACHEL GEMAN*, born Northampton, Massachusetts, August 7, 1971. Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards & Honors*: *Distinguished Honor Award*, United States Department of State, 2001. *Publications & Presentations*: "Rights Without Remedies," 2008 American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities, Panelist; "The New York Employee Advocate," Co-Editor, 2005-Present (Volumes 12 and forward); "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006) (Author & Panelist); "Time is Money, Except When It's Not: Compensable Time and the FLSA," National Employment Lawyers Association, Impact Litigation Conference (2005) (Author & Panelist); "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005) (Panelist); "Image-Based Discrimination and the BFOQ Defense," *EEO Today* (Vol. 9, Issue 1, Fall 2004) (Author); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (Spring 2004) (Author); "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003, Chair & Panelist); "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC 2003 Midwinter Meeting (Moderator). *Member*: Board Member, National Employment Lawyers' Association/New York; American Bar Association Labor and

Employment Law Section, Standing Committee on Equal Employment Opportunity (Co-Chair, 2009-present).

**SCOTT P. NEALEY**, born Champaign, Illinois, July 28, 1966. Admitted to practice in California, 1997; U.S. District Court, Northern District of California, 1998; U.S. District Court, Eastern District of California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California (J.D., 1996); University of California at Berkeley (B.A., 1988). *Honors & Awards*: California Lawyer Attorneys of the Year (CLAY) Award, 2008; Finalist, San Francisco Trial Lawyer of the Year, 2008. *Employment*: Law Clerk to Chief Justice Joseph R. Weisberger, Supreme Court of Rhode Island, 1996-97. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: Bar Association of San Francisco; State Bar of California.

**ELIZABETH A. ALEXANDER,** born Morristown, Tennessee, October 4, 1971. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board Member; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Honors & Awards*: "Rising Stars," *Law & Politics*, 2008; "Lawdragon 500 New Stars" and "Lawdragon 3000 Leading Plaintiffs' Lawyers in America," *Lawdragon* magazine, 2006-2007. *Publications & Presentations*: ABA *Survey of State Class Action Law* (2003-2007), Tennessee section; "Consumer Class Actions Against Financial Institutions," Lorman Education Services, July 2004. *Prior Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002); Law Clerk, Honorable Thomas A. Higgins, U.S. District Court for the Middle District of Tennessee (1998-2000). *Member*: State Bar of Tennessee; Tennessee Bar Association; Nashville Bar Association (Board of Directors, Young Lawyers Division); American Bar Association; Lawyers' Association for Women (2003-2005); American Bar Association Labor and Employment Law Section Equal Employment Opportunity Committee, Co-Chair, Basics Committee (2005-2006); Chair of Internal Marketing and Mentoring Committee (2006-2007); National Employment Lawyers' Association.

**DANIEL P. CHIPLOCK**, born Albany, New York. Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001; U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals for the Second Circuit (2009). *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Member*: State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Public Pension Attorneys (NAPPA); National Association of Public Pension Attorneys; National Association of Shareholder and Consumer Attorneys (Executive Committee).

**MARK P. CHALOS**, born New York, New York, September 3, 1973. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002;

U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006; U.S. District Court, Northern District of California, 2007. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: "Best of the Bar," *Nashville Business Journal*, 2008-2009; "Top 40 Under 40," *The Tennessean*, 2004; "Rising Stars," *Law & Politics*, 2008. *Publications & Presentations*: "Successfully Suing Foreign Manufacturers," TRIAL Magazine, November 2008; "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," Nashville Bar Journal, April 2005. *Member*: American Bar Association; Fight for Justice Campaign; Tennessee Bar Association; Board of Directors, Tennessee Trial Lawyers Association; Nashville Bar Association; Past-Chair, ABA YLD Criminal & Juvenile Justice Committee; American Bar Association Tort Trial and Insurance Practice Section Professionalism Committee YLD liaison; Board of Directors, Nashville Bar Association YLD; Chair, Nashville Bar Association YLD Continuing Legal Education; *Nashville Bar Journal*, Editorial Board; Tennessee Association for Justice (Board of Governors, 2008-2009); Member, Harry Phillips American Inn of Court (2002-2004); Grant Review Panelist, Metropolitan Nashville Arts Commission; Founding Member, Young Professionals Program, Frist Center for the Visual Arts; President, Kappa Chapter of Kappa Sigma Fraternity Alumni Association.

**KRISTEN E. LAW**, born Parkersburg, West Virginia, April 3, 1974. Admitted to practice in California, 2002; U.S. District Court, Northern District of California, 2002; U.S. District Court, Central District of California, 2005; US District Court; Northern District of Florida, 2009. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award; Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude, 1995*); Presidential Scholar. *Honors & Awards*: "Northern California Rising Stars," *Law & Politics*, 2009. *Member*: Phi Beta Kappa; State Bar of California.

**JAHAN C. SAGAFI**, born Philadelphia, Pennsylvania, December 26, 1971. Admitted to practice in California, 2003. *Education*: Harvard Law School (J.D., 2001); Senior Editor, *Harvard Civil Rights-Civil Liberties Law Review* (1999-2001); President, Board of Student Advisers; Harvard College (B.A., *magna cum laude*, 1994). *Employment*: Law Clerk to Judge William W Schwarzer, U.S. District Court, Northern District of California, 2001-02. *Honors & Awards*: "Northern California Rising Stars," *Law & Politics*, 2009; "Community Justice Award," Centro Legal de la Raza, 2008. *Member*: American Constitution Society (Chair of Bay Area Lawyer Chapter); ACLU of Northern California (Executive Committee, Board Member); National Employment Lawyers' Association; Consumer Attorneys of California; American Bar Association; Bar Association of San Francisco.

**KENT L. KLAUDT,** born Jamestown, North Dakota, September 6, 1968. Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. District Court, Eastern District of California, 1998; U.S. District Court, Central District of California, 2007; California Supreme Court. *Education*: University of Minnesota Law School (J.D., 1996); Outside Articles Editor, *Journal of Law & Inequality: A Journal of Theory & Practice*; National Association of Public Interest Law (Summer Fellowship, 1995); University of

Minnesota (B.A., 1991). *Employment*: BlueDog, Olson & Small, PLLP, 1995-96; Cartwright & Alexander, LLP, 1996-2001; The Cartwright Law Firm, Inc., 2001-2004. *Publications & Presentations*: "Hungary After the Revolution: Privatization, Economic Ideology, and the False Promise of the Free Market," *13 Law & Inequality: A Journal of Theory & Practice* 301. *Member*: American Trial Lawyers Association; Consumer Attorneys of California; Public Justice; San Francisco Trial Lawyers Association; National Lawyers Guild.

 ***JENNIFER GROSS***, born Sleepy Hollow, New York, July 1, 1969.  Admitted to practice in California, 1994; U.S. District Court, Central District of California, 1994. *Education*: RAND Graduate School (M. Phil., 1997); University of Southern California (J.D., 1994); Emory University (B.A., 1991). *Publications & Presentations*: Co-Author, *Intelligence, Surveillance, and Reconnaissance Force Mix Study: Final Report* (RAND 2003); Co-Author, *Asbestos Litigation Costs and Compensation: An Interim Report* (RAND 2002); Co-Author, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* (RAND 2001); Co-Author, *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (RAND, 2000); Co-Author, *Potential Vulnerabilities of U.S. Air Force Information Systems* (RAND, 1999); Co-Author, "Preliminary Results of the RAND Study of Class Action Litigation," (RAND, 1997). *Member*: State Bar of California.

 ***LEXI J. HAZAM***, born Olney, Maryland, October 9, 1973.  Admitted to practice in California, 2003; U.S. District Court, Northern District of California, 2003; U.S. Court of Appeals for the Seventh Circuit, 2006. *Education*: Stanford University (B.A., 1995, M.A., 1996), Phi Beta Kappa; Boalt Hall School of Law, University of California, Berkeley (J.D., 2001). *Employment*: Law Clerk, Mexican American Legal Defense and Education Fund, 1999; Law Clerk, Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-2002; Associate, Lieff, Cabraser, Heimann & Bernstein, LLP, 2002-2006; Partner, Lieff Global LLP, 2006-2008. *Honors & Awards*: "Northern California Rising Stars," *Law & Politics*, 2009. *Member*: State Bar of California; American Association for Justice; Consumer Attorneys of California.

 ***HEATHER A. FOSTER***, born Washington, D.C., October 2, 1970.  Admitted to practice in California in 1996; U.S. District Court, Northern District of California, 1996. *Education*: University of the Pacific, McGeorge School of Law (J.D., 1996); Moot Court Honors Board, 1995-96; Trial Advocacy Honors 1996; Boston College (B.A., 1992). *Employment*: Adjunct Professor, San Francisco State University – College of Extended Learning, Paralegal and LNC program (Fall 2000 – Spring 2001). *Publications & Presentations*: Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999). *Member*: American Association for Justice; American Bar Association (Litigation Section); Association of Legal Administrators; Bar Association of San Francisco; Legal Assistant Management Association; Phi Alpha Delta; State Bar of California (Volunteer Legal Services Program: Liaison for the Summer Associate Public Service Program – Homeless Advocacy Program, 2002; Teachers in the Schools Program, 2002; Pro Bono Attorney – Family Law Clinic, 1999); Trail Lawyers for Public Justice.

 ***BRENDAN P. GLACKIN***, born Sacramento, California, July 23, 1973.  Admitted to practice in California, 1998; New York, 2000; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004;

New York, 2000; U.S. District Court, Southern District of New York, 2001; U.S. District Court, District of Colorado, 2001. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., Phi Beta Kappa, 1995). *Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. District Court, Eastern District of California, 1998-1999. *Member*: State Bar of California; BASF Antitrust Section, Executive Committee.

**DANIEL E. SELTZ**, born Alexandria, Virginia, April 24, 1974. Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York; Eastern District of New York. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social Change*, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: Panelist, "Taking and Defending Depositions," New York City Bar, May 20, 2009; Contributing Author, *California Class Actions Practice & Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2008); "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

**TODD A. WALBURG**, born Berkeley, California, January 5, 1973. Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern, Central and Southern Districts of California, 2006; U.S. Court of Appeals for the Ninth Circuit, 2006. *Education*: University of San Francisco School of Law (J.D. 1999); Founder and President, USF Student Chapter, Association of Trial Lawyers of America (1997-1999); Investigation Intern, San Francisco Public Defender's Office; Mediation Intern, San Francisco Small Claims Court; Mediation Intern, U.S. Equal Employment Opportunity Commission; University of California at Los Angeles (B.A., 1995). *Awards*: Leesfield / Association of Trial Lawyers of America Scholarship, National Winner (1998). *Prior Employment*: Partner, Emison Hullverson Bonagofsky, LLP (2007-2008); Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2005-2007); Associate, Bennett, Johnson & Galler (2001-2005). *Publications and Presentations*: "Powerful Mediation Briefs," in The Verdict (ACCTLA 2006); "Product Liability Strategies Before Trial," SFTLA Roundtable (October, 2008). *Member*: Public Justice; American Association for Justice; American Bar Association (Tort, Trial and Insurance Practice Section); Consumer Attorneys of California; State Bar of California; San Francisco Trial Lawyers Association (Education Committee and Carlene Caldwell Scholarship Committee, 2005-2007); Alameda-Contra Costa Trial Lawyers Association (Board of Governors, 2003-2005); Bar Association of San Francisco.

### OF COUNSEL

**ROBERT L. LIEFF**, born Bridgeport, Connecticut, September 29, 1936. Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court

of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-present); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Awards & Honors*: "Northern California Super Lawyers," *Law & Politics*, 2005 - 2009. *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

**MORRIS A. RATNER**, born San Jose, California, November 13, 1966. Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits. *Education*: Harvard University (J.D., 1991); Stanford University (B.A., with distinction, 1988); Phi Beta Kappa. *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts: A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches," 20 *Berkeley Journal of International Law* 212 (No. 1, March 2002). *Faculty Appointments*: Harvard Law School, Visiting Lecturer on Law for Winter Term 2009, teaching "Holocaust Litigation." *Lectures*: Stanford University, History Department (guest lecturer, June 2008, re Holocaust-era litigation); UC Berkeley School of Law Boalt Hall (guest lecturer, 2007, re legal ethics); Columbia Law School (guest lecturer, 2004, re Holocaust litigation); New York University School of Law (guest panelist, 2003, re developments in international law). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia; Bar Association of San Francisco.

**WILLIAM B. HIRSCH**, born Los Angeles, California, May 19, 1951. Admitted to practice in California, 1983; U.S. District Court, Northern District of California; U.S. District Court, District of Hawaii, 1991. *Education*: Harvard University ( J.D., 1983); Princeton University (M.A., 1975); University of California at Santa Cruz (B.A., with highest honors, 1973). *Awards & Honors*: Trial Lawyer of the Year, Public Justice, 1995. *Publications & Presentations*: "Justice Delayed: Seven Years Later & No End In Sight," in The Exxon Valdez Disaster: Readings on a Modern Social Problem (Kendall & Hunt Pub. Co. 1996). *Member*: Bar Association of San Francisco; State Bar of California; Public Justice; American Association for Justice; ACLU of Northern California (Steering Committee, 1993-94).

**NICHOLAS R. DIAMAND**, born London, England. Admitted to practice in New York, 2003; U.S. District Court, Southern, Eastern, Northern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District

Court, Eastern District of New York (2002-03). *Publications & Presentations*: Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006; Columnist, *The New York Employee Advocate*, NELA/NY, February 2006-present. *Member*: New York City Bar Association, Public Justice, American Society of International Law, Law Society of England and Wales.

**LYDIA LEE**, Oklahoma City, Oklahoma, June 20, 1957. Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, Law Firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma Family Law Journal*, Volume 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Oklahoma Bar Association (1983 – present), Member OBA Women in Law Committee (2007-present); National Association of Public Pension Attorneys (1988 - present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member, (2004-present); Edmond Neighborhood Alliance Board of Directors (2005-present), President (2006-2007), Past President and Director (2007-present); Central Edmond Urban Development Board (2006-present); Midwest City Regional Hospital, Board of Governors (1992 - 1996), Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and Chairman of Woman's Health Committee; City of Midwest City, Planning Commission (1984 - 1998), Chairman (1990-1995), Vice-Chairman (1987 – 1990), Served on Capital Improvement Committee, Airport Zoning Commission (Tinker AFB), and Parkland Review Board, served on 1991 Midwest City Legislative Reapportionment Committee.

**BRUCE W. LEPPLA**, born Oakland, California. Admitted to practice in California, New York, Ninth Circuit Court of Appeals, California District Courts (Northern, Central, Eastern), New York District Courts (Southern, Eastern), District of Colorado. *Education*: University of California (J.D., Boalt Hall School of Law, M.G. Reade Scholarship Award); University of California at Berkeley (M.A., Economics, with honors); Yale University (B.A., *magna cum laude*, Highest Honors in Economics). *Prior Employment*: Partner, Lieff Cabraser Heimann & Bernstein, LLP (2004-2008), Counsel (2002-2003); CEO and President, California Bankers Insurance Services Inc., 1999-2001; CEO and President, Redwood Bank, (1985-1998), CFO and General Counsel (1981-1984); Brobeck, Phleger & Harrison, 1980; Davis Polk & Wardwell, 1976-80. *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; "*Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation*," Securities Litigation Report, Vol. 3, No. 8, September 2006, West

LegalWorks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10, No. 10, West LegalWorks; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 1*;" Elizabeth Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, Vol. I, No. 9, pp. 1, 3-7; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 2*;" Elizabeth Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, Vol. I, No. 10, pp. 1, 3-9; Author, "Securities Powers for Community Banks," California Bankers Association Legislative Journal (Nov. 1987). *Teaching Positions*: Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance, 1993-96; Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics, 1993-96. *Panel Presentations*: EPI European Pension Fund Summit, Montreux, Switzerland, "*Legal and Global Economic Implications of the U.S. Subprime Lending Crisis*," May 2, 2008; Bar Association of San Francisco, "*Impact of Spitzer's Litigation and Attempted Reforms on the Investment Banking and Insurance Industries*," May 19, 2005; Opal Financial Conference, National Public Fund System Legal Conference, Phoenix, AZ, "*Basic Principles of Securities Litigation*," January 14, 2005; American Enterprise Institute, "*Betting on the Horse After the Race is Over—In Defense of Mutual Fund Litigation Related to Undisclosed After Hours Order Submission*," September 30, 2004. *Member*: State Bar of California; State Bar of New York; Member, Editorial Board, Wall Street Lawyer; Yale University Alumni Board of Directors (Director, 2001-2005); California Bankers Association (Director, 1993-99); California State Small Business Development Board, 1989-1997; University of California at Berkeley, Boalt Hall Alumni Board of Directors, 1993-96; Leadership Council, San Francisco Chamber of Commerce, 1990-1992; Community Reinvestment Institute (Founding Director, 1989-1990); Member, Yale Whiffenpoofs.

## ASSOCIATES

**MIKAELA BERNSTEIN**, Greenbrae, California, May 7, 1981. Admitted to practice in California, 2008; U.S. District Court, Central District of California (2009); U.S. District Court, Southern District California (2009); U.S. District Court, Northern Distinct California (2009); U.S. Court of Appeals for the Ninth Circuit (2009). *Education*: University of San Francisco School of Law, (J.D., 2008), Staff Editor, *Journal of Law & Social Challenges*, 2006; Mills College, (B.A., 2004). *Prior Employment*: Judicial Extern to the Honorable Stuart R. Pollak, U.S. Court of Appeals for the First District, 2008. *Member*: American Constitution Society (Board Member, Bay Area Lawyers Chapter); Bar Association of San Francisco; Consumer Attorneys of California.

**NANCY CHUNG**, born Los Angeles, February 21, 1972. Admitted to practice in California, 2003; U.S. Court of Appeals for the Ninth Circuit, 2003; U.S. District Court, Northern and Central Districts of California (2007, 2008). *Education*: Hasting College of Law (J.D., 2002); University of California, Santa Cruz (B.A., Language Studies, 1995). *Employment*: International Labor Organization, Geneva, Switzerland (2000-2001); Peace Corps Volunteer, Romania (1995-1997). *Member*: Bar Association of San Francisco. *Languages*: French, Romanian and Korean.

**CHRISTOPHER E. COLEMAN**, born Mobile, Alabama, March 30, 1971. Admitted to practice in Georgia, 2005. *Education:* Northwestern University School of Law (J.D., *cum laude*, 2003); Order of the Coif; Associate Editor, *Northwestern University Law Review* (2002-2003);

John Paul Stevens Public Interest Fellowship (2002); Northwestern University (M.A., History, 2000); University of Virginia (M.A., English, 1995); Vanderbilt University (B.A., *magna cum laude*, 1993). *Employment*: Judicial Clerkship, Honorable Joan Humphrey Lefkow, U.S. District Court, Northern District of Illinois, 2003-2005.  Leadership Council for Metropolitan Open Communities (Chicago, Illinois, 2002); Central Alabama Fair Housing Center (Montgomery, Alabama, 1997-1998). *Publications & Presentations*: Contributing Author, "California Class Actions Practice and Procedures" (Elizabeth J. Cabraser, Editor-in-Chief, 2006-2007); "Decades-Old Murder Case Needs Review," Op-Ed, *Chicago Sun-Times*, February 2, 2003; Co-Author, "Social Movements and Social Change Litigation: Synergy in the Montgomery Bus Protest," *Law and Social Inquiry* (Fall 2005); "Fingerprints and False Confessions: The William Heirens Case," Conference Presentation, Conference on False Confessions, Center on Wrongful Convictions, Northwestern University, Chicago, Illinois, March 2002. *Member*: American Bar Association; Tennessee Bar Association; Tennessee Trial Lawyers Association; Lawyers Association for Women; Nashville Bar Association YLD (Board of Directors); American Constitution Society, Nashville Lawyers' Chapter (President, Board of Directors).

**NIMISH R. DESAI**, born Coventry, England, June 25, 1980.  Admitted to practice in California, 2006; US District Court, Northern District of California, 2007; US District Court, Central District of California, 2008; US District Court; Northern District of Florida, 2009. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Publications & Presentations*: "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques", *Environmental Science Technology*, (2003; 37(17) pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004). *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society; South Asian Bar Association. *Languages*: Gujarati (conversational).

**ALLISON S. ELGART**, born Manhasset, New York, January 27, 1978.  Admitted to practice in California, 2006; New York, 2007; U.S. District Court, Eastern, Northern, and Central Districts of California, 2007; U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Ninth Circuit (2009). *Education*: Harvard Law School (J.D., 2005), Editor-in-Chief, *Harvard Civil Rights-Civil Liberties Law Review*, Vol. 40; Student Attorney, Harvard Legal Aid Bureau, (2003-2005);  Brown University (B.A., *magna cum laude* 2000). *Employment*:  Law Clerk to Judge Robert P. Patterson, Jr., U.S. District Court, Southern District of N.Y., 2005-2006; Health Advocacy Fellow, Medicare Rights Center, (2000-2002). *Publications & Presentations*: "Hamdi v. Rumsfeld: Due Process Requires That Detainees Receive Notice and Opportunity to Contest Basis for Detention," 40 Harv. C.R-C.L. L. Rev. 239 (2005). *Member*: American Bar Association; Bar Association of San Francisco (Marriage

Equality Task Force); Consumer Attorneys of California; State Bar of California; National Employment Lawyers Association (NELA); American Association for Justice.

*JORDAN ELIAS*, born Los Angeles, California, December 17, 1975. Admitted to practice in California, 2003. *Education*: Stanford Law School (J.D., 2003); Member, *Stanford Law Review*; Yale University (B.A., Phi Beta Kappa, Magna Cum Laude, 1998). *Employment*: Associate, Wilson Sonsini Goodrich & Rosati, 2004-2008; Law Clerk to the Honorable Cynthia Holcomb Hall, U.S. Court of Appeals for the Ninth Circuit, 2003-2004; Law Clerk, City Attorney of San Francisco, Summer 2002; Judicial Extern to the Honorable Charles R. Breyer, U.S. District Court, Northern District of California, Summer 2001; Website Editor, Public Agenda, 1999-2000. *Member*: State Bar of California; Bar Association of San Francisco.

*CECILIA HAN*, born Silverspring, Maryland, November 22, 1978.  Admitted to practice in California, 2005; U.S. District Court, Northern District of California, 2008; U.S. District Court, Central District of California, 2009.  *Education*: University of California, Hastings College of the Law (J.D., 2004); Executive Editor, *Hasting Constitutional Law Quarterly*, (2003-2004);  Judicial Extern to Judge Anthony Kline of California Appellate Court, 2002; Judicial Extern to Magistrate Judge Edward M. Chen, 2003; University of California, Berkeley (BA., Phi Beta Kappa, 2000).  *Employment*: Associate, Brayton Purcell, (2005-2007).  *Member*: State Bar of California; Minority Bar Coalition; CAOC; Bar Association of San Francisco.

*DEAN M. HARVEY*, born Edina, Minnesota, August 31, 1980.  Admitted to practice in California, 2007; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Eastern District of California; U.S. District Court, Southern District of California; U.S. Court of Appeals for the Ninth Circuit.  *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2006); Articles Editor, *California Law Review* (2005-2006); Assistant Editor, *Berkeley Journal of International Law* (2004); University of Minnesota, Twin Cities (B.A. *summa cum laude*, 2002).  *Prior Employment*: Associate, Boies, Schiller & Flexner LLP (2007-2009); Law Clerk, The Honorable James V. Selna, U.S. District Court for the Central District of California (2006-2007); Law Clerk, U.S. Department of Justice, Antitrust Division, San Francisco Field Office (2006); Summer Law Intern, U.S. Department of Justice (2005); Summer Associate, Boies, Schiller & Flexner LLP (2005). *Publications*: *New Guidance for Standard Setting Organizations: Broadcom Corp. v. Qualcomm Inc. and In the Matter of Rambus, Inc.*, 5 ABA Sherman Act Section 1 Newsl. 35 (2008); *Anticompetitive Social Norms as Antitrust Violations*, 94 Calif. L. Rev. 769 (2006). *Member*: American Bar Association (Antitrust Section).

*ROGER N. HELLER*, born New York, New York, June 4, 1975. Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. Court of Appeals for the Ninth Circuit (2001). *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor; Emory University (B.A., 1997). *Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of new York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: Harland Fiske Stone Scholar. *Publications & Presentations*: Co-author, <u>Fighting For Troops on the Homefront</u>, Trial Magazine (September 2006). *Member*: American Bar Association.

***DANIEL M. HUTCHINSON***, born Oakland, California, May 25, 1977. Admitted to practice in California, 2005; U.S. Court of Appeals for the Ninth Circuit, 2005; U.S. District Court, Northern District of California, 2005; U.S. Court of Appeals for the Fourth Circuit, 2008. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Minority Fellowship (1997-1999). *Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Honors & Awards*: "Northern California Rising Stars," *Law & Politics*, 2009. *Member*: American Bar Association (Section of Labor & Employment Law Leadership Development Program); National Bar Association; State Bar of California; Bar Association of San Francisco; Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 2009-present); Association of Business Trial Lawyers (Leadership Development Committee); Consumer Attorneys of California.

***ANDREW S. KINGSDALE***, born Boston, Massachusetts, November 4, 1974. Admitted to practice in Massachusetts, 2007; New York, 2007; California, 2008. *Education*: Temple University School of Law (J.D. 2006); Temple Journal of Science Technology and Environmental Law; Johns Hopkins-Nanjing University Center for U.S.-China Studies, 2000; Dartmouth College (B.A. 1996). *Member*: State Bar of California; State Bar of Massachusetts; New York State Bar Association; American Bar Association, Antitrust and Litigation Sections Member; Bar Association of San Francisco, International Law Section Member.

***SHARON M. LEE***, born Richmond, B.C., Canada, January 19, 1975. Admitted to practice in New York 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005. *Education*: St. John's University School of Law, (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University, (M.A. 1998); St. John's University, (B.A. 1997). *Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Member*: American Bar Association; Washington State Bar Association.

**SARAH R. LONDON**, born Woodridge, Illinois, May 26, 1980. Admitted to practice in California, 2009. *Education*: Boalt Hall School of Law, University of California (J.D., 2009); Northwestern University (B.A., 2002).

***ANNIKA K. MARTIN***, born New York, New York, September 13, 1979. Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," *Texas Journal of Women & the Law* (Volume 14 Issue 2, Spring 2005); "Welcome to Law School," monthly column on www.vault.com (2001-2004). *Awards and Honors*: 2005 Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor. *Member*: New York State Bar

Association (General Practice Section and Young Lawyers Section); Swedish American Bar Association; American Association for Justice; New York State Trial Lawyers Association; New York County Lawyer's Association; New York City Bar Association. *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**MICHAEL J. MIARMI**, born Summit, New Jersey, April 2, 1978. Admitted to practice in New York, 2006; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Eighth Circuit, 2007. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000). *Employment*: Milberg Weiss LLP, Associate, 2005-2007.

**ANNE SHAVER**, born Denver, Colorado, June, 30, 1982. Admitted to practice in California, 2008; Colorado, 2008; U.S. District Court, Northern District of California, 2009. *Education*: Boalt Hall School of Law, University of California (J.D., 2007), Order of the Coif; University of California, Santa Cruz (B.A. *cum laude*, 2003), Phi Beta Kappa. *Employment*: Law Clerk to Honorable Betty Fletcher, U.S. Court of Appeals for the Ninth Circuit, 2008-2009; Davis, Graham & Stubbs, LLP, Litigation Associate, 2008; Public Defender's Office of Contra Costa County, 2007; Davis, Cowell, & Bowe, LLP, Summer Law Clerk, 2006; Centro Legal de la Raza, Student Director, 2005-2006; Human Rights Watch, Legal Intern, 2005. *Publications*: "U.S. v. Fort and the Future of Work-Product in Criminal Discovery," 44 Cal. W. L. Rev. 127, 12293 (Fall 2007). *Member*: State Bar of California.

**JARON R. SHIPP**, born Berkeley, California, October 6, 1980. Admitted to practice in New York, 2007; U.S. District Court, Southern and Eastern Districts of New York, 2007; New York, 2009; U.S. District Court, Northern District of California, 2009. *Education*: Howard University School of Law (J.D., 2005): President, Student Bar Association (2004-2005); Member, Howard Law School Admission Committee (2004-2005); Contributing Writer, The Barrister. University of Pennsylvania (B.A., 2002). *Employment*: Associate, Latham & Watkins, LLP (2006-2008); Law Clerk to the Honorable Deborah A. Robinson (2005-2006). *Member*: American Bar Association.

**ALISON STOCKING**, born Milwaukee, WI, July 26, 1977. Admitted to practice in New York, 2008. *Education*: Yale Law School (J.D., 2006), Editor, *Yale Human Rights and Development Law Journal*; University of Wisconsin (B.A., 1999), Hilldale Undergraduate/ Faculty Research Award; American University in Cairo(1997-98). *Prior Employment*: Law Clerk to the Hon. Barrington D. Parker, Jr., United States Court of Appeals, Second Circuit, 2008-09; Law Clerk to the Hon. John Gleeson, United States District Court, Eastern District of New York, 2006-07; Associate, Jenner & Block, New York, 2007-08.

**STEVE M. SWERDLOW**, born Los Angeles, California, April 20, 1977. Admitted to practice in California, 2007; U.S. District Court, Central, Eastern and Northern Districts of California, 2007. *Education*: Boalt Hall School of Law, University of California, Berkeley, (J.D. 2006); Senior Notes & Comments Editor, *California Law Review*; Boalt Hall Public Interest Fellowship (2004); Chairman, Boalt Hall Committee for Human Rights (BHCHR); Asylum Advocate, California Asylum Representation Clinic; Boalt Hall Death Penalty Clinic; Columbia University, School of International and Public Affairs (M.A., Human Rights and International Affairs, 2003); Harriman Institute Certificate in Post-Soviet Studies (2003); University of California, Berkeley (B.A. *phi beta kappa* 1999). *Employment*: Law Clerk to the Hon. Dean D.

Pregerson, U.S. District Court, Central District of California (2006-2007); Consultant and Special Advisor on Refugee Programs, International Organization of Migration (IOM) (Russia, 2004 and 2006); Researcher, European Centre for Minority Issues (Georgia, 2005); Law Clerk, American Civil Liberties Union of Southern California (2004); Human Rights Monitor, Union of Councils for Jews in the former Soviet Union (Russia, 2000-2001). *Awards & Honors*: U.S. Department of State Young Leaders Fellowship for Public Service, Krasnodar, Russian Federation (2000-2001); U.S. Department of Education Foreign Language Area Studies Award (2002-2003 & 2004-2005); Harvard Tuition Scholarship, Harvard Ukrainian Research Institute. *Publications & Presentations*: "The Third Migration: Meskhetian Turks' Resettlement and Integration in the United States," *Integration, Repatriation or Resettlement?*, Berlin: LIT Verlag (2007); "Understanding Post-Soviet Ethnic Discrimination and the Effective Use of U.S. Refugee Resettlement: The Case of the Meskhetian Turks of Krasnodar Krai," 94 *Cal. L. Rev.* 1827 (2006); National Public Radio's "The World" on "Ethnic Discrimination in Russia" (Guest, Oct. 2007); *The Meskhetian Turks: An Introduction to their History, Culture and Resettlement Experiences*, Cultural Orientation Resource Center, Center for Applied Linguistics (2006); *Voice of America* Radio Interview, "Xenophobia in the Caucasus" (Guest, March 2005); "Stalin's Deported Peoples: Human Rights of Transnational Minorities," in Bulletin, Moscow (2004); *Radio Free Europe/Radio Liberty*, "Russia's Expulsion of Ethnic Minorities" (Panelist, 2002); "The Forgotten Jews of Nagorno-Karabakh," *Institute of War and Peace Reporting* (2001). *Member*: American Bar Association, Sections of International and Refugee Law, Sub-Committee of International Human Rights and Refugee Law; Bar Association of San Francisco. *Languages*: Russian, Ukrainian, Georgian.

**BARBRA L. WILLIAMS,** born Bellflower, California, July 10, 1974.  Admitted to practice in California, 2007; U.S. District Court, Northern & Central Districts of California, 2007; U.S. District Court, Central District of California, 2007; U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court, District of Colorado, (2009). *Education*: University of California, Hastings College of the Law, (J.D., 2006, Concentration in Civil Litigation); Notes Editor, *Hastings Race & Poverty Law Journal;* UC Hastings Civil Justice Clinic, Individual Wage & Hour Representation; UC Hastings Admissions Policy Committee; Teaching Assistant, Legal Writing & Research; National Black Law Students Association (Sub-Regional Director); Hastings Black Law Students Association (Co-President); University of California, Irvine (B.A., 1997). *Member:* American Bar Association Labor and Employment Law Section, Law School Outreach Coordinator; Consumer Attorneys of California; National Employment Lawyers Association, Class Action Quarterly Reports; State Bar of California; National Bar Association; California Association of Black Lawyers; Bar Association of San Francisco; Charles Houston Bar Association; Aids Legal Referral Panel, San Francisco, CA (Board Member); Twenty Pearls Foundation, Oakland CA (Board Member).

**ALLEN WONG,** born Hong Kong, China,  April 7, 1978.  Admitted to practice in New York, 2005; New Jersey 2005. *Education*: Harvard Law School (J.D. 2004); Kennedy School of Government, Harvard University (M.P.A. 2004); Student Attorney, Harvard Legal Aid Bureau (2002-2004); Williams College (B.A. 2000). *Prior Employment*: Law Clerk to Senior Judge Morton I. Greenberg, U.S. Court of Appeals for the Third Circuit (2007-2008); Law Clerk to Chief Judge Garrett E. Brown, Jr., U.S. District Court, District of New Jersey (2005-2007). *Publications*: *Product Liability: The Fate of the Learned Intermediary Doctrine*, 30 J.L. Med. & Ethics 471 (2002).

**HEATHER H. WONG**, born San Diego, California, July 5, 1978. Admitted to practice in California, 2005; U.S. Court of Appeals, Ninth Circuit, 2005; U.S. District Court, Central and Northern Districts of California, 2005, 2006; U.S. District Court, District of Colorado, 2006. *Education*: University of San Francisco (J.D. & M.B.A., 2005); Beta Gamma Sigma Honor Society (2005); Technical Editor, *Maritime Law Journal*; Staff Editor, *Journal of Law and Social Challenges*; University of California, Berkeley (B.A., 2000). *Honors & Awards*: "Northern California Rising Stars," *Law & Politics*, 2009. *Member*: American Bar Association, Young Lawyers Division, Labor & Employment Law section member, Section of Litigation member; State Bar of California, Labor & Employment Law Section member, Litigation Section member; Bar Association of San Francisco, Labor & Employment Law Section member, Litigation Section member; American Association for Justice, member; American Constitution Society, member, mentor; Consumer Attorneys of California, member; Association of Business Trial Lawyers, member; Asian American Bar Association, member; Asian American Legal Defense and Education Fund, member; Minority Bar Coalition, 2008 Unity Conference Planning Committee member; Carver Healthy Environments and Response to Trauma in Schools (Carver HEARTS Project), Steering Committee member (2007-present).


Notice on the Firm's AV Rating: AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies. Martindale-Hubbell is the facilitator of a peer review process that rates lawyers. Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories – legal ability and general ethical standards.

| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | | |
|---|---|---|

Report created on   01/11/2010 12:19:06 PM

From   inception
To       01/11/10

**Matter Number: 2319-2184**    **TIERED INSURANCE - ZANGARA V. TRAVELERS - OHIO**

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| ELIZABETH CABRASER | 9.80 | 825.00 | 8,085.00 |
| MORRIS RATNER | 14.00 | 575.00 | 8,050.00 |
| JAHAN SAGAFI | 15.70 | 450.00 | 7,065.00 |
| | **39.50** | | **23,200.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| JAHAN SAGAFI | 41.80 | 395.00 | 16,511.00 |
| | **41.80** | | **16,511.00** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| MEREDITH HARTNETT | 6.00 | 155.00 | 930.00 |
| BRAULIO MUNOZ | 2.50 | 215.00 | 537.50 |
| | **8.50** | | **1,467.50** |

**OTHER**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| WENDY DOLL | 0.40 | 190.00 | 76.00 |
| | **0.40** | | **76.00** |

**MATTER TOTALS**    **90.20**    **41,254.50**

# LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Report created on 01/11/2010 12:24:23 PM

Timekeeper: all

From inception

To 01/11/10

## 2319-2184 TIERED INSURANCE - ZANGARA V. TRAVELERS - OHIO

| Date | Timekeeper | Narrative | Hours | Task Code |
|---|---|---|---|---|
| 02/11/09 | CABRASER, ELIZABETH | Review defendant's 23(f) petition; correspondence with J. Sagafi re same | 1.50 | |
| 02/12/09 | | Correspondence with J. Sagafi and Kinsella re class notice | 0.50 | |
| 02/12/09 | | Legal research; Review orders | 2.00 | |
| 02/12/09 | | Telephone conference re 23(f) strategy, status conference, notice of assignment and issues | 0.50 | |
| 02/19/09 | | Correspondence and telephone conference with Kinsella re class notice program | 1.00 | |
| 02/19/09 | | Review 23(f) brief, district court briefs and orders | 1.50 | |
| 02/24/09 | | Telephone conference with Kinsella re claim notice program | 0.50 | |
| 04/01/09 | | Correspondence with J. Sagafi re notice and notice program | 0.30 | |
| 04/08/09 | | Correspondence with J. Sagafi re status, notice and court call | 0.50 | |
| 05/11/09 | | Correspondence with K. Law re 23(f) filing/legal research | 1.00 | |
| 11/17/09 | | Correspondence with class counsel re notice program, claims assistance | 0.50 | |
| | **CABRASER, ELIZABETH** | | **Sum: 9.80** | |

| Date | Timekeeper | Narrative | Hours | Task Code |
|---|---|---|---|---|
| 09/12/06 | DOLL, WENDY | Check and organize cases pulled from Westlaw for J. Sagafi. | 0.40 | |
| | **DOLL, WENDY** | | **Sum: 0.40** | |

| Date | Timekeeper | Narrative | Hours | Task Code |
|---|---|---|---|---|
| 06/08/05 | HARTNETT, MEREDITH | I pulled cases and cite checked for J. Sagafi. | 1.00 | |
| 06/09/05 | | I pulled cases and cite checked for J. Sagafi. | 5.00 | |
| | **HARTNETT, MEREDITH** | | **Sum: 6.00** | |

| Date | Timekeeper | Narrative | Hours | Task Code |
|---|---|---|---|---|
| 11/14/05 | MUNOZ, BRAULIO | Review material due to new case assignment. | 1.00 | |
| 11/16/05 | | Review file for information related to client's interrogatories. | 1.50 | |
| | **MUNOZ, BRAULIO** | | **Sum: 2.50** | |

| Date | Timekeeper | Narrative | Hours | Task Code |
|---|---|---|---|---|
| 06/25/04 | RATNER, MORRIS | Travelers Home Insurance: Review emails re home insurance case splinter from Auto. Ins. case. | 0.20 | |
| 06/27/04 | | Travelers Home Tiered: Review draft complaint. | 1.50 | |
| 06/29/04 | | Travelers Homeowners: Continue editing complaint; email Practice Group re same; fax edits to Practice Group; conference with J. Sagafi re same. | 1.20 | |

# LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Report created on 01/11/2010 12:24:23 PM
Timekeeper: all

From    inception
To      01/11/10

## 2319-2184 TIERED INSURANCE - ZANGARA V. TRAVELERS - OHIO

### RATNER, MORRIS

| Date | Narrative | Hours |
|---|---|---|
| 07/01/04 | Travelers Homeowners: Conference with Practice Group and J. Sagafi re new complaint; memo to Practice Group re same. | 1.50 |
| 07/02/04 | Travelers Homeowners Insurance: Memo to Practice Group; message to M. Soboi; message to J. Sagafi re complaint research. | 1.70 |
| 07/04/04 | Travelers Homeowners Insurance: Conference with co-counsel re new complaint. | 0.20 |
| 07/07/04 | Travelers Homeowners Insurance: New case - edit J. Sagafi's materials. | 2.00 |
| 02/16/05 | Conference with Executive Committee re approval; review complaint. | 1.50 |
| 02/19/05 | Conference with D. Lovelace re complaint; communicate with P. Gore (via email) re same. | 0.20 |
| 05/15/05 | Edit draft certification brief; conference with co-counsel re same, and re 23(b)(2). | 2.50 |
| 05/16/05 | Confer with J. Sagafi re certification brief. | 0.10 |
| 05/23/05 | Tiered - Homeowners Insurance: Conference with J. Sagafi re brief. | 0.30 |
| 06/14/05 | Confer with J. Sagafi re status. | 0.20 |
| 09/09/05 | Confer with J. Sagafi re status. | 0.10 |
| 11/14/05 | Check with P. Gore and J. Sagafi re status and discovery. | 0.10 |
| 12/24/05 | Edit Gore discovery letter. | 0.20 |
| 12/25/05 | Edit Gore discovery letter; forward comments to Gore. | 0.20 |
| 12/26/05 | Edit Gore letter; respond to his email re edits. | 0.30 |
| | Sum: | 14.00 |

| Date | Timekeeper | Narrative | Hours | Task Code |
|---|---|---|---|---|
| 07/01/04 | SAGAFI, JAHAN | Travelers Home Insurance: Call with M. Ratner and P. Gore re new tiered insurance case. | 0.50 | |
| 07/02/04 | | Travelers Home Insurance: Conference with M. Ratner re new homeowners insurance case. | 0.20 | |
| 07/10/04 | | Tiered homeowner case: Plan conference call. | 0.20 | |
| 07/11/04 | | New Wright v. Travelers: Plan causes of action. | 0.30 | |
| 05/16/05 | | Travelers Homeowner Case: Review class certification pleadings. | 1.10 | |
| 05/19/05 | | Tiered Insurance, Travelers Homeowners: Class certification motion. | 0.50 | |
| 05/24/05 | | Travelers Homeowners: Revise motion for class certification. | 1.00 | |
| 05/25/05 | | Travelers Homeowners: Edit motion for class certification. | 0.50 | |
| 05/31/05 | | Travelers Homeowners: Prepare motion for class certification. | 1.00 | |
| 06/01/05 | | Travelers Homeowners: Motion for class certification. | 2.10 | |
| 06/03/05 | | Travelers Homeowners: Motion for class certification. | 1.50 | |
| 06/06/05 | | Travelers Homeowners: Motion for class certification. | 3.50 | |

## LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Report created on    01/11/2010 12:24:23 PM

Timekeeper: all

From    Inception
To      01/11/10

### 2319-2184  TIERED INSURANCE - ZANGARA V. TRAVELERS - OHIO

| Date | Description | Hours |
|------|-------------|-------|
| 06/07/05 | Zangara v. Travelers:  Motion for class certification. | 3.20 |
| 07/01/05 | Review motion to dismiss. | 1.00 |
| 07/25/05 | Review motion to dismiss opposition. | 0.50 |
| 11/14/05 | Zangara: Review discovery | 0.60 |
| 02/14/06 | Discuss status with co-counsel. | 0.40 |
| 05/08/06 | Revise opposition to motion for sanctions; review status with co-counsel. | 3.60 |
| 06/21/06 | Review status. | 0.20 |
| 09/12/06 | Opposition to motion to dismiss and strike. | 0.80 |
| 09/13/06 | Opposition to motion to dismiss and strike. | 5.60 |
| 09/14/06 | Opposition to motion to dismiss. | 7.40 |
| 09/15/06 | File opposition to motion to dismiss. | 0.20 |
| 10/27/06 | Review discovery responses, class certification brief. | 0.50 |
| 12/22/06 | Prepare 50-state survey. | 0.60 |
| 01/02/07 | Conference call re class certification; research into state laws. | 1.30 |
| 01/09/07 | Stanich: Prepare for motion to compel hearing; review pleadings; prepare for class certification. | 0.50 |
| 01/16/07 | Motion to compel preparation. | 0.20 |
| 01/19/07 | Stanich. | 0.30 |
| 01/24/07 | Review correspondence re discovery. | 0.20 |
| 01/25/07 | Review discovery responses and correspondence. | 0.30 |
| 02/07/07 | Review correspondence re discovery. | 0.20 |
| 02/15/07 | Review correspondence re discovery. | 0.40 |
| 02/23/07 | Review correspondence re discovery. | 0.30 |
| 03/12/07 | Review correspondence, discovery. | 0.70 |
| 03/22/07 | Review correspondence. | 0.40 |
| 03/30/08 | Stanich v. Travelers: Review order re plaintiffs; correspondence with team re same. | 0.30 |
| 05/30/08 | Review discovery. | 0.20 |
| 06/11/08 | Review discovery. | 0.40 |
| 09/18/08 | Review brief; correspondence with team. | 1.10 |
| 03/16/09 | Prepare notice and plan. | 1.10 |
| 03/17/09 | Class notice. | 0.60 |
| 03/18/09 | Prepare notice and notice plan. | 2.30 |

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Report created on  01/11/2010 12:24:23 PM

Timekeeper: all

From

To

Inception
01/11/10

## 2319-2184  TIERED INSURANCE - ZANGARA V. TRAVELERS - OHIO

| Date | Description | Hours |
|---|---|---|
| 03/19/09 | Prepare notice and notice plan. | 1.60 |
| 03/20/09 | Review defendant's notice information and plan; prepare notice. | 1.30 |
| 03/24/09 | Notice preparation; call re same. | 1.70 |
| 04/01/09 | Notice to class and research. | 0.80 |
| 04/07/09 | Correspondence re hearing on notice. | 0.20 |
| 06/08/09 | Notice plan. | 0.30 |
| 07/13/09 | Review status conference information; calendar deadlines. | 0.40 |
| 10/14/09 | Review settlement status. | 0.30 |
| 10/15/09 | Review settlement status. | 0.20 |
| 10/27/09 | Review notice plan. | 0.20 |
| 11/10/09 | Travelers' settlement filing. | 1.40 |
| 11/11/09 | Travelers' settlement filing. | 0.20 |
| 11/12/09 | Travelers' settlement filing and press inquiry. | 0.40 |
| 11/18/09 | Review and calendar case deadlines; correspondence re settlement. | 0.50 |
| 11/19/09 | Review defendant's Class Action Fairness Act notice. | 0.20 |
| | Sum: | 57.50 |

SAGAFI, JAHAN

| Total Hours | 90.20 |