UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| PAUL LONARDO, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY and THE STANDARD FIRE INSURANCE COMPANY,<br><br>*Defendants.*<br><br>DANIEL GREENBERG,<br><br>*Objector.* | Case No. 06 CV 0962<br><br>Judge Kathleen O'Malley<br><br>SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION OF DANIEL GREENBERG |

## INTRODUCTION

Pursuant to the Court's order of January 27, 2010, on February 27, 2010, Travelers disclosed that there were 53,782 claims made for a total of $2,812,962.73.[1]  Notwithstanding the improvements to the settlement (Dkt. No. 190) made in response to his earlier objection, Class member Daniel Greenberg continues to object to the proposed settlement and files this supplemental brief pursuant to the same January 27 order.[2]

Greenberg concedes that this is a much better settlement than the one he originally objected to: the class will receive the majority of the pecuniary settlement instead of less than half of what their attorneys would be requesting, as the original settlement provided.  Greenberg acknowledges that the Sixth Circuit grants discretion to a district court's decision whether to approve a settlement as fair, reasonable, and adequate under Fed. R. Civ. Proc. 23(e), and further concedes that this court could arguably approve this settlement and fee proposal without committing an abuse of discretion under current case law—though he certainly reserves his right to ask the Sixth Circuit to change that case law.  *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (settlement); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005) (fee award).

But that the court *can* approve the settlement and fee award does not mean that the court *should* approve the settlement and fee award.  While the court is correct that it cannot take a "blue pencil" to the settlement, Tr. 47:22, it has the ability to improve this settlement by insisting upon a bright-line rule forbidding attorneys from negotiating separate fee awards that do not benefit the

---

[1] Note that this is materially short of Lonardo's original estimate to the court of "$3 million to $4 million" in claims.  Transcript of January 27, 2010 fairness hearing at 14:16-17 ("Tr.").
[2] Greenberg and his counsel note their own potential conflict of interest: were the settlement to be approved, the objector would have the right to seek attorneys' fees and an incentive payment for his role in increasing the class recovery 71% from $2,812,962.73 to $4,812,962.73; any such recovery would be, at a minimum, delayed by the rejection of the settlement that Greenberg seeks in this brief.

_____
Supplemental Brief of Daniel Greenberg
No. 06-CV-0962                                               1

class.  *See, for example, Cisek v. National Surface Cleaning, Inc.*, 954 F. Supp. 110 (S.D.N.Y. 1997) (approving settlement after parties agree on record to modify settlement to allow reversion to plaintiff class).  If the court does choose to approve the settlement, any fee award should be based on the benefits actually received by the class.

**I.     The Fee Arrangement Breaches The Attorneys' Duty To The Class.**

Defendants originally agreed to pay up to $6.6 million in attorneys' fees, indicating that this was money that they were willing to pay to settle the case.  Indeed, once it became clear that the original settlement could not withstand Greenberg's objections, the parties agreed, on the eve of the fairness hearing, to a shift of $2 million from the fee bucket to the class recovery—an action that has served to increase class recovery by 71%.  But under both the original and modified settlements, if the Court reduces the attorneys' fee request in any way, the money reverts to the defendants, rather than to the class.

This arrangement has two purposes: (1) to inflate the fee at the class's expense; and (2) to reduce the court's incentive to carefully scrutinize the fee for unreasonableness, since any reduction *only* benefits the defendant.  Even Professor Charles Silver, a consistent opponent of tort reform who has been publicly critical of Greenberg's counsel, has stated that this type of fee arrangement is "a strategic effort to insulate a fee award from attack."  *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809, 1839 (2000).

Any fee that a defendant agrees to pay directly to class counsel is an amount that it would have been willing to include as part of the payment to the class.  Moreover, because the fee thus negotiated is likely to be higher than the amount that class counsel could reasonably seek by way of a percentage of the common fund, the arrangement reduces the recovery that the class would have received.  "[I]n essence the entire settlement amount comes from the same source.  The award to

_____

the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996).

Courts have recognized that "such an agreement has the potential to enable a defendant to pay class counsel excessive fees and costs, in exchange for counsel accepting an unfair settlement on behalf of the class." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2002). Even where, as here, there is no explicit collusion against the class, "[e]ven if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations." Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 266 (1985).

Negotiating a settlement that elevates an attorney's financial interests over that of the class—no matter how much money is involved—cannot be a "fair" or "adequate" settlement under Rule 23(e)(2); at a minimum, it is a breach of the Rule 23(a)(4) requirement that "the representative parties … fairly and adequately protect the interests of the class." *See also* Lester Brickman, *The Rent Seekers: Lawyers, Torts and Contigency Fees* (forthcoming Cambridge University Press 2010) (arguing that such arrangements are *per se* unethical under the Model Rules of Professional Conduct). Greenberg acknowledges that this particular issue is, to the best of his knowledge, a question of first impression that has not been addressed by a published opinion.

## II. Attorneys' Fees Should Be Based Upon Benefits To The Class.

If the Court approves the settlement, it can act to prevent conflicts of interest and align class counsel's interests with those of the class by basing any award of attorneys' fees entirely upon benefits to the class. "The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir.

---
Supplemental Brief of Daniel Greenberg
No. 06-CV-0962                                3

1986) (Easterbrook, J.). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 Tulane L. Rev. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach.").

The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.* Greenberg applauds this Court's willingness to engage in such searching and unusually thorough scrutiny, but humbly suggests that the opportunity costs outweigh the benefits—especially given the other disadvantages of the lodestar.

### III. The Benefits To The Class Are $4,812,962.73.

Lonardo invites the Court to consider some portion of the $15 million of unpaid claims to the class as "benefits" meriting an award of attorneys' fees. Greenberg disagrees. Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ("the fee awards should be based only on the benefits actually delivered"); Notes of Advisory Committee on 2003 Amendments to Rule 23(h), *citing* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class") (Private Securities Litigation Reform Act). Lonardo fairly states the unsettled nature of the precedent in his brief (Dkt. No. 176 at 24-28), but the stronger argument rests with basing fees on actual recovery, both because of the trend of the precedent, and because of the public policy reasons against rewarding attorneys for phantom results.

---

The following hypothetical helps demonstrate the issue. Imagine that the parties' settlement was identical in every way, except that it also contained the clause "If the movie *G.I. Joe: The Rise of Cobra* wins the Academy Award for Best Picture, Defendants will grant the class an additional $6 million." Such a provision is plainly worthless to the class—but under the rule proposed in Lonardo's brief, Dkt. No. 176 at 29, it would be a basis for calculating an additional $3 million in benefits to the class. While this hypothetical provision is facially silly, one can readily construct less-silly provisions that provide similarly illusory benefits to the class (say, for example, a promise by Travelers to double payments if there is an 80% response rate) that a court would have to deconstruct. The more sensible rule, as suggested by most twenty-first-century authorities, is to simply base fees on actual recovery.

### A. The Claim Forms Reduce Recovery With Certainty.

Claims forms are a marketing science, akin to the rebates used in selling electronics equipment. Parties can reasonably predict (and, in this case, overpredict) response rates based on the hoops that they require claimants to jump through, just as marketers can predict how many fewer rebates will be claimed if they require customers to cut out a UPC symbol to claim a rebate. *See, e.g.,* Brian Grow, "The Great Rebate Runaround," *Business Week* (Dec. 5, 2005). Claim and rebate forms are a form of price discrimination against the disorganized and against those with high opportunity costs. There is nothing inherently evil about price discrimination—but it sure smacks of irony in a case where the entire alleged injury is one of price discrimination. Just as some Travelers customers got discounts while others did not, some Travelers class members will get partial refunds while others will not—and the class attorneys exhibit remarkable chutzpah in asking for fees based on the class members who did not recover anything.

Lonardo argues that it would be unreasonable to pay the settlement directly to the class because "The claim form allows the Defendants the opportunity, on an individual basis, to attempt

_____
Supplemental Brief of Daniel Greenberg
No. 06-CV-0962                                    5

to rebut the presumption of reliance." Dkt. No. 175 at 19. But this contradicts the representation made when seeking preliminary approval that "Defendants engaged in a uniform pattern of conduct" with respect to all members of the class. Dkt. No. 167 at 10. The parties are judicially estopped from arguing that there is a need to distinguish amongst class members. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). And even if they were not judicially estopped from doing so, then Lonardo cannot argue that the settlement obtained $18 million in benefits, because some percentage of class members are ineligible for the benefits.

### B. There Is No Valid Evidence For The Value Of The Injunctive Relief.

Lonardo makes a half-hearted effort in its briefs to claim that the injunctive relief—a three-year ban on differential pricing—has some benefit to the class, (Declaration of Dr. Leonard R. Freifelder, Dkt. No. 176 at 22 and Ex. Y), though they value the injunctive relief at zero in their calculations. Lonardo's decision not to rely on Dr. Freifelder is sound: his testimony flunks *Daubert*. Freifelder's entire calculation is based on the premise that if price discrimination ends, everyone gets the lowest price. That is obviously false both as a matter of common sense and a matter of economics. Imagine an airline flying from Cleveland to Washington, DC, that charges $129 for three-week-advance non-refundable tickets with a Saturday-night stay (*i.e.*, vacationers), but $400 for travelers who purchase their tickets the day of travel (*i.e.*, business travel). If, for some reason, the airline is only allowed to charge one price to its customers, that price surely is not going to be $129; it is economic illiteracy to claim otherwise. An accurate accounting would evaluate how much prices would go down for class members, how much they would go up for those who requested discounts and would no longer be able to negotiate discounts, how many class members were likely to request discounts in the future, and the elasticity and cross-elasticity of demand relative to other insurance policies. None of this was done, and the testimony cannot be relied upon.

___

### C. A Reasonable 25% Fee Would Be About $1.6 Million.

Using the correct $4.8 million basis for determining attorneys' fees would imply that a 25% contingent fee should be $1.6 million, well under half of what Lonardo's counsel is actually requesting. (Note that if the $4.6 million fee request had included the opportunity for reversion to the class, then the class would recover $7.05 million, while the attorneys would recover $2.35 million: by negotiating fees separately instead as part of a common fund, Lonardo has cost class members over $2 million, and increased the chances that they will receive a disproportionate share of the recovery.)

Any other result will encourage future class counsel to do what was done in this case, and agree to onerous restrictions on class recovery to increase the chances of settlement. But if class counsel fees are structured so that they are directly related to the *actual* benefit received by the class, class counsel will have the proper incentive to maximize class recovery, rather than to surreptitiously maximize attorneys' fees.

## IV. If The Settlement Is Approved, Greenberg Is Entitled To Reasonable Attorneys' Fees For His Role In Improving The Settlement.

On the eve of the fairness hearing, the parties agreed to reduce attorneys' fees by $2 million and increase class recovery by the same amount. Because the court does not have the power to "blue pencil" the settlement, this decision has to be attributed to the only formal objection filed in this case—especially given the timing of the decision to modify the settlement. As such, the objector is entitled to a reasonable attorneys' fee and an incentive award. *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003) ("incentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole"); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (awarding fees to objector's public-

_____
Supplemental Brief of Daniel Greenberg
No. 06-CV-0962                    7

interest law firm); *see also Olden v. Gardner*, 294 Fed.Appx. 210, 221 (6th Cir. 2008) ("Fees and costs may be awarded to the counsel for objectors to a class action settlement if the work of the counsel produced a beneficial result for the class."). A formal brief making a fee request will be filed in the event the Court approves the settlement. Greenberg will ask for any incentive award to him be donated to charity.

## CONCLUSION

Class counsel have breached their fiduciary obligations to the class by agreeing to a reversion of a denied fee request to the defendants instead of a common fund. The Court should thus reject the settlement as unfair. If settlement is approved, attorneys' fees—for both the representative class members and the objector—should be based upon the actual class recovery, so as not to unfairly benefit attorneys for agreeing to terms that unfairly limit class recovery.

Dated: March 9, 2010

Respectfully submitted,

/s/Theodore H. Frank
Theodore H. Frank, DC Bar No. 450318, *pro hac vice*
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW
No. 23-6
Washington, DC 20036
Telephone: (703) 203-3848
Email: tedfrank@gmail.com

Attorney for Objector
Daniel Greenberg

___

<u>PROOF OF SERVICE</u>

I hereby certify that this document was filed through the CM/ECF system which will automatically generate a Notice of Electronic Filing (NEF) and send it by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service.

This 9th day of March, 2010.

<u>/s/ Theodore H. Frank</u>
Theodore H. Frank

_____

Proof of Service -
No. 06-CV-0962