## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL LONARDO, on behalf of himself and others similarly situated,** | : | **JUDGE KATHLEEN M. O'MALLEY** |
| | : | |
| **and** | : | |
| | : | |
| **DANTE FREZZA, on behalf of himself and others similarly situated,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOSEPH FELDMAN, on behalf of himself and others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | **CASE NO.  1:06-CV-962** |
| | : | |
| **v.** | : | |
| | : | **OPINION & ORDER** |
| **TRAVELERS INDEMNITY CO.** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

After nearly five years of remarkably contentious litigation, in September 2009 the parties reached a Settlement Agreement[1] resolving all of the claims in this class action lawsuit. Now ripe and pending before the Court are two motions occasioned by this settlement: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Incentive Award to Class Representatives ("Motion for Final Approval") (Doc. 175); and (2) Motion for Order Granting Settlement Class Counsel's Petition for Award of Attorney Fees and Expenses ("Fee Petition") (Doc. 176). For the reasons articulated below, both of these motions are **GRANTED**. Accordingly, the Court **APPROVES** the Settlement Agreement

---

[1] The operative version of the Settlement Agreement is at Doc. 168, as amended by the First Amendment to the Settlement Agreement at Doc. 190. The First Amendment to the Settlement Agreement relates to paragraphs II.E.1 and II.F.2 of the Settlement Agreement, which will be discussed below. The term "Settlement Agreement" refers to both Doc. 168 and Doc. 190 in this Opinion & Order.

(Docs. 168, 190) and enters final judgment **DISMISSING** the case.  Further, the Court **AWARDS**

Class Counsel's fees and expenses in the amount requested, as calculated herein.  Finally, the Court

**DENIES** Mr. Greenberg's request for leave to file a petition for attorneys' fees (Doc. 191).

## I.    BACKGROUND

This is a case about homeowners insurance premiums.  The Plaintiffs allege that the Defendant

insurance companies sold consumers one homeowners insurance policy while unlawfully concealing

the availability of a lower-priced policy that provided identical coverage and service.  The Defendants

admit that they sold identical policies at different prices, but have consistently denied, and continue to

deny, that their conduct was unlawful in any way.  The parties' Settlement Agreement fully resolves

the case, so long as the Court deems it fair, reasonable, and adequate pursuant to Rule 23 of the Federal

Rules of Civil Procedure.  Consequently, the threshold issue now before the Court is whether the

Settlement Agreement satisfies Rule 23.

On November 18, 2009, the Court issued an order certifying the Settlement Class pursuant Rule

23(b)(3) of the Federal Rules of Civil Procedure,[2] preliminarily approving the Settlement Agreement,

---

[2]      It is important to note at the outset that, in the Settlement Agreement, the Defendants
        only consent to certification with respect to the Settlement Class, not the initial class
        certified.  (Doc. 168 at 9.)  The Settlement Agreement provides:

> Certification of the Settlement Class and appointment of the Class
> Representatives and Class Counsel by the Court shall be binding only
> with respect to the Settlement of the Action.  In the event the
> Settlement Agreement is terminated pursuant to its terms or a Final
> Judgment and Approval of the Settlement and Dismissal of the
> Action for any reason does not occur, the certification of the
> Settlement Class shall be vacated, and the Action shall proceed as
> though the Settlement Class had never been certified, and the posture
> of the case shall revert back to the status quo as of September 16,
> 2009.

2

and approving procedures and forms relating to notice to class members, objections to the Settlement Agreement, and final approval. (Doc. 170.) As a result, the Court set the stage for the final act in this longstanding litigation – i.e., the Motion for Final Approval and consideration of Class Counsel's Fee Petition. The Plaintiffs provide a detailed and accurate history of the case leading up to this final act in their memorandum in support of final approval (Doc. 175 at 1-11[3]). The Court's summary of the case history below is based primarily on the Plaintiffs' detailed description in their briefs; the Court expressly incorporates that description into this Opinion & Order. Because, however, the Court's ruling with respect to the Motion for Final Approval and the Fee Petition is largely fact-specific, especially with respect to Class Counsel's conduct in pursuing their case, it is necessary to include some of the important details in the history of the case set forth below.

A.      THE PLAYERS

For the sake of clarity, the following is a brief introduction to the key players in this litigation and the parties to the Settlement Agreement.

1.      The Named Plaintiffs/Class Representatives

The named plaintiffs serve as class representatives for the class defined by the Settlement Agreement. As stated in the Court's November 18, 2009 Opinion & Order, "Paul Lonardo, Dante Frezza, and Joe Feldman are hereby appointed as the Settlement Class Representatives." (Doc. 170 at 4.)[4] The Court will refer to Lonardo, Frezza, and Feldman as "the Settlement Class Representatives"

---

(*Id.*)

[3]      Essentially the same description of the history of this case appears in Class Counsel's Fee Petition. (Doc. 176 at 1-11.)

[4]      Prior to the settlement (which altered the class definition), Plaintiff Paul Lonardo ("Lonardo") represented the class as a whole and the Agent Sub-Class, and Plaintiff

3

throughout this Opinion & Order.  The Court will refer to the named plaintiffs and class representatives

and the class they represented in the pre-settlement lawsuit as "the Plaintiffs."

### 2.   The Defendants

The named defendants in this case are: The Travelers Property Casualty Insurance Company,

The Standard Fire Insurance Company, and The Travelers Indemnity Company.  In addition, the

following entities are <u>not</u> themselves named defendants, but are affiliated with the named defendants

and signed-on to the Settlement Agreement:  The Automobile Insurance Company of Hartford, CT,

Travelers Property Casualty Insurance Company, Travelers Property Casualty Company of Illinois, The

Phoenix Insurance Company, The Travelers Indemnity Company of Connecticut, and The Travelers

Companies, Inc.  For the sake of simplicity, all of these affiliated entities will be referred to throughout

this Opinion & Order as "Travelers" or the "Settling Defendants," or, where appropriate, the "Named

Defendants."

### 3.   The Settlement Class

The definition of the class, as initially certified, is set forth in the Court's January 26, 2009

Opinion & Order (Doc. 141 at 5).  For settlement purposes, however, the parties agreed to the following

definition of the "Settlement Class:"

> "Class" or "Settlement Class" means, for settlement purposes only and for no other
> purpose:  All persons in the United States who made an initial purchase of a
> homeowners insurance Class Policy (as that term is defined elsewhere) from a Settling
> Defendant for a property located in the states of Alabama, Arkansas, Colorado, Illinois,
> Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Ohio, South Carolina, and
> Tennessee, who are eligible to purchase Travelers homeowners insurance offering

---

Dante Frezza ("Frezza") represented the Group Marketing Sub-Class.  (Doc. 141.)
Plaintiff Joseph Feldman ("Feldman") was not a party to the original lawsuit before
this Court, but was the class representative in *Feldman v. The Travelers Indemnity
Co., et al.*, Case No. 08cv4140 (N.D. Ark.).

identical coverage and service, at a lower price, during the relevant "Class Period" for each respective state as set forth below.  The precise "Class Policies" include only the policies described for the relevant time periods listed for each state in Exhibit B. . . . Excluded from the Class is any Class member who timely elects to be excluded from the Settlement Class, and all present and former agents of Defendants during the Class Period; all present and former employees of Defendants during the Class Period; and all members of the judiciary of the Court, and all members of their immediate families.

(Doc. 168 at 2-3 (omitting footnote).)[5]  The Court certified the Settlement Class for settlement purposes in its November 18, 2009 Opinion & Order.  (Doc. 170.)

### 4.    Class Counsel

The Court appointed counsel for the Settlement Class in the November 18, 2009 Opinion & Order.  (Doc. 170 at 4.)  The Court appointed:

Don Barrett, Barrett Law Office, P.A.; Charles F. Barrett, Barrett & Associates, P.A.; Dewitt M. Lovelace, Lovelace Law Firm; R. Eric Kennedy and Daniel P. Goetz, Weisman, Kennedy & Berris Co., L.P.A.; Elizabeth J. Cabraser and Jahan C. Sagafi, Leiff, Cabraser, Heinman & Bernstein, LLP; John R. Patchett, Patchett Law Office; Thomas Thrash, Thrash Law Firm, and Pierce Gore, Gore Law Firm.

(Doc. 168 at 3.)  Each of these attorneys and/or their law firms have submitted an affidavit in support of their Fee Petition.  (Doc. 176, Exs. A-G.)

### 5.    The Objectors

Nine objections were asserted in response to the notice of the Settlement Agreement.[6]  Class

---

[5]     While the initial class definition was limited to the state of Ohio, the Settlement Class is broader.  (*Compare* Doc. 141 at 5, *with* Doc. 170 at 2-3.)

[6]     At the Final Fairness Hearing on January 27, 2010 Class Counsel stated that there were ten objections.  (Tr. of Final Fairness Hrg., Doc. 188 at 19.)  The Court is aware of only nine objections – the seven documented by the Claims Administrator (Decl. of Robert Oseas ("Oseas Decl."), Doc. 174-1 at 3), one that was mailed to the Court rather than the Claims Administrator (and, thus, failed to comply with the procedure for asserting an objection) (*id*.), and one that was filed late and subsequently withdrawn for lack of standing because the purported objector and her counsel determined that she was not, in fact, a member of the Settlement Class (Doc. 186).

member Daniel Greenberg's objection (Doc. 173) encompasses the substantive and colorable arguments asserted in all of the other objections.  Mr. Greenberg is represented by attorney Theodore H. Frank of the non-profit law firm The Center for Class Action Fairness.  Mr. Frank filed a brief on behalf of Mr. Greenberg articulating his objections to the Settlement Agreement.  (*Id*.)  He also appeared at the Final Fairness Hearing and presented oral argument in support of Mr. Greenberg's objections.  (Tr. of Final Fairness Hrg., Doc. 188 at 37-57.)

### B.      THE UNDERLYING LITIGATION

While the claims at the heart of this litigation are rather nuanced, the Plaintiffs essentially allege that Travelers sells identical homeowners insurance policies at multiple prices, concealing the availability of lower-priced policies that offer identical coverage and service to identically qualified customers.  The Plaintiffs allege that Travelers' practice of charging multiple prices for identical coverage of the exact same risk constituted, among other things, fraudulent concealment and unjust enrichment.  The Plaintiffs' case evolved in three progressive stages, each of which is identifiable by the named plaintiff.

#### 1.      The *Zangara* Case

The first case in the trilogy was *Vincent Zangara, et al. v. Travelers Indemnity Company of America*, Case No. 1:05cv731 (N.D. Ohio) (O'Malley, J.), which Class Counsel filed on March 14, 2005.  The *Zangara* complaint alleged that a Travelers affiliate sold the plaintiffs a "homeowners insurance policy without disclosing to them the availability of a less expensive Travelers homeowners policy offering identical coverage and policyholder service."  *Zangara*, Case No. 1:05cv731, Doc. 2,

Accordingly, the Court assumes that Class Counsel misspoke when he said there were ten objections.

¶ 12.  A year later, after substantial discovery and briefing regarding a motion to dismiss filed by Travelers and regarding class certification, Class Counsel filed a motion to amend the complaint indicating that the named plaintiff likely had purchased the lower-priced policy.  *Id*. at Docs. 56, 56-1, 72.  Although on March 16, 2006, the Court denied Travelers' initial motion to dismiss, on March 30, 2006, the Court granted Travelers' second motion to dismiss, this time for lack of subject matter jurisdiction.  In the same order, the Court granted Travelers' motion to vacate all prior orders.  *Id*. at Docs. 58, 60-62.

### 2.  The *Stanich* Complaint

Less than a month after the Court dismissed *Zangara*, the next iteration of the case was filed on April 19, 2006, under the current case number, as *Neil Stanich et al. v. Travelers Property Casualty Insurance Company et al.*, Case No. 06cv962 (N.D. Ohio) (O'Malley, J.).  The *Stanich* complaint was similar to the *Zangara* complaint, but with new class representatives, and a new legal theory regarding Travelers' alleged duty to disclose the existence of lower-priced policies.  (*See* Doc. 128 at 12.)  Contentious and extensive discovery ensued, and the Court asked Magistrate Judge Patricia Hemann to assist in the supervision of discovery.  On April 20, 2007, the Plaintiffs filed their motion for class certification.  (Doc. 107.)  After the parties fully briefed the motion for class certification, the Court held a two-day hearing which included testimony by eight live witnesses.  (Docs. 124-25.)  Subsequently, the parties filed supplemental briefs.  (Docs. 122, 126.)

On March 28, 2008, the Court issued a lengthy opinion and order regarding class certification.  (Doc. 128.)  In the March 28, 2008 Opinion & Order, the Court held that the class was certifiable, but deferred its final ruling because the named plaintiffs designated to serve as representatives for the Agent SubClass, Neil and Bobby Jean Stanich, failed to meet the adequacy and typicality requirements of

Rules 23(a)(3) and (a)(4) of the Federal Rules of Civil Procedure.  (Doc. 128 at 46.)  The Court gave the Plaintiffs time to conduct discovery and then move to substitute a new Agent SubClass representative.  (*Id*.)

### 3.    The *Lonardo* Complaint

The third stage of the case began on July 24, 2008, when the Plaintiffs filed their motion to amend the complaint to substitute Paul Lonardo as Agent SubClass representative.  (Doc. 132.)  Once again, the parties briefed this motion and related motions extensively.  On January 26, 2009 the Court issued another lengthy opinion and order granting the motion to amend the complaint to substitute Lonardo, appointing class counsel, and certifying the class.  (Doc. 141.)

Travelers appealed the January 26, 2009 Opinion & Order to the United States Court of Appeals for the Sixth Circuit.  After further briefing, the Sixth Circuit affirmed the January 26, 2009 Opinion & Order on April 24, 2009.  (*See* Doc. 175 at 6.)

The Court then held a pre-trial conference to establish a new case schedule regarding discovery and notice procedures and forms.  On April 9, 2009, the Court inquired as to whether the parties wished to mediate.  Throughout the Spring and Summer of 2009, the Court conducted several status hearings and conferences to address issues relating to discovery, notice, and the exact parameters of the class certified.  In the course of working through issues during that time, the parties began to discuss settlement.

### C.    THE SETTLEMENT AGREEMENT

### 1.    Settlement Negotiations

Class Counsel described the settlement process as follows: "Settlement negotiations were protracted, difficult, and certainly at arm's length." (Doc. 175 at 7.)  At the hearing, Travelers' counsel

8

concurred in this description of the parties' interaction.  (Tr. Fairness Hrg., Doc. 188.)  The parties

initially participated in telephone conferences, and then met in person several times in the Summer of

2009, all the while exchanging information.  The parties finally reached a settlement on September 17,

2009.  (*Id.*)

### 2.      Terms of the Settlement

The terms of the settlement are set forth in the Settlement Agreement.  (Docs. 168, 190.)  In

addition to the definitions of the Settlement Class, Class Counsel, and the Settlement Class

Representatives provided above, there are several other key provisions of the Settlement Agreement.

### a.      Cash Payment and Recovery Calculations

The Settlement Agreement provides that each class member who timely submits a properly

completed claim form is entitled to $8.69 for each 12-month Class Policy Period.[7]  (Doc. 168 at 15, ¶

II.E.1.)  This figure is based on the following undisputed calculations:[8]

---

[7]      "Class Policy Period" is a defined term in the Settlement Agreement.  (Doc. 168 at
         3-4.)

[8]      At the Fairness Hearing the Court questioned the parties directly regarding the
         calculations relating to the $8.69 cash payment and Travelers' counsel confirmed that
         the parties did not dispute those calculations:

> [TRAVELERS' COUNSEL 1]: We came to the same conclusion, and
> you can see it in the declaration of Mr. Oseas . . . . Most of the
> statistics are included in his report, and both parties drew on the data
> generated ultimately from Travelers.  That's the only place to get it,
> and it makes sense that they would have come to the same
> conclusion.
> THE COURT: So there wasn't a debate on the damages theory?
> [TRAVELERS' COUNSEL 2]: On the math, no.

(Tr. Fairness Hrg., Doc. 188 at 11.)  These calculations are estimates, and the Court
recognizes that they are not part of the Settlement Agreement itself.  Instead, these
calculations provide the Court with important background information useful in

- Travelers identified 2,064,866.88 Class Policy Periods at issue,[9] and the Claims Administrator identified 487,277 potential Settlement Class Members.  (Oseas Decl., Doc. 174-1 at 1.)

- Settlement Class Members paid a total of $89,273,821 in additional commission charges due to the price difference between the identical policies at issue.  (Tr. Fairness Hrg., Doc. 188 at 10; Decl. of Leonard R. Freifelder, Ph.D. ("Freifelder Decl."), Doc. 176 Ex. Y at 3.)

- Because there are 2,064,866.88 Class Policy Periods and 487,277 potential Settlement Class Members, the average overpayment per Class Policy Period was $43.235.  (*Id.*) Thus, the $8.69 cash payment per class period represents a 20 percent recovery.  (Tr. Fairness Hrg., Doc. 188 at 10.)[10]

- The average Settlement Class member will be compensated for approximately 4.24 Class Policy Periods, and, in total, will receive approximately $36.82 from the cash payment aspect of the Settlement Agreement.  (Freifelder Decl., Doc. 176 Ex. Y at 3; Tr. Fairness Hrg., Doc. 188 at 10-11.)

In addition, each Settlement Class Member who submits a timely and valid claim form is entitled to a pro rata share of the $2 million Reversion from the attorneys' fee provisions of the Settlement Agreement, as discussed below in the section regarding the Available Benefit. (*See* Doc. 190-1 at 1.)

### b.    Notice and Claims Administration Costs

The Settlement Agreement provides that Travelers will pay for all costs associated with providing and administering the notice and claims procedures.  (Doc. 168 at 16-17, ¶ II.F.2.)  The

---

evaluating the fairness of the Settlement Agreement.

[9]    The Settlement Agreement states that "Defendants' best estimate is that there are approximately 2,239,136 Class Policy Periods" at issue.  (Doc. 168 at 10.)  This estimate was provided prior to the Notice and Claim procedure, however, and the parties agreed at the Final Fairness Hearing that the Oseas Declaration and the Declaration of Leonard R. Freifelder, Ph.D., Doc. 176 Ex. Y, are accurate.  (Tr. Fairness Hrg., Doc. 188 at 10-11.)

[10]    At the Final Fairness Hearing, Class Counsel estimated that the recovery is 23 percent of the actual loss per policy period.  (Tr. Fairness Hrg., Doc. 188 at 10.)  In fact, 8.69 is 20 percent of 43.235.

Claims Administrator estimates that, as of January 23, 2010, these costs totaled $420,306.[11]  (Oseas

Decl., Doc. 174-1 at 1.)

**c.      Attorneys Fees**

The original Settlement Agreement permitted Class Counsel to apply for attorneys' fees in an

amount <u>not to exceed</u> $6.6 million.  (Doc. 168 at 16, ¶ II.F.2.)  Paragraph II.F.2 provides:

> Class Counsel shall apply to the Court for an award of attorneys' fees and
> reimbursement of expenses, which award shall be contingent on approval of the
> Settlement by the Court.  Application by Class Counsel for an award of attorneys' fees
> and expenses shall not be in excess of $6,600,000.00.  Defendants will not oppose the
> motion for approval of attorneys' fees provided it is made in conformity with this
> paragraph.  The attorneys' fees and reimbursement of expenses, as awarded by the
> Court, shall be paid by the Defendants, without depleting the settlement payments to be
> made to the Settlement Class members.  Defendants shall pay Class Counsel the amount
> of attorneys' fees and expenses, not exceeding $6,600,000.00, that are ultimately
> approved by the Court within 14 days after the Effective Date of this Settlement
> Agreement.

(*Id.*)  The First Amendment to the Settlement Agreement changed this provision (¶ II.F.2) by reducing

the maximum amount of attorneys' fees from $6.6 million to $4.6 million and awarding the $2 million

difference to the Settlement Class, to be distributed on a pro rata basis.  (Doc. 190-1 at 1.)  The parties

and Mr. Frank refer to this $2 million payment to the Settlement Class as the "Reversion;" the Court

will use the same moniker. The First Amendment replaces all instances of $6.6 million with $4.6

million and adds the following paragraph to the end of the original paragraph II.F.2:

> The Settling Defendants will pay to the Settlement Class an additional $2,000,000.00
> (the "Reversion"), and in exchange Class Counsel has agreed to seek only up to $4.6
> million ($4,600,000.00) in attorneys' fees and costs.  Nothing in this Agreement
> obligates the Settling Defendants to pay more than $4,600,000.00 in attorneys' fees and
> costs.  This Reversion to the Settlement Class shall be distributed, pro-rata per class
> policy period, among Class members who submit a timely and valid Claim Form

---

[11]      The parties have not provided the Court with an updated figure for the Notice and
Claims Administration Costs.

11

postmarked on or before February 17, 2010.  To the extent the Court requires any additional notice to the Class, the cost of such notice will be borne by Class Counsel.

(Doc. 190-1 at 1.)

### c.      Injunctive Relief

Travelers also agreed not to engage in the practice at issue, as defined in the Settlement Agreement, for a period of three years.  (Doc. 168 at 17, ¶ II.G.)

### 3.      Preliminary Approval & Notice

On November 18, 2009, the Court issued an order preliminarily approving the Settlement Agreement and approving procedures and forms relating to notice to class members, objections to the Settlement Agreement and final approval.  ("Preliminary Approval Order," Doc. 170.) The Preliminary Approval Order established deadlines and procedures for notice to the Settlement Class, claims, and objections.  (*Id*.)  The Court scheduled the Final Fairness Hearing for January 27, 2010.  (*Id*. at 3.)

Notice proceeded in the manner described in the Settlement Agreement and Preliminary Approval Order.  (*See* Doc. 175.)  The Claims Administrator, Epiq Systems, Inc., received from Travelers contact information for 487,277 potential class members.  The Claims Administrator processed these names and addresses to identify any changes-of-address and then implemented a direct mail notice program.  In addition, the Claims Administrator issued a public notice, established an informational website (http://www.lonardosettlement.com), and established a toll-free telephone number for the litigation.

At the Final Fairness Hearing on January 27, 2010, the parties agreed to the Court's proposal to allow further briefing after the close of the claims period – February 17, 2010 – regarding the fairness of the Settlement Agreement (and attorneys' fees). (Docs. 187, 188.)  The Court established a schedule

12

for such briefing, and ordered Travelers to post information regarding the number of timely and valid claims filed with the Claims Administrator on the website on or before March 1, 2010.  (Doc. 187.)

### 4.    Claims Submitted and Actual Payment to the Settlement Class

The deadline for submitting claims was February 17, 2010.  (Doc. 170 at 3.)  As of February 25, 2010, the Claims Administrator had received 53,782 timely, valid claims.  (*See* http://www.lonardosettlement.com, last visited March 26, 2010.)[12]  Pursuant to the Court's order at the close of the Final Fairness Hearing on January 27, 2010, Travelers disclosed on February 27, 2010, that the total amount of these claims was $2,812,962.  (Doc. 191.)  In other words, $2,812,962 is the total cash payment the Settlement Class will receive on a per Class Policy Period basis as the product of $8.69 and the number of Class Policy Periods encompassed within the timely and valid claims submitted.  In addition to this amount, the Settlement Class will actually receive a cash payment of $2 million dollars as a result of the Reversion.  This Reversion will increase the actual cash payment by approximately $6.18 per Class Policy Period, based on the number of timely and valid claim forms submitted.   The Court will refer to this amount – $2,812,962 plus the $2 million Reversion – as the "Actual Payment" throughout this Opinion and Order.

---

[12]    On March 11, 2010, Travelers filed Defendants' Notice of Filing List of Invalid Claims, pursuant to ¶ II.B.10 of the Settlement Agreement.  (Doc. 192.)  The List of Invalid Claims includes 509 claims that the Claims Administrator deemed invalid because they were either untimely, unsigned, or it was determined that they were not submitted by a member of the Settlement Class.  (Doc. 192 at 1-2.)  Class Counsel does not dispute the invalidity of these claims.  (*Id.*)  Accordingly, it appears that the total number of valid claims may now be 53,273.  It is not entirely clear whether the number of "timely valid claims" listed on the website has been adjusted to account for the invalid claims identified in the Defendants List of Invalid Claims, however. The website lists the number of claims as of February 25, 2010; the List of Invalid Claims was filed on March 11, 2010. (*Compare* http://www.lonardosettlement.com, last visited March 26, 2010, *with* Doc. 192.)

## 5.    The Available Benefit

Travelers and the Plaintiffs agree that, notwithstanding the amount of the Actual Payment, the amount available to the Settlement Class equals the product of potential Settlement Class Members' Class Policy Periods (2,064,866.88) and the agreed cash payment per Class Policy Period ($8.69).  This amounts to $17,943,693.18.  (*See* Freifelder Decl., Doc. 176 Ex. Y at 4; Tr. Fairness Hrg., Doc. 188 at 10.)  In other words, if every potential Settlement Class Member identified by Travelers had submitted a timely, valid claim form, the Actual Payment to the Settlement Class would have been $17,943,693.18.  The Court will refer to this amount – $17,943,693.18 – as the "Available Benefit."[13]

In order to fully understand the Available Benefit in context, at the Final Fairness Hearing the Court asked the parties to clarify the relationship between the Available Benefit they negotiated as part of the Settlement Agreement (i.e., the $8.69 payment per Class Policy Period) and Settlement Class Members' actual loss as a result of paying the higher premium.  (Tr. Fairness Hrg., Doc. 188 at 10-11.)  Referring to the Freifelder Declaration, the parties indicated that the Settlement Class Members' actual loss is approximately $89 million.  This estimate is based on Dr. Freifelder's calculation: 2,064,866.88 Class Policy Periods multiplied by an average overcharge per Class Policy Period of $43.235 equals

---

[13]    The attorneys' fee Reversion in the First Amendment to the Settlement Agreement increased the total amount available to the Settlement Class by $2 million. The parties provided notice of the Reversion to the Settlement Class via the case website after they negotiated the First Amendment.  Further, on a class-wide basis, the Reversion represents an increase of less than one dollar per Class Policy Period – $17,943,693.18 plus $2,000,000.00 divided by 2,064,866.88 equals $9.66, compared to $8.69.  Providing additional notice via regular mail would be costly and would delay delivery of benefits to the Settlement Class.  Therefore, although information regarding the Reversion was not included in the initial notice mailed to Settlement Class Members, the Court finds that it is not necessary to order the parties to provide additional class-wide notice of the Reversion.

14

$89,273,821.[14]  (Freifelder Decl., Doc. 176 Ex. Y at 3.)  Therefore, as noted by the Court at the Final Fairness Hearing, the Available Benefit negotiated by the parties as set forth in the Settlement Agreement represents a 20 percent recovery of the Settlement Class' Total Actual Loss.  (Tr. Fairness Hrg., Doc. 188 at 10.)

## II.  CLASS ACTION SETTLEMENT APPROVAL ANALYSIS

Having described the background of this litigation and summarized the key aspects of the Settlement Agreement, the Court now turns to the approval analysis.

### A.  APPLICABLE STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENT

It is well-established that the law generally favors settlement.  *See*, *e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of a class action.").  "The Court evaluates the proposed settlement in light of the general federal policy favoring settlement of class actions."  *UAW v. General Motors Corp.*, Case No. 05cv73991-DT, 2006 WL 891151, at *12 (E.D. Mich. Mar. 31, 2006).  Rule 23, moreover, requires that a class action settlement be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986).  Whether a class action settlement satisfies Rule 23(e) is committed to the sound discretion of the district court.  *See Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990).

Although Rule 23 does not prescribe a procedure for determining whether a proposed class action settlement is fair, reasonable, and adequate, it does require the Court to provide class members

---

[14]     The Court will refer to this amount – the product of total Class Policy Periods and the average overcharge per Class Policy Period – as the "Total Actual Loss" throughout the remainder of this Opinion & Order.

who would be bound by the proposed settlement with reasonable notice and an opportunity to object. Fed. R. Civ. P. 23(e). The Court must also hold a hearing regarding the fairness, reasonableness, and adequacy of the proposed settlement. *Id.*; *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (quoting *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990) noting that the district court may conduct the fairness hearing in the manner appropriate "to aid it in reaching an informed just and reasoned decision"). The Court has satisfied these preliminary requirements: in the Preliminary Approval Order (Doc. 170), the Court provided for notice and an opportunity to object to the Settlement Agreement, and the Court allowed Settlement Class Members to present objections at the Final Fairness Hearing on January 27, 2010 (Doc. 188). Therefore, the question now before the Court is simply whether the Settlement Agreement is fair, reasonable, and adequate.

Courts within the Sixth Circuit refer to a list of relevant factors to evaluate the fairness, reasonableness, and adequacy of a class action settlement. *See, e.g.*, *Gordon v. Dadante*, 336 Fed. Appx. 540, 549 (6th Cir. 2009) (unpublished) (citing *Intl' Union, United Auto., Aerospace, & Agric. Implement Workers v. Gen. Motors Corp.*, 497 F.3d 615, 631-32 (6th Cir. 2007) (listing seven factors for evaluating a class action settlement)). In *UAW v. GM*, 2006 WL 891151, at *14, the Eastern District of Michigan listed the following relevant factors:

(1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;

(2) the risks, expense, and delay of further litigation;

(3) the judgment of experienced counsel who have competently evaluated the strength of their proofs;

(4) the amount of discovery completed and the character of the evidence uncovered;

16

(5)     whether the settlement is fair to the unnamed Class members;

(6)     objections raised by Class members;

(7)     whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and

(8)     whether the settlement is consistent with the public interest.

While Sixth Circuit courts do not always articulate these factors using this language, *see, e.g.*, *Intl' Union, United Auto., Aerospace, & Agric. Implement Workers*, 497 F.3d at 631-32 (listing seven factors instead of eight), the above list includes the factors commonly recognized as relevant.  The Court, moreover, "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IEU-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594-95 (E.D. Mich. 2006); *see also Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-1206 (6th Cir. 1992).  Accordingly, the Court will evaluate the Settlement Agreement by addressing each of the relevant factors in turn, while recognizing that it need not give equal weight to each of those factors.

### B.     APPROVAL ANALYSIS

#### 1.     Whether the Settlement Agreement Is Fair, Reasonable, & Adequate

##### a.     Likelihood of Success on the Merits

The first factor is the likelihood of success on the merits weighed against the amount and form of relief offered in the Settlement Agreement.  A class action settlement may be particularly beneficial to the class if the risk of losing the case on the merits is high.  As the Sixth Circuit has stated:

> The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to "decide the merits of the case or resolve unsettled legal questions," we cannot "judge the fairness of a proposed compromise" without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."

17

*Intl' Union, United Auto., Aerospace, & Agric. Implement Workers*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)).

The Plaintiffs' legal position in this case has always been tenuous.  The Court recognized in its initial class certification order that the Plaintiffs' theory with respect to Travelers' duty might make their claims vulnerable to dismissal at the summary judgment stage or to a finding in favor of Travelers at trial. (Doc. 128 at 12; Tr. Fairness Hrg., Doc. 188 at 8.)  Based on its own significant analysis of the legal questions central to this case, the Court also knows that the Plaintiffs' legal theory is, as Class Counsel put it, "imaginative" and "unique." (Tr. Fairness Hrg., Doc. 188 at 8.)  Consequently, regardless of the outcome of summary judgement or trial, the Plaintiffs faced a very meaningful risk of losing on appeal to the Sixth Circuit.  Travelers' experienced counsel clearly understood the weaknesses in the Plaintiffs' case, and consistently expressed their intention to exploit those weakness at each stage of the litigation.  At the Final Fairness Hearing, the Court questioned Travelers' counsel directly regarding her perspective on the Plaintiffs' case. (Tr. Fairness Hrg., Doc. 188 at 35-36.)  She confirmed that Travelers believed it had a substantial likelihood of prevailing on the merits:

> Well, I mean, from my perspective, the legal theories . . . of their case were not strong.
> I think . . . the shifting of the theory from the fiduciary duty later to the reliance theory
> and so forth, they were revealing themselves some, recognition of the weakness of their
> legal theories in some respects. . . . If we ended up litigating, I felt that I had a strong
> case.

(*Id*.) Accordingly, the Plaintiffs' likelihood of success on the merits was decidedly speculative.

On the other side of the equation is the amount and form of the relief provided in the Settlement Agreement.  With respect to the form of relief, the Settlement Agreement provides for a cash payment in the amount of $8.69 per Class Policy Period, a pro rata share of the $2 million Reversion, and an injunction prohibiting Travelers from engaging in the practice at issue, as defined in the Settlement

18

Agreement, for a period of three years.  As described above, the average Settlement Class Member overpaid by approximately $43 dollars per Class Policy Period, and the Settlement Agreement provides for a recovery of $8.69 per Class Policy Period.  In terms of the amount, therefore, the parties negotiated a potential recovery equal to 20 percent of each Settlement Class Member's Actual Loss.  In addition, however, each Settlement Class Member will receive a pro rata share of the Reversion, thus increasing their recovery above 20 percent of their Actual Loss.[15]  The injunctive relief is also significant given that the practice has a potential discriminatory effect.  (*See* Declaration of Wilbur C. Leatherberry ("Leatherberry Decl."), Doc. 176 Ex. H (explaining how the practice could have a discriminatory effect).)

After balancing likelihood of success on the merits with the amount and form of the relief, the Court finds that this factor tips the scales heavily in favor of approval of the Settlement Agreement.  The Settlement Agreement provides the Settlement Class Members with <u>something</u>, under circumstances in which there was a substantial likelihood that, but for the settlement, they would have received <u>nothing</u>.  That "something," moreover, is not just a nominal sum – it is a cash payment of, on average, in excess of $36.  That amount far exceeds the value of the stamp and the effort required to return the claim form.  Indeed, the cash component of the Settlement Agreement represents a meaningful recovery of almost one quarter of the Actual Loss, and does not include the value of enjoining a potentially discriminatory practice for at least three years.

---

[15]     The Settlement Agreement provides that each Settlement Class Member who submits a timely and valid claim form is entitled to a pro rata share of the $2 million Reversion on a per Class Policy Period basis.  This amounts to an approximately $6.18 cent increase in the cash payment per Class Policy Period.

### b.      Risks, Expense & Delay of Further Litigation

The second factor assesses the risks, expenses, and delay associated with further litigation. *See In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).

As discussed above, this was a hard-fought legal battle from the filing of the complaint in *Zangara* to the final settlement conference.  As Class Counsel explained at the Final Fairness Hearing:

> This litigation has gone on for nearly five years. Counsel for Plaintiffs have expended 7,000 hours, hundreds of interrogatories, hundreds of document requests, thousands of pages of documents have been produced, nineteen depositions, seven experts, two class certification proceedings, a trip to the Sixth Circuit on a 23(f), and probably a dozen or more formal or informal discovery hearings.

(Tr. Fairness Hrg., Doc. 188 at 6.)  Based on the Court's intimate knowledge of these proceedings, there is no reason to believe that either party would litigate the remainder of the case less vigorously.  And, the remainder of the case would almost certainly include potentially meritorious summary judgment motions (and all of the associated briefing), as well as discovery in advance of summary judgment motions regarding the scope of the class, damages, and experts.  Furthermore, appeal of any judgment would be a virtual certainty, adding years and costs to an already aged and expensive case.

In light of these considerations, the second factor also strongly favors approval.

### c.      Well-Informed Class Counsel Endorse the Settlement Agreement

The next factor favors approval if well-informed and knowledgeable counsel endorse the settlement. *See UAW v. GM*, 2006 WL 891151 at *18 (stating that experienced counsel's endorsement "is entitled to significant weight, and supports the fairness of the class settlement"); *Smith v. Ajax Magnethermic Corp.*, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'").

20

In this case, Class Counsel enthusiastically endorse the Settlement Agreement. (Tr. Fairness Hrg., Doc. 188 at 7 ("The fact that we are sitting here today and I am standing before you today with a settlement in place, frankly, is extraordinary.").) Class Counsel are experienced and capable attorneys whose work in complex class actions and multi-district litigation matters is well-known to the Court. *See*, *e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003); *see also* Kennedy Aff., Doc. 175 Ex. E. In addition, the Court has already noted in the January 26, 2009 Opinion & Order that Class Counsel have devoted their time, resources, and expertise diligently to the task of prosecuting this action on behalf of the Plaintiffs and the Settlement Class. (Doc. 141 at 44.) For all of these reasons, the Court finds that the Settlement Agreement is endorsed by experienced, professional, and highly-skilled counsel who thoroughly evaluated the relative merits of the case and the Settlement Agreement.[16]

### d.     Amount of Discovery Completed & the Character of the Evidence

In order to realistically and accurately assess the strength of their case and the propriety of settlement, experienced attorneys need sufficient information. *In re Telectronics*, 137 F. Supp. 2d at 1014. With this in mind, another factor the Court considers in evaluating the Settlement Agreement is the amount and character of the evidence assembled to date. *Id.*

Here, as described above, the parties have engaged in substantial discovery. (Tr. Fairness Hrg., Doc. 188 at 6.) First, the parties conducted significant discovery in preparation for the motion for class certification, and the Court heard live testimony from eight witnesses at the class certification hearing.

---

[16]     Additionally, Travelers' well-informed and experienced counsel endorse the Settlement Agreement, and, at the Final Fairness Hearing, affirmatively stated that it is the result of hard-fought, arm's-length negotiation. (Tr. Fairness Hrg., Doc. 188 at 36-37.)

(*See* Transcript of Class Certification Hearing ("Tr. Class Cert. Hrg."), Docs. 124, 125.) Although the class certification process is not designed to test the merits of the plaintiffs' claims, the Court noted in its class certification orders that, in this case, there was significant overlap between certain merit-based issues and certification, especially the basis for the Plaintiffs' fraud allegations.  (Doc. 128 at 7-8, 12-27.)  Consequently, the nature of this case afforded counsel for both parties with an opportunity for early discovery regarding the merits.  Second, the parties conducted more discovery in the context of identifying substitute class representative Lonardo.  (Doc. 141.)  Third, after the Court issued the January 26, 2009 Opinion & Order regarding class certification, the parties conducted further discovery, including, among other things, discovery regarding the size and scope of the class certified.  (*See* Doc. 175 at 6-7.)  Ultimately, Class Counsel devoted more than 7,700 hours to this litigation and, as a result, have no doubt developed a sense of the relationship between the facts revealed in discovery and the legal issues.

Accordingly, the Court finds that this factor also strongly favors approval of the Settlement Agreement.

### d.      The Public Interest

Whether the Settlement Agreement serves the public interest is another relevant factor.  Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile.  Similarly, the law favors settlement of class actions for policy reasons.  This case is consistent with the goals and policies underlying class actions.  Class counsel took on a difficult case that an individual class member would almost certainly never file on their own.  The Settlement Class,

moreover, obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated.  In addition, the Settlement Agreement contains injunctive relief that, for at least three years, will prevent the potential discrimination Professor Leatherberry identified, a benefit to the public as well as Settlement Class Members.  Accordingly, this Settlement Agreement is consistent with the public interest.

### e.    Objections from Class Members

The remaining factors – whether the Settlement Agreement is the product of arms-length negotiations as opposed to collusive bargaining and whether the Settlement Agreement is fair to the unnamed class members – are encompassed within the Court's analysis of the factors regarding objections from Settlement Class Members and will be addressed as such.

### i.    The Number of Objections

First, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).  The small number of objections is at least some indication that the settlement is fair to the unnamed class members.  Here, the Claims Administrator sent the notice and claims forms to 487,277 potential Settlement Class Members and only ninety opted-out of the Settlement Agreement and nine submitted objections.  Of those objections, one was untimely and was withdrawn because the objector was not a member of the class, one was submitted improperly, and several did not address issues within the scope of the Settlement Agreement.  While the Court acknowledged that it may be possible to argue, and Mr. Greenberg did argue, that the paucity of objections is at least partially due to the procedures for submitting a claim and asserting an objection, *see* Tr. Fairness Hrg., Doc. 188 at 54-55, nine objections is truly a small number relative to the number of potential Settlement Class Members.  *See*

23

*Hainey v. Parrott*, 2007 WL 2752375, at *5 (S.D. Ohio Sept. 20, 2007) (stating that "a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable, and adequate").

### ii.      The Substance of the Objections

Turning to the substance of the objections, the Court finds that Class Counsel has addressed each persuasively.

Before addressing the objections, however, it is important to note that, in his Supplemental Brief in Support of Objection of Daniel Greenberg (Doc. 191), Mr. Greenberg concedes that the Court could find that this Settlement Agreement is fair, reasonable, and adequate based on applicable Sixth Circuit authority:

> Greenberg acknowledges that the Sixth Circuit grants discretion to a district court's decision whether to approve a settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e), and further concedes that this court could arguably approve the settlement and fee proposal without committing an abuse of discretion under current case law–though he certainly reserves his right to ask the Sixth Circuit to change that case law.

(*Id*. at 1 (citing *Bailey*, 908 F.2d at 42; *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778 (6th Cir. 2005)).)
In other words, while his objections seek to <u>improve</u> the Settlement Agreement, they do not assert that it is unfair, inadequate, or unreasonable under applicable law.  Since that is the standard the Court must apply in order to approve the Settlement Agreement, the Court could conceivably grant the Motion for Final Approval (in the interest of judicial efficiency) without addressing Greenberg's objections.  The Court will not, however, take that approach, preferring instead to address all substantive objections presented to it in class action matters.

### *Insufficient Notice*

In his objection and at the Final Fairness Hearing, Greenberg argued that the Settlement

24

Agreement did not provide Settlement Class Members with sufficient notice regarding the total Available Benefit to the Settlement Class and the basis of Class Counsel's request for $6.6 million in attorneys' fees.  (Doc. 173.)  In response, Class Counsel directed the Court to the aspects of the Settlement Agreement estimating the number of Class Policy Periods at issue, describing the $8.69 cash payment per Class Policy Period, and explaining the parties' agreement with respect to Class Counsel's request for attorneys' fees.  (Tr. Fairness Hrg., Doc. 188 at 22-25.)  Class Counsel argues that notice was sufficient because the Settlement Agreement was posted on the case website and available on the Court's docket.  Class Counsel also cited several cases in which the notice regarding the total settlement fund and attorneys' fees was less specific than the notice provided here.  (*See* Tr. Fairness Hrg., Doc. 188 at 23-25 (citing, *e.g.*, *Bobbitt v. Academy of Ohio Reporting, Inc.*, 2009 WL 3336085 (E.D. Mich. Oct. 15, 2009)).)

Under the circumstances, and based on all of the facts described above, the Court finds that notice regarding the total Available Benefit and the basis of Class Counsel's request for attorneys' fees was sufficient to satisfy due process.

Greenberg also argues that notice was insufficient because Class Counsel filed the Fee Petition after the period to object to the Settlement Agreement had expired.  While this is factually correct, the Court resolved this objection at the Final Fairness Hearing by expressly permitting supplemental briefing regarding approval and attorneys' fees after the claims period ended on February 17, 2010. (Doc. 187.)  At the Final Fairness Hearing, Mr. Frank acknowledged that this objection was "cured by the opportunity for further briefing."  (Tr. Fairness Hrg., Doc. 188 at 54.)

### *Artificial Barriers to Recovery*

Mr. Greenberg objects to the Settlement Agreement on the grounds that the procedure for

25

submitting claims erects artificial barriers to recovery by reducing the likelihood that Settlement Class Members will submit a timely, valid claim form.

First, he objects to the existence of a claim form – i.e., the fact that Settlement Class Members have to opt-in by signing and returning a form.  He argues that the form is unnecessary because it does not provide Travelers with any information they do not already have.  Instead, he proposes, Travelers simply should have written each Settlement Class Member it identified a check in the appropriate amount, or, alternatively, allowed Settlement Class Members to submit their claims online.  In response, Class Counsel argued that the claim form and opt-in procedure are negotiated components of the settlement that Travelers insisted upon in order to force Settlement Class Members to affirm that they would have purchased a lower-priced policy had it been offered to them.  As stated in the memo in support of final approval:  "this Court certified the Ohio fraud class based upon the presumption of reliance.  The claim form allows the Defendants the opportunity, on an individual basis, to attempt to rebut this presumption."  (Doc. 175 at 19.)  While Mr. Greenberg contends in his supplemental brief that the Defendants are estopped from rebutting this presumption because of the uniform pattern of conduct underpinning the class certification order, the uniform conduct at issue was the form application, policy, and marketing documents.  Given that fact, rebutting the presumption of reliance on an individual basis is not inconsistent with class certification.  *See Baughman v. State Farm Mut. Ins. Co.*, 727 N.E.2d 1265, 1275 (Ohio 2000) (holding that the defendants may rebut the presumption of reliance on an individual class member basis).  Furthermore, although it might have been better to allow Settlement Class Members the option to submit claims online, it was not unreasonable for defendants to insist on a uniform class procedure.  Clearly, a mandate that claims be only submitted online would be subject to objection from those not sufficiently computer savvy to participate easily

in the process.  Choosing one claims processing mechanism that involves simple use of the mails is not unreasonable. The settlement must be reasonable and adequate, not perfect.

### *Attorneys' Fees*

Mr. Greenberg's next objection asserts that the Court should reject the Settlement Agreement because the attorneys' fees provisions were negotiated separately and are not included in the settlement amount available for the class.  He argues that the Court should create "a bright-line rule forbidding attorneys from negotiating separate fee awards that do not benefit the class."  (Doc. 191 at 1-2.)  In other words, the Court should refuse to approve <u>any</u> class action settlement in which attorneys' fees are paid independently of the value of benefits bestowed upon the class.  Mr. Greenberg argues that such an arrangement reduces the amount the class recovers because it divorces or "decouples" Class Counsel's interests from the interests of the class and provides attorneys an incentive to reserve for themselves a larger percentage of the total funds the defendant is willing to pay.  Mr. Greenberg goes so far as to argue that by setting up two separate funds – one for class payments and one for a potential fee award – Class Counsel "have breached their fiduciary duty to the class" and have not "fairly and adequately" represented the interests of the Settlement Class.  (Doc. 173 at 8.)  Finally, Mr. Greenberg asserts that use of this two part structure "reduces the court's incentive to carefully scrutinize the fee for unreasonableness, since any reduction only benefits the defendant."  (Doc. 191 at 3.)

Class Counsel correctly point out that Mr. Greenberg's brief is "long on ideology and short on law[,]" and that "[h]e readily admits that this Settlement could be approved under current Sixth Circuit law." (Doc. 193 at 1.)  More specifically, Class Counsel note, with substantial citation to case law, that the structure proposed in this case is common in class action litigation, that Mr. Greenberg has failed to cite a single case (and the Court has found none) where a class action settlement has been rejected

27

on these grounds, and that the Sixth Circuit case law authorizes use of such a structure.

Class Counsel argues, moreover, that there will always be some conflict between the interests of the class and those of class counsel, which is why the Court is charged with reviewing the settlement to ensure that it is fair and that Class Counsel did not sacrifice the well-being of the Settlement Class for their own benefit.  Class Counsel explains that any competent class action lawyer in 2010 understands that there is a split of authority and that a court might choose to award fees strictly as a percentage of the actual recovery to the class – i.e., the Actual Payment – giving counsel every incentive to maximize that Actual Payment.  Class Counsel also notes that the history of this case clearly indicates that the parties negotiated at arm's length and there is no evidence of collusion.[17]

While policy concerns often prompt commentators to rethink how class action settlements operate, Class Counsel' arguments on this issue are both legally and factually more sound than those of Mr. Greenberg.[18]  There is no legal authority supporting the bright line rule Mr. Greenberg asks the Court to draw and there is substantial case law indicating that it is neither necessary nor appropriate. There is also no reason to believe that Mr. Greenberg's lack of faith in judicial officers who oversee class action settlements is justified.  The notion that courts would be less vigilant regarding the

---

[17]    The Court asked Travelers' counsel to confirm Class Counsel's representation (and the Court's understanding) that the settlement negotiations were arm's length and free of collusion.  (Tr. Fairness Hrg., Doc. 188 at 35-36.)  Travelers' counsel did so unequivocally.  (*Id.*)  Furthermore, Mr. Greenberg agrees that this is not a case of <u>actual</u> collusion.  (*Id*. at 37.)

[18]    Indeed, one could argue that the policy of assuring zealous advocacy on behalf of a class is better served by a structure that divorces the Actual Payment from any attorney fee provision.  The Courts sees no reason to wade into this debate in this case, however.

28

propriety of an attorney fee award simply because of the structure it takes is confounding.[19]  Courts are charged with carefully assessing the scope and size of any fee award, which this Court intends to do. Finally, on the facts of this case, there is nothing to indicate that collusion occurred between the parties on this issue; indeed, all evidence supports the opposite conclusion.

For these reasons, the Court rejects this final objection to the Settlement Agreement as well.

### f.  Conclusion: The Factors Favor Approval

For all of the reasons discussed above, the Court finds that the relevant factors favor approval of the Settlement Agreement. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Final Approval

---

[19]  Instead, the case law Mr. Greenberg cites in his brief simply confirms the proposition that, no matter what *form* the settlement takes, the Court has an obligation to review the entire agreement – including the attorneys' fee provisions -- and either approve or reject it in its entirety.  *See Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003) (stating that "[i]n a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper" (omitting citations and internal quotations); *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000) (holding that an objecting class member has standing to appeal approval of settlement including an attorneys' fee award that was payable from a fund independent of the settlement fund because the award is part of the settlement and payable by the defendant regardless of the independence of the fund); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995) (holding that an independent agreement between class counsel and the defendants regarding attorneys' fees must be reviewed along with the class action settlement because "a thorough judicial review of fee applications is required in all class action settlements").  In other words, the case law regarding a two-pronged settlement agreement in which attorneys' fees are payable independent of the common fund and unawarded fees revert back to the defendant (as opposed to the class) does not stand for the dramatic proposition that Mr. Greenberg advances.  It, instead, supports the fundamental Rule 23(e) requirement that the Court scrutinize all aspects of a class action settlement. The recognition that, "[i]n essence the entire settlement amount comes from the same source" and that "[t]he award to the class and the agreement on attorneys' fees represent a package deal," *see Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996), is an acknowledged and unremarkable aspect of the Rule 23(e) review that district courts routinely perform.

of Class Action Settlement and Incentive Award to Class Representatives (Doc. 175), **APPROVES** the Settlement Agreement as fair, reasonable, and adequate, and **ORDERS** Travelers to implement the "Equitable Relief" provisions of the Settlement Agreement, and to fulfill all other obligations under the Settlement Agreement.

### 2.    Incentive Awards to Class Action Representatives

The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined the circumstances justifying incentive awards.  *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003).  Courts within the Sixth Circuit, however, recognize that, in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone.  *Id.* ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit. Numerous courts have authorized incentive awards.");  *Liberte Capital Group v. Capwill*, 2007 WL 2492461, *1-2 (N.D. Ohio Aug. 29, 2007).

The Settlement Agreement in this case expressly provides that Class Counsel will ask the Court to approve an incentive payment of $5,000 to each of the three Class Representatives – Lonardo, Frezza, and Feldman – "in recognition of [their] efforts on behalf of the Settlement Class."  (Doc. 168 at 17.)  There are no objections to this provision of the Settlement Agreement, or to an incentive award in this case.  The Class Representatives have actively participated in the case and assisted in its prosecution.  Each submitted an affidavit describing his significant involvement in the case (Doc. 175 Exs. A, B, C), and the Court is well-aware of Lonardo and Frezza's substantial contributions having observed Frezza testify at the class certification hearing (Doc. 124), and granted the Plaintiffs' motion

to substitute Lonardo as Class Representative (Doc. 141).

Accordingly, the Court **GRANTS** the request for an incentive award of $5,000 to each of the Class Representatives.

### III.  FEE PETITION ANALYSIS

#### A.  INTRODUCTION:  CLASS COUNSELS' PETITION FOR FEES

On January 25, 2010, Class Counsel filed their Fee Petition requesting an award of attorneys' fees in the amount of $4.6 million.  (Doc. 176.)  Class Counsel suggested that this Court should evaluate the reasonableness of this request by employing the "lodestar" method and using the "percentage of the fund" method as a cross-check.  (*Id*. at 1.)  In addition, in light of acknowledged unsettled law in the area, Class Counsel proposed an innovative approach to determining the value of the "the fund" for purposes of the percentage of the fund analysis.  (*Id*. at 23-29.)

Several Settlement Class Members, led by Mr. Greenberg, objected to the provision of the original settlement agreement (Doc. 168 at 16, ¶ II.F.2) in which the Defendants agreed not to oppose Class Counsel's request for attorneys' fees, so long as they did not request more than $6.6 million.  In their Fee Petition, which was filed after Mr. Greenberg filed his objection (Doc. 173), Class Counsel requested only $4.6 million in fees, and promised to amend the Settlement Agreement to reflect the $2 million reduction.[20]  (Doc. 176 at 16.)  Mr. Greenberg then appeared at the Final Fairness Hearing through his attorney, Mr. Frank of The Center for Class Action Fairness, and presented his objections to Class Counsel's request for attorneys' fees.  The time period for potential Settlement Class Members to submit claims had not expired at the time of the Final Fairness Hearing, so the Court permitted post-

---

[20]    Class Counsel fulfilled this promise on March 18, 2010, when they filed the First Amendment to the Settlement Agreement.  (Doc. 190-1.)

hearing briefing regarding approval of the Motion for Final Approval and the Fee Petition (*see* Doc. 187).  On March 9, 2010 Mr. Frank filed a supplemental brief in which he conceded that the Court could grant Class Counsel's Fee Petition under applicable Sixth Circuit authority, but nonetheless continued to press Mr. Greenberg's objections in an effort to persuade the Court to adopt his own proposals with respect to the proper analysis of fee petitions in class action cases.  (Doc. 191 at 1.)[21]

The debate between Mr. Frank (on behalf of Mr. Greenberg) and Class Counsel raises interesting questions of largely unsettled law.  Both sides agree that (1) an inevitable conflict of interest exists between class counsel and the class in every class action settlement against which courts must guard; and (2) the Settlement Agreement in this case is <u>not actually</u> tainted by collusion between Class Counsel and Travelers or self-dealing by Class Counsel.  Their disagreement concerns whether the Court should ever award attorneys' fees in excess of a reasonable percentage of the Total Actual Payment to the class.  The Court will address the issues that arise out of this disagreement in its analysis of the Fee Petition below.

## B.  APPLICABLE LAW: THE DETERMINATION OF ATTORNEYS' FEE AWARDS IN CLASS ACTION CASES

Rule 23(e) requires the Court to evaluate all class action settlements.  Fed. R. Civ. P. 23(e).  One aspect of this responsibility is to protect absent class members' interests; another is to ensure "that counsel is fairly compensated for the amount of work done as well as for results achieved." *Rawlings*

---

[21]     At the hearing, Mr. Frank conceded that his proposal to reduce Class Counsel's fees would not inure to the benefit of the Settlement Class in this case unless the Court rejected the Settlement Agreement in its entirety – i.e., that, as structured, any fee reduction would result in a reversion to Travelers, not the Settlement Class.  *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 963 n.16 (9th Cir. 2003) (explaining that Rule 23(e) gives the district court the power to approve or reject the settlement in its entirety, not to modify it and then order its acceptance by the class).

*v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.1993). The unique characteristics of class actions, both generally and on a case-by-case basis, give district courts broad discretion in their determination of an attorneys' fee award. *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996); *Rawlings*, 9 F.3d at 516; *In re Cardinal Health, Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 757 (S.D. Ohio 2007) (citing *In re Sulzer Orthopedics Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) for the proposition that "[i]t is within the Court's discretion to set the amount of attorneys' fees so that they are reasonable, and the Sixth Circuit reviews such an award only for an abuse of discretion.").

Courts usually employ one of two methods in analyzing a request for attorneys' fees – the "lodestar" analysis or "percentage of the fund" analysis. *See, Sulzer*, 268 F. Supp. 2d at 922 (citing *Rawlings*, 9 F.3d at 515-16); *see also In re Cardinal Health*, 528 F. Supp. 2d at 757 ("First, the Court must select a method by which to calculate the attorneys' fees-either the percentage approach or the lodestar approach."). To determine the "lodestar" figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *see also Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2004); *Sulzer*, 268 F. Supp. 2d at 922 (citing *Penn. v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The Court may then adjust the lodestar figure up or down based on a number of factors designed to account for case-specific circumstances. *Id.* "In contrast, '[u]nder the percentage of the fund method, the court simply determines a percentage of the settlement to award the class counsel.'" *Sulzer*, 268 F. Supp. 2d at 922 (quoting *Telectronics*, 137 F.Supp.2d at 1041 (citing *Rawlings*, 9 F.3d at 516)).

In the Sixth Circuit, it is within the discretion of the district court to decide which method to use in a given case. *See id.* (quoting *Bowling*, 102 F.3d at 779 (quoting *Rawlings*, 9 F.3d at 516)). In

*Rawlings*, the Sixth Circuit stated:

> The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.

*Rawlings*, 9 F.3d at 516.  In general, however, percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a "common fund").  *Id*.

This is not a common fund case, however.  The Settlement Agreement provides for attorneys' fees independent of what the Available Benefit or the Actual Payment to the Settlement Class turns out to be.  Class Counsel submits that the lodestar has been favored in statutory fee-shifting cases and in cases, like this one, in which the settlement agreement provides for attorneys' fees to be paid independently (as opposed to from the common fund).  (Doc. 176 at 13-14.)  Class Counsel cites a number of cases in support of this proposition, although none are within the Sixth Circuit. *See Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997); *Deloach v. Philip Morris Companies*, 2003 WL 23094907 (M.D.N.C. 2003); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524-27 (1st Cir. 1991); *Lobatz v. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000).

For his part, Mr. Frank argues that there is no such thing as an attorneys' fee that is independent of the common fund.  Quoting *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995) he contends that "although the parties claim that the fee and settlement are independent, they actually come from the same source[;] . . . private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic

34

reality a common fund situation into a statutory fee shifting case." (Doc. 173 at 9.)  What independent

fee arrangements do, either purposely or "subliminally," he argues, is eliminate a potential source of

funds for the class.  (Doc. 191 at 3.)  Mr. Frank explains that "[a]ny fee that a defendant agrees to pay

directly to class counsel is an amount that it would have been willing to include as part of the payment

to the class[,]" but, because it was negotiated independently it will revert back to the <u>defendant</u>, not the

class, if the Court's fee award is less than the amount requested or available strictly for fees.  (Doc. 191

at 3-4.)  With this "economic reality" in mind, Mr. Frank argues that the percentage of the fund

methodology should be used in all cases.  At the Final Fairness Hearing, he stated:

> I certainly recognize that the Sixth Circuit currently leaves the question of the lodestar
> [versus] common fund percentage up to the Judge, but I would like to argue as a public
> policy matter that we should take a firm stand on the common fund percentage, and the
> Second Circuit is coming around to this position, holding that the percentage method,
> quote, "directly aligns the interests of the class and its counsel and provides a powerful
> incentive for the efficient prosecution and early resolution of litigation.  In contrast,
> lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run
> up their hours, and compels district courts to engage in a gimlet eyed review of line item
> fee audits."

(Doc. 188 at 50 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)

(omitting internal citations and quotations).)  Mr. Frank goes on to argue that, while cases within the

Sixth Circuit and elsewhere continue to apply the lodestar, there is an trend toward his position:

> I think if you look at what the Class Action Fairness Act says and you look at what the
> 2003 Advisory Committee Notes are and the new edition of the Manual for Complex
> Litigation and all of these which says, you know, sort of base the fees on the actual
> benefit to the class.  And there just aren't any recent cases that consider all three of these
> and then say let's look at the lodestar.  And there are definitely cases out there that apply
> the lower precedent and go with the lodestar.  I would submit that these cases have
> failed to adequately change, consider the change in the law, and the change in direction,
> and think the trend is certainly toward a percentage, a common fund percentage for these
> public policy reasons, but I recognize that the Sixth Circuit puts that within your
> discretion.

(*Id*. at 52.)  Lastly, Mr. Frank contends that judicial efficiency militates against performing the lodestar

35

analysis.

In response to Mr. Frank's arguments, as discussed above, Class Counsel points out that he has cited no case law supportive of his position, let alone binding authority, and argues that his concerns are theoretical and unfounded.  Class Counsel contends that, ultimately, courts have been given the responsibility of approving class action settlements and awarding fees in recognition of the inherent conflict of interest in class action litigation.  Accordingly, Class Counsel argues, the courts should be afforded the discretion to evaluate a request for attorneys' fees under the methodology most appropriate for the case, and the public should be entitled to rely on the courts' ability and diligence in discharging this duty.  (Doc. 193 at 2-3, 7.)

Both positions have some merit, but Mr. Frank's perspective: (1) overstates the "trend" in the law regarding independent attorneys' fee agreements and the Second Circuit's preference for the percentage of the fund method; and (2) ignores one very important aspect of the Court's supervisory role with respect to class action settlements – "that counsel is fairly compensated for amount of work done as well as for results achieved." *See Rawlings*, 9 F.3d at 16.

First, as noted above, the cases Mr. Frank cites in support of his proposal that independent attorneys' fee agreements should be per se unfair merely stand for the proposition that the Court must review <u>all</u> aspects of a class action settlement agreement, including independent agreements between class counsel and the defendants regarding attorneys' fees.  *See Staton*, 327 F.3d at 964 (holding that, regardless of the form of the attorneys' fee provisions, the Court must review that aspect of a class action settlement agreement); *Lobatz*, 222 F.3d at 1147 (holding that the attorneys' fee award is part of the settlement and payable by the defendant regardless of the independence of the fund); *In re General Motors*, 55 F.3d at 820-21 (holding that an independent agreement between class counsel and

36

the defendants regarding attorneys' fees must be reviewed along with the class action settlement); *Johnson*, 83 F.3d 241. These cases do <u>not</u> suggest that a settlement agreement is unfair, unreasonable, or inadequate simply because the defendants and class counsel negotiate an independent fund as the source of any attorneys' fee award. Similarly, as discussed further below, even the *Wal-Mart* case Mr. Frank cites for the proposition that courts should not apply the lodestar analysis clearly indicates that the Court has discretion to use the lodestar method, percentage of the fund method, or the cross-check method. *Wal-Mart*, 396 F.3d at 121; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (citing *Wal-Mart* for the proposition that which method to apply in a given case is clearly within the discretion of the district court).

Second, one of the fundamental principles of class action litigation is that it provides an incentive to pursue recovery for tortious conduct that would otherwise go unchecked because the individual harm to a potential plaintiff is too small to justify the cost of litigation. Collective action is the best, and, in many cases, the only feasible, way to redress the harm on an individual basis and discourage similar conduct in the future. Of course, class actions depend on class counsel – that is why the Court's duty to ensure that class counsel is fairly compensated under the circumstances of the case is such an important part of the Court's Rule 23(e) responsibilities. In many cases, Mr. Frank's approach would result in fair compensation for class counsel. In other cases, his approach would significantly undervalue class counsel's service to the class and to the public. Although the Court believes that this is such a case,[22] it need not address that question in detail because there is an

---

[22]     Mr. Frank's arguments appear to stem from the concern that, sometimes, class actions provide a vehicle for self-interested lawyers to exploit the process strictly for their own benefit and at the expense of legitimate businesses and, ultimately, society. This simply is not such a case. Class Counsel is pursuing a novel claim at the intersection of consumer law, insurance law, contract, and tort that implicates both

37

alternative approach that is:  (1) firmly rooted in Sixth Circuit authority; and (2) consistent with this Court's understanding of its duty to <u>actually</u> scrutinize the Settlement Agreement and the basis of the request for attorneys' fees.  Specifically, as this Court explained in *Sulzer*, 268 F. Supp. 2d at 922, a court may choose to use the lodestar method cross-checked by the percentage of the fund method in order to reach an accurate and well-reasoned result.  *See also Bowling*, 102 F.3d at 779; *Fournier v. PFS Investments, Inc.*, 997 F. Supp. 828, 831 (E.D. Mich. 1998).  Although this Court has expressly acknowledged that  more effort is involved in employing both methods, *Sulzer*, 268 F. Supp. 2d at 923, as the Sixth Circuit stated in *Rawlings*, 9 F.3d at 516, "the lodestar method better accounts for the amount of work done, . . . the percentage of the fund method more accurately reflects the results achieved."[23]  Some cases require a more thorough approach than others, and the Court cannot ignore

---

federal and state jurisprudence.  Furthermore, based on the number of potential Settlement Class Members Travelers identified and the number of claims submitted, hundreds of thousands of consumers were effected by the Travelers' practice at issue, the legality of which is subject to legitimate debate.  As Class Counsel explained at the Final Fairness Hearing the practice at issue engenders different responses from different people: "We had run this fact pattern in this case by many, many people over the past five years.  Some people would look at the fact pattern and say what did [Travelers] do wrong?  And others were highly offended by the practice of Travelers." (Tr. Fairness Hrg., Doc. 188 at 9.)  Class Counsel worked very hard in pursuing this novel claim.  There is nothing about Class Counsel's performance or approach to this litigation that suggests a parasitic attempt to employ minimal effort for maximum gain.  It is also important to note that Class Counsel was facing a determined and financially sound opponent represented by skilled and equally determined counsel willing to take this case to trial.  By devoting so much time and resources to this litigation, Class Counsel took a significant risk of receiving no compensation whatsoever if this Court or the Sixth Circuit dismissed the case at any point.

[23]  More precisely, the percentage of the fund method more accurately reflects the result achieved *from a purely monetary perspective*.  In other words, the percentage of the fund method does <u>not</u> account for the non-monetary aspects of the settlement that Class Counsel negotiated, such as the injunctive relief portion of the Settlement Agreement in this case.  As stated in the Manual for Complex Litigation (4th ed.) §

this reality in the interest of "judicial efficiency." *Cf. Devlin v. Transportation Communs. Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (stating in the consolidation context that "efficiency cannot be permitted to prevail at the expense of justice").

The *Wal-Mart* case that Mr. Frank cites, moreover, confirms that it is within the discretion of the court to employ either the lodestar or percentage of the fund method. *Wal-Mart*, 396 F.3d at 121 ("Courts may award attorneys' fees in common fund cases under either the "lodestar" method or the "percentage of the fund" method."). While the Second Circuit in *Wal-Mart* also notes that "[t]he trend in this Circuit is toward the percentage method[,]" two years after *Wal-Mart* the Second Circuit was unequivocal regarding the Court's discretionary authority to apply the lodestar method: "Of course, courts may continue to use the lodestar approach alone in calculating attorneys fees in common fund cases." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007). In fact, contrary to Mr. Frank's implicit suggestion that *Wal-Mart* was the beginning of a trend, the *Masters* decision cites *Wal-Mart* for this proposition. *Id*. (citing *Wal-Mart*, 396 F.3d at 121). Accordingly, it appears that, to the extent that there is a trend toward the percentage method, it has not eroded the more fundamental principle that the district court has the discretionary authority to decide which method to apply on a case-by-case basis.

Given the discretion to employ either or both methods, the Court finds that this is a case that is particularly appropriate for the cross-check approach because of the novel and sophisticated legal

---

21.71: "In comparing the fees sought by the lawyers to the benefits conferred on the class, the court's task is easiest when class members are all provided cash benefits that are distributed. It is more complicated when class members receive non-monetary or delayed benefits. In such cases, the judge must determine the value of those benefits." Mr. Frank's pure percentage of the fund approach does not address this issue.

issues involved, the scope of discovery, and the difference between the Available Benefit and the Actual Payment to the Settlement Class.  Accordingly, the Court will address both the lodestar analysis and the percentage of the fund analysis below.

### 1.    The Lodestar Analysis

In determining what is a reasonable amount of attorneys' fees, a useful starting point is to determine the "lodestar," which is calculated by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Reed*, 179 F.3d at 471; *see also Isabel*, 404 F.3d at 415.  When a court is calculating the lodestar, the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed.  *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  Further, sufficient documentation must be offered in support of the hours charged, i.e., the documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) (noting that "counsel need not record in great detail each minute he or she spent on an item," but indicating that "the general subject matter should be identified") (internal quotations omitted).  Counsel for the prevailing party must make a good faith effort to exclude from a fee application hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.

### a.    The Lodestar Figure

Class Counsel submits that the total lodestar figure – reasonable hours multiplied by reasonable rates – is **$3,489,875.00**.  (Doc. 176 at 14.)  In support of this figure, each of the attorneys and/or law firms submitted an affidavit with supplemental documentation regarding billing rates and the hours

expended on the this litigation.  (*Id.* Exs. A-G.)  The Court has reviewed each of these affidavits, and

the associated billing records, carefully.  The following chart depicts the rates and hours submitted by

each attorney/law firm within the definition of Class Counsel:

| Ex. | Attorney/Law Firm | Rates / Hr. | Hours | Total Lodestar |
|---|---|---|---|---|
| A | Charles F. Barrett, Barrett & Associates | $325 | 135.9 | $    44,167.50 |
| B | John W. (Don) Barrett, Barrett Law Office, P.A. | $650 | 324.7 | $   211,029.00 |
| B | Chris Hammett, Paralegal at Barrett Law Office, P.A. | $90 | 64.4 | $    4,743.00 |
| C | Pierce Gore, Gore Law Firm | $375 | 3,221 | $1,207,875.00 |
| D | Dewitt M. Lovelace, Lovelace Law Firm, P.A. | $425 | 296 | $   125,800.00 |
| D | Sandy Rosenthal, Paralegal at Lovelace Law Firm, P.A. | $150 | 215.8 | $    32,370.00 |
| E | Attorneys at Lieff, Cabraser, Heimann & Bernstein, LLP | $825-$395 | 81.3 | $    39,711.00 |
| E | Paralegals at Lieff, Cabraser, Heimann & Bernstein, LLP | $215-$155 | 8.9 | $     1,543.50 |
| F | Thomas P. Thrash | $500 | 206.35 | $   103,175.00 |
| G | R. Eric Kennedy, Weisman, Kennedy, & Berris Co., L.P.A. | $650 | 699.65 | $   454,772.50 |
| G | Daniel Goetz, Weisman, Kennedy, & Berris Co., L.P.A. | $500 | 2066.52 | $1,033,260.00 |
| G | David Landever, Weisman, Kennedy, & Berris Co., L.P.A. | $500 | 443.60 | $   221,800.00 |

| Totals: | Attorney Hours: 7475.02 | Attorney Total:  $3,441,590.00 |
|---|---|---|
| | Paralegal Hours: 289.1 | Paralegal Total: $    38,656.50 |
| | Total Hours: 7764.12 | Grand Total:     $3,480,256.50 |

Class Counsel also submitted an accounting of costs and expenses in the total amount of **$135,249.04**.

41

(*See* Doc. 176 Ex. A-G.)  These costs and expenses were not included in Class Counsel's suggested

lodestar figure.

The Grand Total in the chart above is $9,618.50 less than the lodestar figure Class Counsel

submitted.[24]  The Court will, however, use the Grand Total in the chart above as the starting point for

the lodestar figure.  After thorough and careful review of the billing statements the Court makes the

following observations and findings:

- Class Counsel consists of experienced attorneys with expertise specific to complex class actions on a national scale.  (*See* Doc. 176 Ex. A-G.)  With this in mind, although the rates listed above are high compared to the average attorney, based on this Court's knowledge of attorneys' fees in complex civil litigation and multi-district litigation, the requested rates are reasonable for this case considering the experience and expertise these particular lawyers have in this particular area of law.

- The number of attorney hours is reasonable based on the following factors: (1) this litigation has lasted for over five years; (2) the novel legal theories and vigorous defense required Class Counsel to spend thousands of hours researching, briefing, and preparing to present the legal issues to the Court, and the quality of Class Counsel's submissions has consistently reflected the substantial time devoted to the task; (3) discovery was document-intensive and contentious; and (4) because the Settlement Class is national in scope, and settlement negotiations were hard-fought, the time devoted to travel to and from settlement negotiations, in addition to Court conferences and proceedings, was reasonable and necessary.

- Paralegal time is compensable in recognition of the fact that it is an economical allocation of personnel given that the rates for paralegals are significantly lower than attorneys. *See generally Gross v. Perrysburg Exempted Vill. Sch. Dist.*, 306 F. Supp. 2d 726, 737 (N.D. Ohio 2004) (collecting cases in support of the proposition that "numerous Sixth Circuit cases uphold[] an award of paralegal fees in fee-shifting cases"); *see also Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992) ("The efficient use of paralegals is, by now, an accepted cost-saving device.").

- Class Counsel is <u>not</u> requesting compensation for the significant costs incurred during the

---

[24]     This difference could be due to a number of factors given that Class Counsel did not itemize the calculations underlying the requested lodestar amount. (For example, the grand total in Mr. Thrash's billing records does not distinguish between costs and billable hours.)  The Grand Total in the chart above is the result of the Court's review of the affidavits and supporting documents submitted in support of Class Counsel's Fee Petition, and the Court's calculations resulting therefrom.

course of this litigation (approximately $135,249.04).

Accordingly, the Court finds that the lodestar figure – reasonable hours multiplied by reasonable rates – is **$3,480,256.50**.

### b. Lodestar Multiplier

Next, Class Counsel requests that the lodestar figure be enhanced by a multiplier of 1.3. (Doc. 176 at 15.) Multipliers are not uncommon in class action settlement cases to enhance the lodestar figure in recognition of the "risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Rawlings*, 9 F.3d at 515-17; *see also Sulzer*, 268 F. Supp. 2d at 922; *Bailey v. AK Steel Corp.*, 2008 WL 553764 (S.D. Ohio 2008) (applying lodestar multiplier of 3.04); *In re Revco Sec. Litig.*, 1992 WL 118800 (N.D. Ohio 1992) (applying lodestar multiplier of 2.5); NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

In determining whether a requested multiplier is appropriate, the Court seeks guidance from the six factors identified by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048 (1975). The *Ramey* factors are:

> (a) the value of the benefits rendered to the class; (b) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (c) whether the services were undertaken on a contingent fee basis; (d) the value of the services on an hourly basis; (e) the complexity of the litigation; and (f) the professional skill and standing of all counsel.

*Sulzer*, 268 F. Supp. 2d at 930 (quoting *Telectronics*, 137 F.Supp.2d at 1042 (citing Ramey, 508 F.2d at 1196)).

### i. The Value of the Benefits Rendered to the Class

The most important *Ramey* factor is the first – the value of the benefit to the class. *Sulzer*, 268

43

F. Supp. 2d at 930.  As detailed above, the Settlement Agreement provides $8.69 per Class Policy Period to each member of the Settlement Class who submits a timely, valid claim form.   In total, this amounts to $2,812,962 and represents a 20 percent recovery of the Total Actual Loss.  (*See supra*; Doc. 191.)  Each Settlement Class Member is also entitled to a pro rata share of the $2 million reversion. Furthermore, the costs ($420,306) and attorneys' fees will be paid by Travelers, and the Settlement Agreement benefits the Settlement Class and the public generally by enjoining the practice at issue for at least three years.  The value of the Available Benefit to the Settlement Class is more controversial for the reasons discussed below, but, assuming based on *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), that it has *some* value, *see Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), the total Available Benefit is $17,943,693.18.  Finally, as this Court noted in *Sulzer*, the paucity of objections suggests that the Settlement Class Members believe the Settlement Agreement is beneficial.  Even assuming for the sake of argument that the Available Benefit has limited value, the other significant benefits to the Settlement Class justify the multiplier.

### ii.     Society's Stake in Rewarding Attorneys Who Produce Such Benefits

As noted above, the Court must ensure that Class Counsel is fairly compensated in order to facilitate the goal of class actions – i.e., to provide a vehicle for collective action to pursue redress for tortious conduct that it is not feasible for an individual litigant to pursue.  The Court is cognizant of the fact that Travelers has not admitted liability and the Court cannot pass judgment on Travelers' liability. Nonetheless, as a result of this Settlement Agreement, thousands of consumers will recover a meaningful portion of the premium that they would not have had to pay if Travelers had offered them the lower-priced policy.  But for this litigation, it is a virtual certainty that these consumers would not have received a rebate of any kind.  Furthermore, as a result of this litigation, Travelers eliminated their

44

practice of selling identical policies for different prices and the Settlement Agreement enjoins Travelers from reinstating that practice for at least three years.  (Doc. 176 at 16.)  This injunction prohibits a potentially[25] discriminatory practice, a benefit that extends outside the Settlement Class to society at large.  Accordingly, the requested 1.3 multiplier is justified based on this factor.

### iii.    Contingent Fee Basis & Value of Service Rendered

The third *Ramey* factor is whether Class Counsel undertook the litigation on a contingent fee basis.  This factor accounts for the substantial risk an attorney takes when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed.  Class Counsel took this case on a contingent fee basis and, as demonstrated by the lodestar calculations above, the magnitude of that risk is remarkable.  Class Counsel devoted approximately 7,765 hours to the case, all of which would have been for naught if they lost at any stage of the litigation after September 2009 – summary judgment, trial, or on appeal.  Similarly, with respect to the fourth *Ramey* factor, the lodestar figure – $3,480,256.50 –  illustrates the magnitude of the risk Class Counsel assumed in terms of lost time that could have been devoted to other matters.  These factors strongly support the requested multiplier.

### iv.    The Complexity of the Litigation & The Professional Skill and Standing of Class Counsel

Lastly, the fifth and sixth *Ramey* factors deal with the complexity of the litigation and expertise

---

[25]    It is important to understand that the Plaintiffs have never argued, and this Court has never found, that Travelers intended to discriminate unlawfully by instituting the practice at issue.  Instead, they argue that the practice opens the door for discrimination on the basis of race, religion, sex, age, etc. because it allows agents in the field to charge a customer the higher price based on, *e.g.*, race. (*See* Doc. 176 at 17-20 (quoting deposition testimony and testimony at the class certification hearing).)

and performance of counsel.  As described throughout this Opinion & Order, this was not an easy case, and Class Counsel did a commendable job throughout.  The Court essentially agrees with Class Counsel's summary of the difficulty of this case and the Court's assessment of their performance as set forth in their Fee Petition.  (*See* Doc. 176 at 20-21.)  Accordingly, these factors also strongly support the requested multiplier.

### v.      Multiplier of 1.3

For all of the reasons discussed within the context of the *Ramey* factors, the Court finds that the requested multiplier of 1.3 is justified.  In fact, numerous cases have approved multipliers in excess of 1.3 in similar circumstances.  *See, e.g.*, *Sulzer*, 268 F. Supp. 2d at 938 n.45 (citing Stuart J. Logan, Dr. Jack Moshman & Beverly C. Moore, Jr., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Reports (Mar.-Apr. 2003) summarizing the findings of these authors regarding multipliers between 1973 and 2003 and noting that the average effective multiplier across 1,120 cases was 3.89).  Consequently, the Court will apply a multiplier of 1.3 to the lodestar figure.[26]

### c.      Final Lodestar Figure

After applying the multiplier of 1.3 the final lodestar figure is **$4.6 million**.

### 2.      Percentage of the Fund

The percentage of the fund method requires the Court to consider the ratio of the attorneys' fee to the total class benefit.  It allows the Court to cross-check the final lodestar figure to ensure that the

---

[26]      The Court adjusted the requested lodestar figure by approximately $10,000.  (*See supra* at § III(B)(1)(a).)  This adjustment is not substantial enough, however, to require the Court make more than a *de minimus* adjustment to the multiplier -- $4.6 million is the product of the Court's lodestar figure and 1.321.  Rounded to the thousandths place, the quotient of 4,600,000.00 divided by the requested lodestar, 3,489,875.00, is 1.318.

fee award is reasonable compared to the Settlement Class' benefits. *See*, *e.g.*, *Sulzer*, 268 F. Supp. 2d at 922. The first step in the percentage of the fund method is to determine the total monetary value of the Settlement Agreement to the Settlement Class – i.e., the "Total Class Benefit." One component of the Total Class Benefit is the "Benefit Fund" – i.e, the $8.69 cash payment per Class Policy Period provided for in the Settlement Agreement. How to assess the value of the Benefit Fund is a hotly contested issue.

Class Counsel included a helpful chart in its Fee Petition to illustrate the components they believe should be included as part of the Total Class Benefit for purposes of performing the percentage of the fund cross-check. (Doc. 176 at 23.) Because that chart was prepared prior to the close of the claims period, the numbers were estimates meant to be updated after the close of the claims period. The following chart includes the updated numbers:

| | |
|---|---|
| **Benefit Fund - midpoint between the available benefit ($17,943,693.18) and the estimated actual payment ($2,812,962.00):** | **$10,378,327.59** |
| **Reversion From Attorney Fee Fund:** | **$ 2,000,000.00** |
| **Attorney Fees:** | **$ 4,600,000.00** |
| **Costs of Notice and Administration:** | **$ 420,306.00** |

**Total Class Benefit (according to Class Counsel): $17,398,633.59**

(Doc. 176 at 23.) Mr. Frank agrees that the Actual Payment to the Settlement Class Members and the Costs of Notice and Administration are legitimate components of the Total Class Benefit. (Tr. Fairness Hrg., Doc. 188 at 52-53.) He makes a half-hearted attempt to halve the $2 million Reversion (and, thus, excise half of the Reversion from the Total Class Benefit calculation) on the grounds that he is responsible for that particular benefit, and contends that the $4.6 million in attorneys' fees should be

47

reduced by a mathematical formula[27] because, if the Court does not award the full $4.6 million, the

remainder reverts back to Travelers, not the Settlement Class.  (Tr. Fairness Hrg., Doc. 188 at 53.)  The

main point of contention, however, is whether the value of the Benefit Fund should be the Available

Benefit or the Actual Payment – i.e., whether it is the amount the Settlement Class would receive if

every potential Settlement Class Member returned a timely, valid claim form ($17,943,693.18) or it is

the amount of actual claims paid ($2,812,962).  It is undisputed that the unclaimed portion of the

Available Benefit will revert back to Travelers under the terms of the Settlement Agreement.  In sum,

at the Final Fairness Hearing, Mr. Frank essentially argued that the Total Class Benefit can be estimated

as follows:

| | |
|---|---|
| **Benefit Fund - the Actual Payment amount:** | **$2,812,962.00** |
| **Reversion From Attorney Fee Fund:** | **$1,000,000.00** |
| **Attorney Fees:** | **$1,533,333.33** |
| **Costs of Notice and Administration:** | **$  420,306.00** |
| | |
| **Total Class Benefit (according to Mr. Frank):** | **$5,766,601.33** |

(Tr. Fairness Hrg., Doc. 188 at 53-54.)[28]  Clearly, there is a substantial gap between Class Counsel's

---

[27]     Mr. Frank's formula for the value of the attorneys' fees portion of the Total Class
Benefit is: $0.25(4.6 + x) = x$, where "x" is the value to the Settlement Class of the
$4.6 million award of attorneys' fees.  (Tr. Fairness Hrg., Doc. 188 at 53-54.)  After
diligently solving his equation, the Court has discovered that Mr. Frank thinks the
attorneys' fee award is worth $1,533,333.33 to the Settlement Class.

[28]     In his supplemental brief Mr. Frank stated without explanation that "The Benefits To
The Class Are $4,812,962.73." (Doc. 191 at 4.)  He then argued that, based on his
interpretation of the percentage of the fund methodology, a reasonable fee would be
approximately $1.6 million – 25 percent of $4,812,962.73.  A little addition suggests
that $4,812,962.73 is the sum of the Actual Payment and the Reversion.  Although
the precise numbers are not critical to the Court's resolution of the pending motions,
the chart above is probably a better estimate of Mr. Frank's position because, at the
Final Fairness Hearing, he accounted for all of the components of the Total Class
Benefit that Class Counsel included in their chart.

assessment of the value of the Total Class Benefit and Mr. Frank's.[29]  The different assessment of the

value of the Benefit Fund is the largest component of the gap.

### a. The Benefit Fund

Both Class Counsel and Mr. Frank acknowledge that whether the percentage of the fund should

be calculated using the Available Benefit or the Actual Payment is a matter of unsettled law.  In *Boeing*

*Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980), the Supreme Court recognized that the amount of the

fund *available* was a benefit to the class:

> In this case, the named respondents have recovered a determinate fund for the benefit
> of every member of the class whom they represent.  . . .  To claim their logically
> ascertainable shares of the judgment fund, absentee class members need prove only their
> membership in the injured class.  **Their right to share the harvest of the lawsuit upon**
> **proof of their identity, whether or not they exercise it, is a benefit to the fund**
> **created by the efforts of class representatives and their counsel.**

*Boeing*, 444 U.S. at 479-80 (emphasis added).[30]  As Class Counsel concedes in their Fee Petition,

however, the Supreme Court's approach to unclaimed funds in *Boeing* has not taken hold:

> Since *Boeing* . . . consideration of unclaimed funds in the determination of attorneys'
> fees has been discouraged and even statutorily barred in certain contexts.  The Private
> Securities Litigation Reform Act ("PSLRA"), for example, enacted in 1995, expressly
> limits fees in the context of securities litigation to "a reasonable amount of any damages
> and prejudgment interest *actually paid* to the class"  15 U.S.C. §§ 77z-1(a)(6); 78u-
> 4(a)(6) (emphasis).

---

[29]     The difference is $11,632,032.26.

[30]     Class Counselor Mr. Barrett's explanation of the rationale for treating the Available
Benefit as the Benefit Fund is instructive:

> > If I go down to the river and I drag a bucket of water up the hill and
> > into the corral and lead the horse over and the horse doesn't drink, I
> > still created a benefit.

(Tr. Fairness Hrg., Doc. 188 at 16.)

49

Although the Rules of Civil Procedure themselves are silent on the issue, citing the securities legislation, The Advisory Committee Notes to the 2003 amendments to Rule 23, subd. h, suggest that courts examine the extent to which claims procedures result in *actual* payouts to the class.

> For a percentage approach to fee measurements, results achieved is the basic starting point.  In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known.

Citing these Advisory Committee notes, the Manual for Complex Litigation also endorses a fee award that is based on funds actually bestowed.  *See also* Federal Judicial Center. *Manual for Complex Litigation* (Fourth) § 21.71 (2004).

> In cases involving a claims procedure or a distribution of benefits over time, the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims.  Rather the fee awards should be based only on the benefits actually delivered.  It is common to delay the final assessment of the fee award and to withhold all or a substantial part of the fee until the distribution process is complete.

Finally, in the 2005 Class Action Fairness Act ("CAFA"), Congress required that where "a proposed settlement in a class action provides for recovery of coupons to a class member, that portion of any attorney's fee award to class counsel that is attributable to the award of the coupon shall be based on the value to the class of the *coupons that are redeemed*."  28 USCA § 1712(a) (emphasis added).

(Doc. 176 at 24-25.)

Courts, moreover, are split regarding how the value of the Benefit Fund should be calculated. Some have calculated attorneys' fees using the percentage of the fund method based only upon the amount actually claimed.  *See, e.g.*, *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 852-853 (5th Cir. 1998) (affirming district court's award of attorneys' fees based strictly on actual claims); *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993) (calculating fees based on actual recovery and

50

noting that "[a]lthough the Supreme Court has authorized courts to award attorney's fees based on the entire fund, *Boeing* . . . the Court notes that such a method is not mandated."). Other courts use the Available Benefit as the measure of the Benefit Fund, regardless of the Actual Payment. *See*, *e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) (holding that the district court abused its discretion by calculating fees based strictly on the actual recovery, expressly rejecting the idea that basing the award on the Available Benefit would create a windfall for class counsel, and finding the instructions in the PSLRA and CAFA inapplicable); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223 (2000); *Williams v. MGM-Pathe Commun. Co.*, 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million)); *McKinnie v. JP Morgan Chase Bank, N.A.*, 2009 WL 5217673 (E.D. Wis. 2009) (relying on *Boeing* in awarding 33 percent of the available fund, an fee award that exceeded the amount actually claimed).[31]

Because of its procedural history, *Waters* is the case that best frames the debate now before the Court. *Waters* was a fraud case that settled for a $40 million common fund. *Waters*, 190 F.3d at 1297. Less than $6.5 million of the fund was actually claimed, however, and the remainder reverted to the defendants pursuant to the settlement agreement. *Id*. The Eleventh Circuit relied on *Boeing* and affirmed the district court's fee award of approximately $13 million – one third of the <u>total</u> fund. *Id*. The Eleventh Circuit also found the PSLRA inapplicable and stated that "[c]ontrary to defendants' assertion, no case has held that a district court must consider only the actual payout in determining

---

[31]    Mr. Frank notes in his supplemental brief that Class Counsel "fairly states the unsettled nature of the precedent," but he argues that "the stronger argument rests with basing fees on actual recovery, both because of the trend of the precedent, and because of the public policy reasons against rewarding attorneys for phantom results." (Doc. 191 at 4.)

attorneys' fees." *Id*. at 1295.  The defendant petitioned for a writ of certiorari and, although the petition

was denied, Justice Sandra Day O'Connor identified the split of authority and wrote "I believe the

importance of the issue counsels in favor of granting review in an appropriate case."  *Int'l Precious*

*Metals Corp. v. Waters*, 530 U.S. 1223 (2000).  Justice O'Connor explained:

> In *Boeing* . . ., we upheld an award of attorney's fees in a class action where the award
> was based on the total fund available to the class rather than the amount actually
> recovered. *Id.*, at 480-481 . . . .  We had no occasion in *Boeing*, however, to address
> whether there must at least be some rational connection between the fee award and the
> amount of the actual distribution to the class. The approval of attorney's fees absent any
> such inquiry could have several troubling consequences. Arrangements such as that at
> issue here decouple class counsel's financial incentives from those of the class,
> increasing the risk that the actual distribution will be misallocated between attorney's
> fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of
> class actions by providing defendants with a powerful means to enticing class counsel
> to settle lawsuits in a manner detrimental to the class. And they could encourage the
> filing of needless lawsuits where, because the value of each class member's individual
> claim is small compared to the transaction costs in obtaining recovery, the actual
> distribution to the class will inevitably be minimal. The Courts of Appeals have differed
> in their approaches to the problem. *Compare Strong v. BellSouth Telecommunications*,
> *Inc.*, 137 F.3d 844, 852 (C.A.5 1998) (District Court did not abuse its discretion in
> basing fee award on actual payout rather than reversionary fund), with *Williams v.*
> *MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (C.A.9 1997) (benchmark for
> fee award is 25% of entire fund, and District Court abused its discretion in basing award
> on actual distribution to class).

*Id*.

Justice O'Connor's chief concern is the "decoupling of class counsel's financial incentives from

those of the class."  She does not fundamentally challenge the principle announced in *Boeing*, 444 U.S.

at 474,  that a class member benefits from the <u>right</u> to recovery, even if he or she does not exercise that

right.  Instead, she proposes that district courts employ an approach that ensures that there is "at least

be some rational connection between the fee award and the amount of the actual distribution to the

class."  *Waters*, 530 U.S. at 1223.

Class Counsel readily acknowledges the wisdom of a methodology that avoids decoupling class

counsel's interests from those of the class, but also insists that *Boeing* correctly reflects the value of leading a horse to water, even though you can't make him drink.  (*See supra*, footnote 30.)  To address Justice O'Connor's concern, Class Counsel proposes a compromise "that satisfies, to a degree, both positions":

> The compromise would have the Court take the mid-point between the amount available [$17,398,633.59] and the amount actually claimed [$2,812,962.00] and use this number [$10,378,327.59] to establish the value of the [B]enefit [F]und.  This approach is unique, however.  Under this approach, there would not be a "decoupling" of class counsel's monetary incentives from those of class members and at the same time, there would be recognition of the benefit created by a class member's right to compensation.

(Doc. 176 at 29.)

Mr. Frank rejects the proposed compromise as an inadequate substitute for "a straight calculation based on the actual amount received by the class."  (Tr. Fairness Hrg., Doc. 188 at 43.) According to Mr. Frank, "the available benefit is a fiction."  (*Id*. at 53.)  He argues that the way to incentivize class counsel to protect the best interests of the class "is to tie the fee award to the actual payments to the class, not on a 50 percent sliding scale as they propose but on the actual payments to the class, and that is the way to guarantee that the Plaintiffs' lawyers will pay attention to the hoops that they are making the class members jump through."  (*Id*. at 44.)  Accordingly, he argues that a reasonable fee pursuant to his percentage of the fund straight calculation based on the actual amount received by the class method would be $1.6 million – i.e., 25 percent of approximately $4.8 million. (Doc. 191 at 7.)

While Mr. Frank's position is not without some force, the Court finds Class Counsel's proposed compromise appropriate in this case.  By mathematically tying attorneys' fees to actual recovery by the class, the compromise directly addresses Justice O'Connor's "decoupling" concern.  Of course, Mr. Frank's "straight calculation based on actual recovery" would address this concern in spades, but it runs

the risk of conflicting with the Supreme Court's *Boeing* principle that the Available Benefit *is* a benefit,

and, as a corollary to that principle, that an important aspect of the Court's responsibility in evaluating

the Settlement Agreement is to ensure that class counsel is fairly compensated for the work done and

the result achieved.  In contrast, Class Counsel's proposed compromise adheres to the *Boeing* principle

by incorporating the value of the Available Benefit into the assessment of the Benefit Fund.

      In the cases cited above where the circuit court found that the district court abused its discretion

in awarding attorneys fees, the district court awarded fees based on actual recovery without regard for

the *Boeing* principle.  *See*, *e.g.*, *Masters*, 473 F.3d at 437; *Williams*, 129 F.3d at 1027.  For example,

in *Masters*, 437 F.3d at 437, the Second Circuit held that the district court abused its discretion by

awarding fees based on the actual recovery, as opposed to the available benefit.  The Second Circuit

reasoned as follows:

> In siding with courts that compute fees as a percentage of claims made, the District Court saw the alternative procedure as creating a "windfall" for the attorneys. We disagree. The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not. We side with the circuits that take this approach. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir.1999); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997).
>
> Our own cases refer to "percentage of the fund," *Wal-Mart Stores*, 396 F.3d at 121 (emphasis supplied), and "percentage of the recovery," *Goldberger*, 209 F.3d at 47 (emphasis supplied). We take these references to be to the whole of the Fund.

*Id.*[32]  Similarly, in *Williams*, the Ninth Circuit held that the district court abused its discretion when it

---

[32]     Mr. Frank contends that the Second Circuit "is coming around" to his position regarding the predominance of the percentage of the fund method as opposed to the lodestar.  (Tr. Fairness Hrg., Doc. 188 at 50.)  He cites *Wal-Mart v. Visa*, 396 F.3d 96, in support of this theory.  (*Id.*)  As discussed above, however, in *Masters*, the Second Circuit applied the lodestar as a cross-check and cited *Wal-Mart* for the proposition that "courts may continue to use the lodestar approach alone in

based attorneys' fees on actual recovery rather than the available benefit. *Williams*, 129 F.3d at 1027

("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."). Mr. Frank's proposed method in this case is the very method the district courts applied while abusing their discretion in *Masters* and *Williams*. Although the Court will not speculate that the Sixth Circuit would similarly find an abuse of discretion in this case if this Court were to follow Mr. Frank's suggestions, there is no reason to test that hypothesis when Class Counsel has proposed a method that, under the particular circumstances of this case, is more consistent with the Court's interpretation of applicable law and its Rule 23(e) duty to ensure that the Settlement Agreement is fair, reasonable, and adequate in all respects.[33]  Accordingly, the Court will use Class Counsel's proposed compromise to calculate the value of the Benefit Fund.

The Court finds that, for purposes of the percentage of the fund cross-check, the Benefit Fund should be valued at approximately **$10,378,327.59** -- the mid-point between the Available Benefit and the Actual Payment.

### b.     The Reversion

The second component of the Total Class Benefit on Class Counsel's chart is the Reversion. The Reversion is the $2 million payment to the Settlement Class as a result of the parties' post-Greenberg Objection amendment to the Settlement Agreement to reduce the requested attorneys' fee

---

calculating attorneys fees in common fund cases." *Masters*, 473 F.3d at 436.

[33]     Although Class Counsel did not include the injunctive relief component of the Settlement Agreement in the calculation of the Available Benefit (and Mr. Frank opposed its inclusion), it is worth noting generally that the compromise accounts for that non-monetary benefit better than strict adherence to the Actual Payment.

from $6.6 million to $4.6 million and award the $2 million difference to the Settlement Class.  (*See* Doc. 190.)  This cash payment is unquestionably a benefit to the Settlement Class.  Mr. Frank claims, however, that he is at least partially responsible for it because the timing of the agreement to amend the Settlement Agreement is significant circumstantial evidence that Mr. Greenberg's objection caused the adjustment.  Therefore, at the Final Fairness Hearing he argued that only half of the Reversion should be included in the Total Class Benefit for purposes of determining Class Counsel's fee award.  (Tr. Fairness Hrg., Doc. 188 at 53.)

As discussed below, however, the fact remains that it was Class Counsel who secured the Reversion for the Settlement Class by negotiating the First Amendment to the Settlement Agreement with Travelers.  Mr. Frank was not a party to that negotiation.  It cannot be disputed, moreover, that the Settlement Class received this additional actual benefit.  Accordingly, the Court finds that the Total Class Benefit includes the $2 million Reversion for purposes of the percentage of the fund cross-check.

### c.      Costs of Notice & Administration

The third component of the Total Class Benefit is the costs of notice and administration that Travelers paid ($420,306.00).  This is an expense that could have been borne by either party, but the Settlement Agreement provides that Travelers will assume it.  Therefore, it is a benefit to the Settlement Class.[34]  *See Staton v. Boeing*, 327 F.3d 938, 975 (9th Cir. 2003); *Mangone v. First USA Bank*, 206 F.R.D. 222, 228 (S.D. Ill. 2001).  The Court finds that, for purposes of applying the percentage of the fund cross-check, the Total Class Benefit includes the $420,306.00 in notice and administrative costs assumed by Travelers.

---

[34]      Mr. Frank suggested at the Final Fairness Hearing that this number may be too high because notice procedures were, in his estimation, unnecessarily burdensome, but he decided not to "quibble."  (Tr. Fairness Hrg., Doc. 188 at 53.)

### d.      Attorneys' Fees

The Settlement Agreement provides that Travelers will pay attorneys' fees up to an amount not to exceed $4.6 million. Courts have found that such an independent agreement for the defendant to pay attorneys' fees is a benefit to the settlement class.  *See*, *e.g.*, *Johnson*, 83 F.3d at 245-46 (citing *In re General Motors*, 55 F.3d at 821); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *9 (D. D.C. July 16, 2001).  For his part, Mr. Frank suggested that the value of the fee award is something less than the total award and, without explanation, proposed the formula $0.25(4.6 + x) = x$.  While this is interesting, it is unsupported and the Court adopts the view of the courts cited above in finding that the attorneys' fee award is a negotiated aspect of the Settlement Agreement that provides a benefit to the Settlement Class.  Consequently, for purposes of calculating the percentage of the fee, the attorneys' fee award of $4.6 million is part of the Total Class Benefit.

### e.      The Percentage of the Fund Cross-Check

Having determined that the four components of the Total Class Benefit – the Benefit Fund, the Reversion, Notice and Administration Costs, and Attorneys' Fees – are all appropriate for inclusion in the Total Class Benefit, and that, together, they total $17,398,633.59, the Court must now analyze the reasonableness of the requested $4.6 million attorneys' fee award.  *See Sulzer*, 268 F. Supp. 2d at 923. Before the close of the claims period, Class Counsel calculated the requested $4.6 million fee award as approximately 25 percent of the estimated Total Benefit Fund, which, at the time was estimated at $17,520,306-$18,020,306.  (Tr. Fairness Hrg., Doc. 188 at 18, Ex. 1.)  Now that the claims period has closed, and the Court has determined that the Total Class Benefit is $17,398,633.59, the requested $4.6 fee award is 26.4 percent of the Total Class Benefit.  In their Fee Petition, Class Counsel cites over a dozen cases in which a similar (or larger) percentage was approved by the court in the context of the

57

percentage of the fund methodology.  (Doc. 176 at 31-32.)  As these cases demonstrate, this percentage

is well within the acceptable range for a fee award in a class action.  Furthermore, as discussed above

in the context of the lodestar multiplier, $4.6 million is a reasonable fee award based on the Court's

analysis of the six *Ramey* factors.  Accordingly, the percentage of the fund cross-check confirms that

the $4.6 million final lodestar figure is a reasonable attorneys' fee award under the circumstances of

this case.

## IV.   MR. GREENBERG'S REQUEST FOR ATTORNEYS' FEES

In his supplemental brief, Mr. Greenberg argues that he is entitled to reasonable attorneys' fees

and an incentive award for his role in improving the Settlement Agreement for the benefit of the

Settlement Class.  (Doc. 191 at 7.)  Specifically, he argues that:

> On the eve of the fairness hearing, the parties agreed to reduce the attorneys' fees by $2
> million and increase class recovery by the same amount.  Because the court does not
> have the power to "blue pencil" the settlement, this decision has to be attributed to the
> only formal objection filed in this case—especially given the timing of the decision to
> modify the settlement.

(*Id.*)

Sixth Circuit case law recognizes that awards of attorneys' fees to objectors may be appropriate

where the objector provided a benefit to the class by virtue of their objection.  *See Bowling*, 102 F.3d

at 779 (affirming award of fees to objector); *see also Olden v. Gardner*, 294 Fed. Appx. 210, 221 (6th

Cir. 2008) ("Fees and costs may be awarded to the counsel for objectors to a class action settlement if

the work of the counsel produced a beneficial result for the class." (omitting internal citations)); *In re*

*Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753-54 (S.D. Ohio 2008) ("An objector to a

class-action settlement is not normally entitled to a fee award unless he confers a benefit on the class.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *In re Prudential Ins. Co. of America*

58

*Sales Practices Litigation*, 273 F.Supp.2d 563, 565 (D.N.J. 2003).").  The standard of review on appeal

for an award of attorneys' fees to an objector is abuse of discretion.  *See Bowling*, 102 F.3d at 779.  In

addition, as explained in *In re Cardinal Health*, 550 F. Supp. 2d at 753-54, in evaluating a request for

attorneys' fees filed by an objector, courts are mindful of the fact that some attorneys use such requests

as an opportunity to capitalize on a class settlement without having provided any real and meaningful

benefit to the class.

      Mr. Greenberg and his counsel, Mr. Frank, argue that they have provided a benefit to the

Settlement Class by at least encouraging the parties to re-visit the attorneys' fees provisions of the

Settlement Agreement.  In addition, the Court is convinced that Mr. Frank's goals are policy-oriented

as opposed to economic and self-serving.  With the exception of pointing out that the amendment to

the Settlement Agreement occurred after he filed his objection, however, Mr. Greenberg has not

submitted any evidence to support the notion that his objections – as opposed to the objections of other

Settlement Class Members, or even objections of the Court itself[35] – actually provided a meaningful

benefit to the class.  While Mr. Frank's policy arguments contribute to the legal discussion regarding

this important area of law, the Court finds that they did not increase the tangible or intangible benefits

available to <u>this</u> Settlement Class.  Accordingly, the Court **DENIES** Mr. Greenberg's request for leave

to file a formal fee petition.

---

[35]    This Court has long been on record, expressing the view that attorneys' fee payments exceeding 30 percent of a Benefit Fund are too rich, a fact of which Class Counsel was aware.  There were, moreover, other objections to the scope of the fee award, including one sent directly to the Court before Mr. Greenberg's objections were submitted.  (*See* Oseas Decl., Doc. 174-1 at 3.)

**V.**        **CONCLUSION**

For all of the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement and Incentive Award to Class Representatives ("Motion for Final Approval") (Doc. 175) and **GRANTS** Motion for Order Granting Settlement Class Counsel's Petition for Award of Attorney Fees and Expenses ("Fee Petition") (Doc. 176).  Further, the Court **AWARDS** Class Counsel's fees and expenses in the amount requested, as calculated herein.  Accordingly, the Court **APPROVES** the Settlement Agreement (Docs. 168, 190).  Finally, the Court **DENIES** Mr. Greenberg's motion for leave to file a petition for attorneys' fees (Doc. 191).

        **IT IS SO ORDERED.**

                                **/s/Kathleen M. O'Malley**
                                **KATHLEEN McDONALD O'MALLEY**
                                **UNITED STATES DISTRICT JUDGE**
**Date**: March 31, 2010